ACCEPTED
14-14-00765-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
2/24/2015 8:36:34 AM
CHRISTOPHER PRINE
CLERK

Case No. **14-14-00765-CV**

IN THE COURT OF APPEALS
FOR THE FOURTEETH DISTRICT OF TEXAS AT HOUSTON

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
2/24/2015 8:36:34 AM
CHRISTOPHER A. PRINE
Clerk

ALAVOOR VASUDEVAN
Appellant
(Defendants below)
vs.
DEEPA VASUDEVAN
Appellee
(Plaintiffs above)

# REPLY BRIEF OF APPELLANT, EXCERPT OF RECORD

Appeal from the Judgment of Dissolution of Marriage entered on May 27, 2014 in the Brazoria County 300th District Court, Honorable K. Randall Hufstetler, Judge

Attorneys for Appellant below:
Alavoor Vasudevan
Pro Se
PO Box 710163
Houston TX 77271
Email: alavoor@gmail.com
Phone: 832-244-1927

Attorneys for Appellee below:

Kelly McClendon  (appeals lawyer)
SBN: 13407200
P O Box 3457
Lake Jackson, Texas 77566
Email: kdmcclendon@comcast.net
Telephone: 979-299-0755

Ron Brownstein (trial court lawyer)
SBN: 03229800
5208 West Broadway, Suite 200
Pearland, TX 77581
Email: rbrownstein@hotmail.com
Phone: 281-485-2770
Fax: 281-485-4128

# IDENTITY OF PARTIES AND COUNSEL

**Appellant's Trial and Counsel**
Alavoor Vasudevan
Pro Se (Appellant)
PO Box 710163
Houston TX 77271
Email: alavoor@gmail.com
Phone: 832-244-1927

Annette M. Henry
Texas State Bar No. 09478020
The Henry Law Firm
1314 Texas Avenue, Suite 400
Houston TX 77002
(713) 236-1818
Fax: 281-768-2439

**Appellee's Counsel**
Kelly McClendon
Texas State Bar No. 13407200
P O Box 3457
Lake Jackson, Texas 77566
Email: kdmcclendon@comcast.net
Telephone: 979.299.0755

Ron Brownstein
Texas State Bar No. 03229800
Ron Brownstein
SBN: 03229800
5208 West Broadway, Suite 200
Pearland, TX 77581
Email: rbrownstein@hotmail.com
Phone: 281-485-2770
Fax: 281-485-4128

## Table of Contents

**I. REFERENCES TO THE PARTIES AND TO THE RECORD.....7**

**II. STATEMENT OF THE CASE......................................................7**

**III. STATEMENT REGARDING ORAL ARGUMENT....................8**

**IV. ISSUES PRESENTED.........................................................9**

**V. STATEMENT OF FACTS...................................................14**

**VI. SUMMARY OF THE ARGUMENTS....................................17**

**VII. ARGUMENT................................................................19**

**VIII. PRAYER...................................................................21**

**IX. ANSWERS TO APPELLEE's BRIEF of 30 Jan 2015................23**

**CERTIFICATE OF SERVICE..............................................30**

**X. APPENDIX...................................................................31**

Appendix A Trial Courts Judgment 08 Oct 2014 - RR3.......................31

Appendix B Trial Courts Judgment 27 May 2014 - RR2....................32

Appendix C Final Decree of Divorce (Trial Court)..............................33

Appendix D Inventory filed by Husband..............................................34

Appendix E Court's Division based on Inventory filed by Wife..........40

Appendix F Proof filed by Husband for Community Estates...............41

Appendix G Proof filed by Husband for hidden gold bars of wife.......44

Appendix H Court reporters – Exhibit List 27 May 2014...................46

Appendix I Court Reporters – Vol 2 of 3 27 May 2014......................47

Appendix J Texas Family Code 3.003 - Community Estates...............48

Appendix K Texas Penal Code 2.01 - Cruelty by Husband..................48

Appendix L Felony Charge on Wife's Attorney filed by Husband.......49

Appendix M Health Reports of Husband.............................................52

Appendix N Objections to Wife's Inventory........................................53

Appendix O Index from District Clerk Office.....................................54

Appendix P Notice of Appeal Sent through District Clerk Office........60

Appendix Q Order From Appeals Court 19 Feb 2015..........................65

# INDEX OF AUTHORITIES

**Cases:**                                                                                                      **Page**

*Baccus v. Baccus,* 808 S.W. 2d 694, 700 (Tex.App. – Beaumont 1991, no writ); Disparity in income                                                                                      …......... **10**

*Rafidi v. Rafidi*, 718 S.W. 2d 43, 44 (Tex. App. – Dallas 1986,no writ);Disparity in income                                                                                      …......... **10**

Farley v. Farley; 930 S.W.2d 208 (Tex. App. – Eastland 1996, no writ)         ….**21**

Faram v. Gervitz-Faram, 895 S.W.2d 839 (Tex. App. – Fort Worth 1995)         ....**21**

*Gaston v. Gaston*, 608 S.W. 2d 556, 557-78 (Tex. Civ. App. – El Paso 1981, no writ) - Due to health conditions                                                                       …......... **29**

*Huls v. Huls*, 616 S.W. 2d 312, 317 (Tex. Civ. App. – Houston (1st Dist.) 1981, writ ref'd n.r.e.) - Due to health conditions                                                           …......... **29**

Murff v. Murff, `615 S.W.2d 696 (Tex.1981.` The 11 *Murff* factors for division of marital estate                                              …...............…...**11,13,17, 21**

*McCartney v. McCartney*, 548 S.W.2d 435, 439 (Tex. Civ. App. Houston [1st Dist] 1976, no writ).Physical health of parties                                                           …......... **11,20**

Panozzo v. Panozzo, 904 S.W.2d 780 (Tex. App. – Corpus Christi, 1985) …....... **21**

*Roberts v. Roberts*, 535 S.W.2d 373, 374 (Tex. Civ. App. – Tyler 1976, no writ Disparity in age                                                                                    …......... **10**

*Schleuter v. Schleuter*, 975 S.W.2d 584, 588 (Tex. 1988)                       …....…. **10, 18**

*Trevino v.Trevino*, 555 S.W. 2d 792, 802-03 (Tex. Civ. App. – Corpus Christi, 1977, no writ).Length of a marriage – very long or brief                                                 …......... **11**

Wilson v. Wilson, 44 S.W. 3d 597 (Tex. App. – Fort Worth 2001, no pet.)........... **21**

Young v. Young, 609 S.W. 2d 758, 761 (Tex. 1980).                            …......... **21**

Zieba v. Martin, 928 S.W.2d 782 (Tex. App. – Houston [14th Dist] 1996) .......................................................... **8, 21**

**<u>Rules:</u>**

## Chapter 3 Marital Property Rights and Liabilities  …............. **15,21,22,40**

Sec.3.003. Presumption of community property

Sec. 3.003.  PRESUMPTION OF COMMUNITY PROPERTY.  (a)  Property possessed by either spouse during or on dissolution of marriage is presumed to be community property.
(b)  The degree of proof necessary to establish that property is separate property is clear and convincing evidence.
Added by Acts 1997, 75th Leg., ch. 7, Sec. 1, eff. April 17, 1997.

## CHAPTER 2. BURDEN OF PROOF  …..................……….............................. **40**

Texas Penal Code for Proof Beyond a reasonable doubt

Sec. 2.01.  PROOF BEYOND A REASONABLE DOUBT.  All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt.  The fact that he has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial.

Acts 1973, 63rd Leg., p. 883, ch. 399, Sec. 1, eff. Jan. 1, 1974.  Amended by Acts 1993, 73rd Leg., ch. 900, Sec. 1.01, eff. Sept. 1, 1994.

## I.  REFERENCES TO THE PARTIES AND TO THE RECORD

Petitioner/Appellant Alavoor Vasudevan will be referred to as "ALAVOOR," Respondent/Appellee Deepa Vasudevan will be referred to as "DEEPA." The clerk's record will be referred to as "CR" followed by a reference to the appropriate page, and the reporter's record will be referred to as "RR" for the master index, "RR2 for the record from the trial, "RR3" for the record from the motion for new trial, and "RR4" for the trial exhibits volume. The index from district clerk which was sent to Appeals Court by the District Clerk Office will be referred as "IDX" followed by page number (Appendix O). The brief of Appellee will be referred as "BR" followed by page number and brief of Appellant as "BA".

Also this PDF document has bookmarks for easy navigation (In PDF reader, click on menu View:->Show:->NavigationPanes:->Bookmarks).

## II.  STATEMENT OF THE CASE

This is an appeal from a divorce proceeding. Following a bench trial, the court rendered its judgment without considering husband's inventory, without admitting wife's inventory and without investigating the protective order filed by wife (Appendix D, IDX 364, RR3 page 12 line 4, RR3 page 5 line 12, RR3 page 8 line 25, page 9 line 18, page 10 line 14, RR4 page 3 line 4,7,9; BR at 11). Also trial court did not confirm the separate property as per the rules[1] (Appendix E, IDX 297, RR2 pg41 line20, RR2 pg43 line10, pg44 line1, pg44 line14). Judgment was signed and entered on August 15, 2014 (CR at 348, Appendix C). ALAVOOR filed a motion to reconsider (IDX 364) which was denied and the trial court said *let Appeals court handle this* and Alavoor filed appeals (RR3 pg 11 line 8, RR3 page 4 line 13, IDX 373, Appendix P).

The Appellee DEEPA filed brief with Appeals court on 30 Jan 2015 raising some objections (BR 12), and Appeals court filed order on 19 Feb 2015 striking the Appellant brief of 27 Jan 2015 and ordered Appellant to file modified and amended

---

[1] Tex. Fam. Code §3.003(b) The degree of proof necessary to establish that property is separate property is clear and convincing evidence. The proof should be strong and in papers with clear trace of money.

brief within 10 days and to provide adequate citations to the record (Appendix Q). This brief is accordingly modified to confirm with Appeals Court order and TRAP 38.1, and also answers all the objections and questions of Appellee's brief (in section IX page 20).

## III. STATEMENT REGARDING ORAL ARGUMENT

Appellant requested oral argument, but Appeals court denied the request. But appellant is still open to oral argument, in case appeals court thinks oral argument is needed to clarify any questions or points.

## IV. ISSUES PRESENTED

**1.** Trial court classified the community estates as separate properties of wife, even without clear and convincing evidence. Wife has classified the CitiNRI account, DLR account as separate property but it is a community estate as husband had provided proof (Appendix F , RR3 at 8 line 25, RR3 pg9 line11; RR2 at 41 line 20, RR2 at 42 line 16, RR2 at 43 line 10, RR2 at 44 line 1; IDX 307, IDX 339, IDX 342, IDX 364, RR4 pg 3 line 4,7,9,11,13; RR4 pg 4). In Appendix F which is same as IDX 325 Exhibit 2, appellant had shown proof that money in joint a/c about $110,000 was withdrawn by wife and deposited into Citi bank. Hence, inventory item #1 CitiNRI is a community estate. Also inventory #2 DLR land was purchased after marriage with funds from joint investments, hence it is also community estate.

As per the Texas Family Law Code, Sec.3.003 PRESUMPTION OF COMMUNITY PROPERTY, property bought during the marriage is community estate. And degree of proof necessary to establish that property is separate property is clear and convincing evidence (Ref. Texas Statutes Chap 3 Sec.3.003, Appendix J). All the luxury furniture in possession of wife was declared as separate property even though it is community estate bought during marriage.

Wife's inventory filed is Fourth Amended Inventory (RR4 Exhibit 5, Appendix H, IDX 373) which had wrong figures and incorrect amounts (RR2 page 5 line 20). Husband raised objections to wife's inventory (RR2 pg41 line20, RR2 pg43 line10, pg44 line1, pg44 line14). The trial court's judge had never said "Five is admitted", see between "Four is admitted" (RR2 pg43 line1) and "Six is admitted" (RR2 pg49 line19). There was never a word saying "exhibit five is admitted". Hence, wife's inventory is rejected by the trial court and judge. But in spite of this how the trial court made error by putting this Exhibit 5 as admitted? No one knows! Trial court made error. [1]

---

[1] The Trial Court's discretion is not unlimited and, a division of property can be overturned by appellate review if it is so unjust and unfair as to constitute an abuse of discretion. *Zieba v. Martin*, 928 S.W.2d 782, 786-87 (Tex. App. – Houston [14th Dist] 1996, no writ). Every case must be reviewed on its own merits to determine whether an unequal distribution is justified.

**2.** Wife was hiding, concealing community properties like gold bars, gold coins and trial court did not give chance to husband to exhibit the documents of proof for gold and sustained the objections of wife's attorney (Appendix G , RR3 pg 9 line 18, RR2 pg 76 line 7, RR2 pg 77 line 7, RR4 page 3 line 13; page 4 line 4, Appendix N exhibit 13, BA pg 203). [1]

ALAVOOR did disclose in his inventory about gold bars in item 3 "Jewelery and Personal effects" (IDX 364, RR3 page 12 line 4, RR3 page 5 line 12, RR3 page 8 line 25, page 9 line 18, page 10 line 14, RR4 page 3 line 4,7,9). ALAVOOR wants fair share of the gold(community estates) which wife is hiding and concealing.

**3.** Husband was not given fair treatment by trial court. Husband was denied to expose the hiding of gold assets by wife due to objection raised by opposing counsel. Judge was favoring wife's attorney for unknown reasons (may be he is his friend?). I was a stranger to Judge as I had never seen him before. Also opposing attorney Ron Brownstein was stealing husband's postal mails which came to wife's home (RR2 pg 87 line 8). A case of felony was filed by husband against the wife's attorney Ron Brownstein charging the attorney for breaking the federal/state laws and the case is pending hearing in near future in Houston District Court ( Appendix L ). And this was also referenced in the deposition of ALAVOOR taken by wife's attorney (IDX 309). If the trial court was impartial then trial court could have admitted the documents submitted by husband (ALAVOOR) and could have considered the health conditions and other factors of husband and could have awarded much higher share of the property to innocent husband. And this contention was certainly raised in trial court by husband (RR2 pg 87 line 8, IDX 304, IDX 339, IDX 364, Appendix M Health reports of husband, IDX 312, RR3 pg 5 line 18). And there are limits on Appellant to raise wrong doings of Judge (or Trial Court) because higher courts like 'Appeals Court' can handle those mistakes made by trial court and correct it. [2]

---

[1] Fraud on the community is a wrong by one spouse that the court may consider in its division of the estate of the parties and that may justify an unequal division of the property. *Schleuter v. Schleuter*, 975 S.W.2d 584, 588 (Tex. 1988).

[2] Disparity in income *Baccus v. Baccus,* 808 S.W. 2d 694, 700 (Tex.App. – Beaumont 1991, no writ); *Rafidi v. Rafidi*, 718 S.W. 2d 43, 44 (Tex. App. – Dallas 1986,no writ);
[2] Disparity in age *Roberts v. Roberts*, 535 S.W.2d 373, 374 (Tex. Civ. App. – Tyler 1976, no writ

**4.** Trial court did not consider the health conditions of the husband (Appendix M) and age factors and declared husband as being "cruel" even without any verification. The health reports of husband were sent to district clerk, Judge and to wife's attorney on 15 June 2014. Wife's attorney acknowledged/signed proof of delivery the document sent by registered email 16-Jun-14 at 09:50:54am. (See also: IDX 312, RR3 pg 5 line 18). The title was: "Prayer – Corrections to wordings in judgment" which contained health reports of husband.[1]

The protective orders are generally abused by wives to gain advantage and punish innocent husbands ( Appendix K ). Wife did not prove any of the charges (nor produce any witnesses) as filed by her in the protective order. And trial court made a mistake of simply taking the words in the filing of wife's protective order without any verification. (RR3 pg 5 lines 3-11, RR3 pg 7 lines 1-15, pg 8 line 9, RR3 pg 9 lines 4-10, RR2 pg 7 line 25, RR2 pg 8 line 21, IDX 8).

**5.** Court is there to do justice and protect the innocent but trial court did not make any attempts to protect the innocent husband and to do justice. The trial court made mistake of sustaining the objections raised by wife's attorney even though the documents submitted were correct and in favor of justice towards husband (RR4 pg 3 line 7-13 and pg 4 lines 4-6; RR2 pg 71 line 24, pg 72; ). The trial court was not responsible at all in protecting the justice and this can be corrected by Appeals court (IDX 304,307,312,325,339,364). Also appellant filed with district clerk all the documents about the health reports and objections to wife's inventory but during trial judge denied motion saying "..let court of appeals deal with it..." (RR3 pg 11 line 8; Appendix M Health reports of husband; IDX 312, RR3 pg 5 line 18). ALAVOOR cannot raise complaint in the trial court against the Judge but ALAVOOR can make complaints to the higher court like Appeals court against the trial court. Trial court ignored other factors. [2]

---

1 Physical health of parties *McCartney v. McCartney*, 548 S.W.2d 435, 439 (Tex. Civ. App. Houston [1st Dist] 1976, no writ).

2 Length of a marriage – very long or brief *Trevino v. Trevino*, 555 S.W. 2d 792, 802-03 (Tex. Civ. App. – Corpus Christi, 1977, no writ).

**6.** Judge denied motion saying that "You have filed in appeals court, hence let the Court of Appeals deal with it from this point and hence I deny the hearing..." (RR3 pg 11 line 8, Appendix A). ALAVOOR filed several complaints with Judge/District clerk to correct the judgment (IDX 304,307,312,325,339,364; RR3 pg 4 lines 19-25; pg 5; RR3 pg 8-10; RR3 pg 12 line 4), and also gave verbal testimony/request to judge during the second trial. But trial court made mistake of denying motion simply saying "let appeals court handle it from this point" (RR3 pg11 line8).

**7.** Trial court did not consider:

- *Fault In The Failure Of The Marriage:* Husband is innocent divorcee because wife rejected/dumped the husband due to bad health (Appendix M IDX 312, RR3 pg 5 line 18). Trial court did not consider the "Benefits The Innocent Spouse Would Have Received By Continuation Of The Marriage": Akin to the assessment of fault approach is the compensation for the losses the innocent spouse will suffer by reason of the divorce. Certain valuable benefits may be lost (and perhaps be irreplaceable) as a result of the divorce. The original petition of divorce filed by ALAVOOR mentions about the how the division of property should happen (IDX 46). Petitioner should be awarded a disproportionate share of the parties' estate for the following reasons: fault in breakup of the marriage; fraud on the community; benefits the innocent spouse may have derived from the continuation of the marriage; disparity of earning power of the spouses and their ability to support themselves; physical health of the spouses; education and future employability of the spouses; ages of the spouses; earning power, business opportunities, capacities, and abilities of the spouses; increase in value of separate property through community efforts by time, talent, labor, and effort; expected inheritance of a spouse; the size and nature of the separate estates of the spouses; length of the marriage.[1]

---

[1] Supreme Court in *Murff v. Murff,* 615 S.W.2d 696, 700 (Tex. 1981) cited a number of factors (11) that can be specifically considered by the Court in making an unequal division of the marital estate

The Appendix M is part of the record (IDX 312, RR3 pg 5 line 18). Trial court also did not consider the factor that ALAVOOR is suffering from diabetes, dementia (Alzheimer due to diabetes). Trial court failed to help the disadvantaged due to health problems. Also, trial court wrongly deduced fault in the break-up of the marriage, as protective orders are abused and no proof or witnesses were produced by wife (RR3 pg 5 line 9, pg 7 lines 1-15). The trial court was blind and did not consider the objections of husband against the protective order and the valid health reasons of husband (RR3 pg5, pg7).

- *Disparity Of Earning Capacities:* A gap between the business opportunities available to the spouses, a disparity in incomes, a difference in earning capabilities, and associated facts may affect the division of property. [1]

- *Physical Condition, Health:* Physical health (or lack thereof) which affects the division of property between the spouses (Appendix M IDX 312, RR3 pg 5 line 18). [1]

- *Difference In Ages:* A disparity in the ages of the parties may have a bearing upon ability to work, eligibility of a party for retirement benefits, etc. and, therefore, is a factor in dividing property. Husband is older to wife by 7.5 years. [1]

---

[1] Supreme Court in *Murff v. Murff,* 615 S.W.2d 696, 700 (Tex. 1981) cited a number of factors (11) that can be specifically considered by the Court in making an unequal division of the marital estate

## V. STATEMENT OF FACTS

### Summary

Date of Marriage : 29 March 1992 (RR2 pg 20 line 25)

Age of the Parties:  Husband        52 yrs (DOB 07 July 1962)

                             Wife           44 yrs (DOB 17 Nov 1969)

Ages of Children    Daughter     19 yrs (DOB DD MMM YYYY)

Support:               Husband paid child support until daughter graduated from high school.

Divorce Dissolution: 27 May 2014 Trial court, Brazoria

Second Hearing     :  08 Oct 2014  Trial court, Brazoria

This is a divorce case involving the issue of property division (IDX 297, RR2, RR3, RR4). Husband seeks modification of the judgment of dissolution (RR2) to award him greater than 60% of the community estates (IDX 364, IDX 339). And to classify the properties which were wrongly termed as the separate estates of wife into community estates. Also to modify the terms used in trial court's judgment where in the husband was declared doing "cruelty" (RR2 pg 92 line 19) even without doing any verification of cruelty and without any proof or witness for cruelty. Wife needs to update the inventory as of 27 May 2014 as her inventory filed is old and used old financial statements and not as of May 2014 (Appendix D,  IDX 364).

### Nature of Judgment

After a trial to the court, a Judgment of Dissolution of Marriage was entered (IDX 348, RR2). Such judgment forms the basis for this appeal. Trial court awarded higher percentage (60%) of community estates to wife without considering the real facts of the innocent husband (husband's health, age, earning power, community estates and other factors) (Appendix M, IDX 312, RR3 pg 5 line 18).

### Effective Date for Appeal

Since the health conditions of husband was very bad (IDX 312, RR3 pg5), wife had filed false Protective Order to gain higher divisions in the properties

*Case No. 14-14-00765-CV*

instead of filing divorce first. On June 27, 2011, wife filed for Protective Order in cause number 63935 (IDX 8), thereafter temporary orders were issued dated July 22, 2011. On 19 Jan 2012 husband filed for divorce in cause number 66539; wife filed a counter-petition for divorce and these two actions were consolidated under the lower cause number 63935 on 29 Mar 2012 (IDX 46). The Judgment of Dissolution of Marriage was entered on 27 May, 2014 and trial court awarded 60% to wife even without considering the health conditions of husband, earning capacity of wife and other factors. And thereafter a new trial to reconsider was filed by husband and it was heard on 8 October 2014, but was denied on the basis that "Notice of Appeals" was filed with 14th Court of Appeals and no justice was done to husband. The Notice of Appeal was filed on 14 Sep 2014. Husband denied the charges of cruelty as they were falsely framed by wife without any proof or witness. ((RR2 pg 92 line 19, RR2, RR3, RR4)

**General Summary**

The parties were married in 29 March 1992 when husband was 29 and wife 22 (RR2 pg9). Husband had completed his education at that time, having received Master's degree in 1989 and was working for tech company in California. Wife was still attending medical college (RR2 pg18) and husband supported financially and physically to complete the degree and residency in USA. Baby daughter was born and husband was taking care of the baby while wife was doing college residency. Husband, in addition to supplying the great bulk of the income during wife's schooling/residency, also shared in the domestic chores (Ref: Oral, written depositions (IDX 321) ).

After the parties married, husband was the main source of income for the family until wife started earning in 1998 (RR2 pg 25 line 21).

At the time of hearing, wife was earning $200,000 p.a. and husband was making $90,000 p.a (RR2 pg 19 line 21).

In the year 2005, husband was having serious health problems (Appendix M, IDX 312, RR3 pg 5 line 18) due to diabetes, high blood pressure, high cholesterol, liver problems and eye problems (glaucoma) and was taking medications (Ref: Health reports of husband Appendix M). Wife did not like the health problems of

15 *Case No. 14-14-00765-CV*

the husband and was extremely unhappy. The health problems of husband caused rifts in marriage relationships and caused great amounts of agony. The health problems of husband worsened over time. And the health problems of husband are the major cause of the divorce. From 1992 until 2005, the relationship between wife and husband was very good. After 2005, there were no financial problems as wife was earning large amounts for the family and also husband was earning but there were major health issues of husband. Because of the health issues, husband had problems with the employment. The diabetes was causing serious problems and resulted in memory loss and reduced the focus and capability in engineering job. And hence, husband lost several jobs/employment. In June 2011, wife filed for protective order (IDX 8, RR3 pg 5 lines 3-11, RR3 pg 7 lines 1-15, pg 8 line 9, RR3 pg 9 lines 4-10, RR2 pg 7 line 25, RR2 pg 8 line 21, IDX 8) to throw out the husband and husband made lots of efforts to save the marriage but of no use. Wife indirectly forced husband to file divorce in Jan 2012 and wife also counter-petitioned divorce (IDX 46). Wife had concealed substantial community estates in form of cash, gold bars, gold coins, jewelry and did not disclose those in the inventory (RR3 pg9). Husband tried Motion to Compel discovery but it was denied on March 2013 (IDX 87). The divorce hearing was on 27 May 2014 but justice was not done to innocent husband (RR2). Husband filed for motion for reconsideration trial and on 8 Oct 2014 trial court heard the hearing but did not do any justice and simply referred to Appeals court application and left the decision for Appeals court to decide (RR3 pg11 line7, Ref: Court Reporters records). The trial court did not consider the inventory filed by husband (RR3). And wife's inventory was having amounts and figures which were very old out-dated and were not as of 27 May 2014 (day on which divorce hearing occurred).

16　　　　　　　　　　　　　　　　　　*Case No. 14-14-00765-CV*

## VI. SUMMARY OF THE ARGUMENTS

Wife's classification of CITINRI account ($120,000) and DRL Lands ($52,000) and gold jewelry is without merit because wife had not submitted clear and convincing evidence as per Texas Family code sec3.003. (Appendix F same as IDX 325 Exhibit 2, RR3 at 8 line 25, RR3 pg9 line11; RR2 at 41 line 20, RR2 at 42 line 16, RR2 at 43 line 10, RR2 at 44 line 1; IDX 307, IDX 339, IDX 342, IDX 364, RR4 pg 3 line 4,7,9,11,13; RR4 pg 4).

Wife's filing for protective order is falsified and without merit because there is no proof, witness, medical reports, police reports of any harassment by husband for the past 22 years. Trial court's declaration of husband as cruel is wrong and incorrect because of no verification (IDX 8, RR3 pg 5 lines 3-11, RR3 pg 7 lines 1-15, pg 8 line 9, RR3 pg 9 lines 4-10, RR2 pg 7 line 25, RR2 pg 8 line 21, IDX 8).

Trial court's award of 60% to wife is without merit because it is like rewarding the guilty and punishing the innocent. Trial court was tilting in favor of wife's attorney because the judge may be close friend of wife's attorney and husband is a stranger. Trial court did not consider health of husband and other factors (age, earning capacity, *Murff factors*[1]), husband deserves more than 60% share of property division [1]. (IDX 364, RR3 page 12 line 4, RR3 page 5 line 12, RR3 page 8 line 25, page 9 line 18, page 10 line 14, RR4 page 3 line 4,7,9). Appendix F Proof filed by husband for community estates (RR3 pg 5 line 12, RR2 pg 4 line 9, RR2 pg 78 line 4 and line 10, RR2 pg 88 line 19, IDX 364, RR4 page 3 line 4, RR4 pg 3 line 9,11,13,14, page 4 line 4)

---

[1] The Supreme Court in Murff v. Murff and many intermediate appellate courts have cited a number of factors that can be specifically considered by the Court in making an unequal division of the marital estate. See e.g. Wilson v. Wilson, 44 S.W. 3d 597 (Tex. App. – Fort Worth 2001, no pet.); Farley v. Farley; 930 S.W.2d 208 (Tex. App. – Eastland 1996, no writ); Zieba v.Martin, 928 S.W.2d 782 (Tex. App. – Houston [14th Dist] 1996, no writ); Panozzo v. Panozzo, 904 S.W.2d 780 (Tex. App. – Corpus Christi, 1985, no writ); Faram v. Gervitz-Faram, 895 S.W.2d 839 (Tex. App. – Fort Worth 1995, no writ).

The Supreme Court has held that the circumstances of each marriage dictate what factors the trial court will consider in dividing the community property. Young v. Young, 609 S.W. 2d 758, 761 (Tex. 1980). The existence of one or more of these factors must be proven by a preponderance of the evidence in order to support a disproportionate division.

Wife's submission of inventory is not up to date in figures and amounts and all the inventory figures(amounts) were old, out of date and incorrect. They were not as of May 2014 and also trial court did not consider the inventory submitted by husband while dividing properties. The trial court did not admit the Wife's inventory as trial court's judge had never said "Exhibit Five is admitted", see between "Four is admitted" (RR2 pg43 line1) and "Six is admitted" (RR2 pg49 line19).

If Trial court suppresses exhibits/documents from innocent and supports the attorney of guilty then the final judgment will favor only the guilty and the innocent will get punished. But there is chance provided by law so that appeals court can correct it and protect the innocent and punish the guilty.

Trial court did not consider the fraud on community property by wife, as wife was hiding gold bars and jewels. (Appendix G , RR3 pg 9 line 18, RR2 pg 76 line 7, RR2 pg 77 line 7, RR4 page 3 line 13; page 4 line 4, Appendix N exhibit 13, BA pg 203) [1].

---

[1] Fraud on the community is a wrong by one spouse that the court may consider in its division of the estate of the parties and that may justify an unequal division of the property. *Schleuter v. Schleuter*, 975 S.W.2d 584, 588 (Tex. 1988).

## VII.  ARGUMENT

Texas laws provides that the appellate court will review the case on both the law and the evidence. The trial court's decision must be reversed if it was not legally correct and if the trial court's decision is punishing the innocent and rewarding the guilty. The law must protect the innocent and punish the guilty. The appellant's argument is:

**THE TRIAL COURT'S DECISIONS TO DECLARE COMMUNITY ESTATES (CITINRI A/C, DLR LAND, GOLD BARS) AS SEPARATE PROPERTY WITHOUT ANY CLEAR AND CONVINCING PROOF AS PER TEXAS FAMILY LAW CODE sec 3.003 IS NOT LEGALLY CORRECT.  TRIAL COURT ALSO ERRORED IN TAKING THE OLD AND OUTDATED FIGURES IN THE WIFE'S INVENTORY, AND DID NOT TAKE INTO CONSIDERATION THE LUXURY FURNITURES AS COMMUNITY ESTATES. TRIAL COURT DID NOT ADMIT WIFE'S INVENTORY. [1]**

**THE TRIAL COURT DECLARED THE HUSBAND AS CRUEL[2] EVEN WITHOUT VERIFYING THE WITNESS, POLICE RECORDS, MEDICAL REPORTS TO PROVE CRUELTY. HUSBAND WAS LIVING WITH WIFE FOR MORE THAN 20 YEARS AND THERE IS NO SINGLE POLICE REPORT, MEDICAL REPORT SUPPORTING CRUELTY, TRIAL COURT WAS BLINDLY TAKING WHATEVER WAS WRITTEN PROTECTIVE ORDER WITHOUT CHECKING ITS VALIDITY AND PROOF. ACTUALLY WIFE WAS BATTERING HUSBAND BECAUSE OF HUSBAND'S ILL HEALTH.**

---

[1] Trial court's judge had never said "Exhibit Five is admitted", see between "Four is admitted" (RR2 pg43 line1) and "Six is admitted" (RR2 pg49 line19), Appendix H, RR4, IDX373.

[2] Trial court's declaration of husband as cruel is wrong and incorrect because of no verification (IDX 8, RR3 pg 5 lines 3-11, RR3 pg 7 lines 1-15, pg 8 line 9, RR3 pg 9 lines 4-10, RR2 pg 7 line 25, RR2 pg 8 line 21, IDX 8)

*Case No. 14-14-00765-CV*

**TRIAL COURT ALSO DID NOT CONSIDER THE SEVERE HEALTH CONDITIONS[1] OF HUSBAND WHILE DIVIDING PROERTY AND EARNING CAPACITY OF WIFE WHO IS MEDICAL DOCTOR AND THE FAULT IN BREAKUP OF MARRIAGE.[2]**

**THE TRIAL COURT ALSO ERRORED BY "TILTING" IN FAVOUR OF THE WIFE'S ATTORNEY, MAY BE BECAUSE THE APPELLANT IS A STRANGER AND UNKNOWN TO JUDGE BUT JUDGE IS A CLOSE FRIEND OF THE WIFE'S LAWYER.**

The Texas family code says that any asset or property bought during the marriage is a community estate unless the party provides the court with clear and convincing evidence to prove that it is a separate estate.

---

[1] Health conditions of husband is very bad (Appendix M, IDX 312, RR3 pg 5 line 18).

[2] Physical health of parties *McCartney v. McCartney*, 548 S.W.2d 435, 439 (Tex. Civ. App. Houston [1st Dist] 1976, no writ).

## VIII. PRAYER

a) Award the husband greater than 60% of community property division because of poor health conditions of husband, age disparity between wife and husband, and income disparities (Appendix M, IDX 312, RR3 pg 5 line 18).

b) Classify CITINRI bank a/c and DLR land as community estate, as wife had no proof of them as separate estates. Husband had submitted proofs that they are community estates (Ref: Appendix F, IDX 325 Exhibit 2, RR3 pg 5).

c) Order wife to update the financial statements in the inventory as of 27 May 2014.

d) Order wife to disclose the 14 gold bars, gold coins and jewelry being hidden by her in the inventory and other hidden assets. (Appendix G, RR3 pg 9 line 18, RR2 pg 76 line 7)

e) Remove the term cruelty of husband from judgment, as wife had not submitted any proof of cruelty like - witness, recordings, video, police reports, medical reports of the same and there was no basis for that at all. (Appendix K, RR2 pg 92 line 19)

f) Appeals court can order wife to pay spousal support to husband for 7 years.

g) Pay for the appeals cost.

h) Accept the Inventory filed by husband Appendix D (IDX 364, RR3 page 12 line 4,  RR3 page 5 line 12, RR3 page 8 line 25, page 9 line 18, page 10 line 14, RR4 page 3 line 4,7,9; BR at 11)

For the above reasons and authorities stated, the Appellant respectfully requests

*Case No. 14-14-00765-CV*

that the judgment of the Brazoria District Court be reversed, do not consider the appellee's Brief (DEEPA's brief) and appellant be given the relief requested.

Dated: 22 February 2015                     Respectfully submitted

                                                    ALAVOOR VASUDEVAN

                                                    _____
                                                    ALAVOOR VASUDEVAN
                                                    Pro Se
                                                    PO Box 710163
                                                    Houston TX 77271
                                                    Email: alavoor@gmail.com
                                                    Phone: 832-244-1927

**Statement as to Typeface:** The font used in this Brief is Times New Roman and the type size is 14 point.

## IX.  ANSWERS TO  APPELLEE's BRIEF of 30 Jan 2015

Appellant ALAVOOR files this reply brief in response to the brief of Appellee which was filed on 30 Jan 2015. And requests the Court to reject brief of appellee and to consider appellant's brief in total and full including the Issues (section V page 15) and grant the prayer (section IX page 24) as in this reply brief. The requests made by the Appellee is against the natural justice and against the human values and dignity of human life. The Appellee is unnecessarily bringing up trivial rules and is desperate to suppress the truth, and obstruct the justice to innocent Appellant. Trial court completely ignored the fact that appellant ALAVOOR is suffering from serious health issues while dividing the property and also committed several other mistakes as detailed below. These mistakes of trial court can be rectified by Appeals court.

**The court is there to do Justice and to protect the innocent and punish guilty.** The trial court's ruling goes against this statement and had damaged this very foundation of the law which is to **"protect innocent and punish guilty".** And Appeals court can rectify the mistakes of trial court.

In this reply brief, all the false complaints of appellee are addressed and minor changes like adding references and additional trial court document "Index from district clerk" is added in Appendix O.

BR 7 says "... *Appellant's allegations are not supported by record...*". But appellant's allegations are indeed supported by the record and this reply brief clearly shows those issues in section V page 15.

BR 8 Appellee's brief is falsifying and trying to mislead the Appeals court (BR at 8), as it says *"presents no issues for review, no statement of facts, no argument, and no prayer for relief"* even though the brief filed on 27 January 2015 is indeed having sections for Issues (sec III BA at 7), statement of facts  (sec IV BA at 9), argument (sec VI BA at 12), prayer (sec VII BA at 14). Also Appellee in BR at 8 (3) says redactions are inadequate without specifying details and Appellant's brief is properly redacted as requested. Appellee is desperately trying to bring up trivial issues to disrupt justice.

BR 8 Appellee says *"no notice of appeal is included in the clerk's record, the*

*appeal should be denied...”* (BR at 8). But TRAP 25 says "If a notice of appeal is mistakenly filed with the appellate court, the notice is deemed to have been filed the same day with the trial court clerk, and the appellate clerk must immediately send the trial court clerk a copy of the notice." See also Appendix P 'Notice of Appeal from District Clerk' and RR3 page 4 line 13, IDX 373. Again, this is a trivial issue appellee is trying to snowball.

BR 9 Appellee says *“...He failed to comply with TRAP 38.1...TRAP 33.1”* but this brief by appellant has all the sections as per TRAP 38.1 and complies with it and complies with TRAP 33.1 (Rule 38. Requisites of Briefs - 38.1. Appellant's Brief). In this brief references to court records are included.

Record references and citation to authorities: TRAP 38.1 Index of Authorities. This brief includes some of the citation mentioned in the Index of Authorities. And Appellant's brief is fully complying with TRAP 38.1

TRAP 33.1: This rule requires appellate complaints to be supported by record references and by citation to authorities. The brief is wholly devoid of a single reference to the record. When a party fails to include references, the appellate complaint is waived. See, Nguyen v. Kosnoski, 93 S.W.3d 186, 188

Added references in all the sections, in the "Issues Presented" CR references for items are added.

Appendix D Third Amended Inventory Filed by Husband is on record (BR at 11, IDX 364, RR3 page 12 line 4,  RR3 page 5 line 12, RR3 page 8 line 25, page 9 line 18, page 10 line 14, RR4 page 3 line 4,7,9)
Appendix F Proof filed by husband for community estates (BR 11, RR3 pg 5 line 12, RR2 pg 4 line 9, RR2 pg 78 line 4 and line 10, RR2 pg 88 line 19, IDX 364, RR4 page 3 line 4, RR4 pg 3 line 9,11,13,14, page 4 line 4) Trial court made mistake of not admitting Appendix F during 1st trial. And in the 2nd trial when this issue pointed (RR3 pg 10 line 14), the judge said since appeal is being filed, let

appeals court deal with it (RR3 pg 11 line 8).

Appendix G 'Missing items in inventory': Wife's handwriting 14 Gold bars (BR 11). The Appendix G was referenced in trial and in court filings (RR3 pg 9 line 18, RR2 pg 76 line 7, RR2 pg 77 line 7, RR4 page 3 line 13;  page 4 line 4, Appendix N exhibit 13, BA pg 203)

Appendix H is exhibit index as reported by trial court (IDX 373).

Appendix I is a marker for record below.

Appendix L Felony charge on Wife's attorney, a separate case is filed against wife's attorney for his violations. And this is related to this case and referenced at (RR2 pg 87 line 8-25) and this was also referenced in the deposition of Alavoor taken by wife's attorney (IDX 309).

Appendix M Health reports of husband. The health reports of husband were sent to district clerk, Judge and to wife's attorney on 15 June 2014. Wife's attorney acknowledged/signed proof of delivery the document sent by registered email 16-Jun-14 at 09:50:54am. (See also: IDX 312, RR3 pg 5 line 18). The title was: "Prayer – Corrections to wordings in judgment" which contained health reports of husband.

BR 12 Regarding TRAP 33.1 *"...failed to preserve his complaints...."*, appellant had indeed made the complaint to trial court via Motion to "Reconsideration of Trial and Notice of Appeal" (IDX 364, RR3 pg 4 line 13,  pg 8 line 18, pg 10 line 5, pg 10 line 23, pg 11 line 7). The trial court Judge denied the motion saying "*...you have already given notice of appeal, so we'll let the Court of Appeals deal with it....*"(RR3 pg 11 line 7) and no justice was done to innocent husband. Appellant also filed in Trial Courts several documents raising objections to inventory and to the wordings in the decree. So this proves ALAVOOR did preserve his complaints.

BR 12 *each of the seven issues appellant had given the reference to appendix*. In this doc now has references to the court records. Appellant did bring up these seven issues to the Trial Court but the trial court either denied admission or sustained the objection of the wife's attorney. Trial court did injustice to husband (may be because wife's attorney is a friend of trial court judge?). Also appellant did not hire lawyer because could not afford high very fees of attorney. Trial court made a

grave mistake of not admitting the exhibits and documents of the appellant. **When the court does not admit documents from innocent and sustains objections of guilty party, and admits all the documents of the guilty then the guilty will win the case and innocent will be hanged to death!!**

**Issue one:** BR 13 says "RR3 at 3" but there is only index at page 3. Also BR 13 says *"... inventory, which was admitted without objection...",* appellant raised objections to inventory filed by wife (RR3 at 8 line 25; RR2 at 41 line 20, RR2 at 42 line 16, RR2 at 43 line 10, RR2 at 44 line 1; IDX 307, IDX 339, IDX 342, IDX 364, RR4 pg 3 line 4,7,9,11,13; RR4 pg 4).

Wife's inventory filed is Fourth Amended Inventory (Exhibit 5) which had wrong figures and incorrect amounts (RR2 page 5 line 20). Husband raised objections to wife's inventory (RR2 pg41 line20, RR2 pg43 line10, pg44 line1, pg44 line14). The trial court's judge had never said "Five is admitted", see between "Four is admitted" (RR2 pg43 line1) and "Six is admitted" (RR2 pg49 line19). There was never a words saying "exhibit five is admitted". Hence, this proves that wife's inventory is rejected by the trial court and judge. But in spite of this how the trial court made error by putting this Exhibit 5 as admitted? No one knows!

Wife verbally telling in the court is not the proof of establishing a property as community estate but needs to provide all the documents and proof beyond any doubt. Wife DEEPA had not provided any such proof. BR 13 says ".. *were identified on her inventory, which was admitted without objection.....*" is proved as a false statement by this paragraph and references in this para.

**Issue two:** BR 14 "...*Deepa hide gold bars, Appendix G not part of court record...",* is again wrong, the Appendix G was referenced in trial and in court filings (RR3 pg 9 line 18, RR2 pg 76 line 7, RR2 pg 77 line 7, RR4 page 3 line 13; page 4 line 4, Appendix N exhibit 13, BA pg 203). ALAVOOR did disclose in his inventory about gold bars in item 3 "Jewelery and Personal effects" (IDX 364, RR3 page 12 line 4, RR3 page 5 line 12, RR3 page 8 line 25, page 9 line 18, page 10 line 14, RR4 page 3 line 4,7,9). Hence BR page 14 is proved wrong.

**Issue three:** BR 14 Appendix L Felony charge on Wife's attorney, a separate case is filed against wife's attorney for his violations. And this is related to this case and

was referenced at (RR2 pg 87 line 8) and this was also referenced in the deposition of Alavoor taken by wife's attorney (IDX 309). If the trial court was impartial then trial court could have admitted the documents submitted by husband (ALAVOOR) and could have considered the health conditions and other factors of husband and could have awarded much higher share of the property to innocent husband. And this contention was certainly raised in trial court by husband (RR2 pg 87 line 8, IDX 304, IDX 339, IDX 364, Appendix M Health reports of husband, IDX 312, RR3 pg 5 line 18). And there are limits on Appellant to raise wrong doings of Judge (or Trial Court) because higher courts like 'Appeals Court' can handle those mistakes made by trial court and correct it. Appellant can raise those contentions and seek justice from higher court like 'Appeals Court'. And appellant (ALAVOOR) is doing it now in 14th Appeals Court.

**Issue four:** BR 15 ALAVOOR's health, age of parties, cruelty finding Appendix M and K. Appendix M is indeed part of the record. The health reports of husband were sent to district clerk, Judge and to wife's attorney on 15 June 2014. Wife's attorney acknowledged/signed proof of delivery the document sent by registered email 16-Jun-14 at 09:50:54am. (See also: IDX 312, RR3 pg 5 line 18). The title was: "Prayer – Corrections to wordings in judgment" which contained health reports of husband. In the first trial appellant forgot to mention about health conditions because appellant cannot remember due to diabetes which causes memory loss (diabetes causes dementia, Alzheimer). But appellant did submit to the court, judge and district clerk the copies of health reports (IDX 312).

Appendix K 'Texas penal code 2.01 – Cruelty of Husband' is relevant to this case, as wife did not prove any of the charges (nor produce any witnesses) as filed by her in the protective order. And trial court made a mistake of simply taking the words in the filing of wife's protective order without any verification. (RR3 pg 5 lines 3-11, RR3 pg 7 lines 1-15, pg 8 line 9, RR3 pg 9 lines 4-10, RR2 pg 7 line 25, RR2 pg 8 line 21, IDX 8).

Hence, due to above reasons, appeals court will indeed take into consideration the issue four.

**Issue five:** BR 15 *"...no attempt to protect innocent husband and do justice...."*. The trial court made mistake of sustaining the objections raised by wife's attorney

even though the documents submitted were correct and in favor of justice towards husband (RR4 pg 3 line 7-13 and pg 4 lines 4-6; RR2 pg 71 line 24, pg 72; ). The trial court was not responsible at all in protecting the justice and this can be corrected by Appeals court (IDX 304,307,312,325,339,364). Also appellant filed with district clerk all the documents about the health reports and objections to wife's inventory but during trial judge denied motion saying "..*let court of appeals deal with it...*" (RR3 pg 11 line 8; Appendix M Health reports of husband; IDX 312, RR3 pg 5 line 18). ALAVOOR cannot raise complaint in the trial court against the Judge but ALAVOOR can make complaints to the higher court like Appeals court against the trial court or judge. In case the trial court makes mistakes/errors and if you go against the judge in trial court, then it becomes contempt of court. ALAVOOR can appeal to higher court only. Because of all these reasons, the appeals court must consider the issue five.

**Issue six:** BR 15 "...*No evidence was admitted, physical or testimonial...*". ALAVOOR filed several complaints with Judge/District clerk to correct the judgment (IDX 304,307,312,325,339,364; RR3 pg 4 lines 19-25; pg 5; RR3 pg 8-10; RR3 pg 12 line 4),   and also gave verbal testimony/request to judge during the second trial. But trial court made mistake of denying motion simply saying "let appeals court handle it from this point". Hence, issue six must be considered by appeals court.

**Issue seven:** BR 16 ".. *fault in the break-up ...*". The original petition of divorce filed by ALAVOOR mentions about the how the division of property should happen (IDX 46) and below are excerpts from it:

*Petitioner should be awarded a disproportionate share of the parties' estate for the following reasons, including but not limited to:*

    *a.    fault in the breakup of the marriage;*
    *b.    fraud on the community;*
    *c.    benefits the innocent spouse may have derived from the continuation of the marriage;*
    *d.    disparity of earning power of the spouses and their ability to support themselves;*
    *e.    health of the spouses;*

28                                        *Case No. 14-14-00765-CV*

*h.        education and future employability of the spouses;*
*k.        ages of the spouses;*
*l.        earning power, business opportunities, capacities, and abilities of the*
*spouses;*
*s.        increase in value of separate property through community efforts by*
*time, talent, labor, and effort;*
*v.        expected inheritance of a spouse;*
*y.        the size and nature of the separate estates of the spouses;*

And Appendix M is part of the record (IDX 312, RR3 pg 5 line 18). Trial court also did not consider the factor that ALAVOOR is suffering from diabetes, dementia (Alzheimer due to diabetes). Trial court failed to help the disadvantaged due to health problems [1].

Also, trial court wrongly deduced fault in the break-up of the marriage, as protective orders are abused and no proof or witnesses were produced by wife (RR3 pg 5 line 9, pg 7 lines 1-15). The trial court was blind and did not consider the objections of husband against the protective order and the valid health reasons of husband (RR3 pg5, pg7).
Hence, appeals court must consider this issue seven.

All other sections in this brief are now part of this "Reply Brief of Appellant". BR12 TRAP 33.1 Added citations to record and authorities to seven issues in BA.

---

[1]*Huls v. Huls*, 616 S.W. 2d 312, 317 (Tex. Civ. App. – Houston (1st Dist.) 1981, writ ref'd n.r.e.) - Due to health conditions

*Gaston v. Gaston*, 608 S.W. 2d 556, 557-78 (Tex. Civ. App. – El Paso 1981, no writ) - Due to health conditions

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing "Brief of Appellant" was directed to Appellee Deepa Vasudevan, by and through their attorney Kelly McClendon, SBN: 13407200, P O Box 3457, Lake Jackson, Texas 77566 email: kdmcclendon@comcast.net phone: 979-299-0755, via email on this 22 February 2015.

Total word count = 10913

Total number of pages = 30 (excludes appendix)

_____
ALAVOOR VASUDEVAN
Pro Se
PO Box 710163
Houston TX 77271
Email: alavoor@gmail.com
Phone: 832-244-1927

# X. APPENDIX

*Appendix A  Trial Courts Judgment 08 Oct 2014 - RR3*

The trial courts judgment is attached in case envelope and also the exhibits. And this is sent directly to the 14th Appeals Court from the Court Reporter, 300th District Court. This is Reporter's Record Vol 3 of 3 by Kim Keeler, CSR, 300th District Court.

See also the "Order denying motions 10-8-14" (IDX 372).


As per TRAP 38.1(k)(1) which says brief "must contain a copy of the trial court's judgment or other appealable order from which relief is sought". Hence, included here is the copy of the trial courts record RR3.

REPORTER'S RECORD

VOLUME 3 OF 3

TRIAL COURT CAUSE NO. 63935

DEEPA VASUDEVAN                  * IN THE DISTRICT COURT

VS.                             * BRAZORIA COUNTY, TEXAS

ALAVOOR VASUDEVAN               * 300TH JUDICIAL DISTRICT

*********************************************************

MOTION FOR NEW TRIAL

*********************************************************

On the 8th day of October, 2014, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable K. Randall Hufstetler, Judge presiding, held in Angleton, Brazoria County, Texas.

Proceedings reported by Machine Shorthand.

A-P-P-E-A-R-A-N-C-E-S:


**COUNSEL FOR DEEPA VASUDEVAN**:

Mr. Ronald Brownstein
Attorney at Law
TBN:  03229800
5208 Broadway Street, Suite 200
Pearland, Texas   77581
(281)485-2770




**COUNSEL FOR ALAVOOR VASUDEVAN**:

Mr. Alavoor Vasudevan
Pro Se
PO Box 710163
Houston, Texas   77271
(832)244-1927




REPORTED BY:

Kim Keeler, CSR
Deputy Court Reporter
300th Judicial District
111 E. Locust, Rm. 401
Angleton, Texas   77515
(281)352-0863

INDEX

VOLUME 3 OF 3

MOTION FOR NEW TRIAL

OCTOBER 8, 2014

|  | **Page** | **Vol.** |
|---|---|---|
| Appearances ......................... | 2 | 3 |
| Motion for new trial ............... | 4 | 3 |
| Court's Ruling ..................... | 10 | 3 |
| Adjournment ........................ | 14 | 3 |
| Court Reporter's Certificate ........ | 15 | 3 |

KIM KEELER, CSR
DEPUTY COURT REPORTER
300TH DISTRICT COURT

**MOTION FOR NEW TRIAL**

THE COURT: All right. Let's go on the record in 63935 set on today's docket for hearing. What do we got, reconsideration? Is that one set today?

MR. BROWNSTEIN: If I may, Your Honor.

THE COURT: Yes, sir.

MR. BROWNSTEIN: Mr. Alavoor Vasudevan has filed several post-trial matters with the Court. Some of them are entitled motions.

I think all of them collectively are, in essence, new trial motions, motions for rehearings or reconsiderations.

He's also given notice of appeal that has -- we received notice from the Fourteenth Court of Appeals.

So I believe all of these collectively are, in essence, a request for a new trial. I don't know if Mr. Vasudevan will agree with me on that, but I think collectively that's what they would represent.

MR. VASUDEVAN: No, it's in regards to the old inventory because there were several items which were not supplemented by my wife. Like she's not provide proof that estates are separated estates. Also, she has not -- she failed to update the inventory figures.

And also, in my previous correspondence dated 21 June, 2014, I had stated that the wife has failed to

submit proof about abuse and physical abuse and murder and financial abuse.

Wife has also failed to submit any medical reports or police reports or videos, recording, or witnesses to prove cruelty of the husband.

THE COURT: To prove?

MR. VASUDEVAN: The cruelty of the husband.

THE COURT: Okay.

MR. VASUDEVAN: The final judgment you said that the husband is cruel, so the wife has not provided any proof, so -- the protective order said also abuse.

The husband provided -- and even on the inventory, Item No. 1, which is the City Bank -- and I provided the proof that it's not -- it's not separate, but it's a community estate.

So there was other items, also. In my correspondence on -- dated 12 June, I said that there was no abuse or cruelty; and I provided proof of my health conditions, like diabetes and blindness, kidney problems, and liver disease.

THE COURT: Let me take care of one of those for you real quick. All right?

MR. VASUDEVAN: Uh-huh.

THE COURT: In your correspondence you complain that there was no rape or sexual abuse.

MR. VASUDEVAN:  Yes.

THE COURT:  All right.  There's not anything in the record that says there was.  What you are reading is a docket entry that says:  "Record, dash, R. Rape, evidence presented."

My court reporter's name --

MR. VASUDEVAN:  No, in her statement she was saying, "I was abused sexually."  That's what she said.

THE COURT:  But in your correspondence you say there was no evidence of rape.  That's not what that statement says.  That's just -- my court reporter's last name is Rape.

MR. VASUDEVAN:  Yeah, I know that.  Yes.

THE COURT:  So let me take care of that. That's not what that docket entry says.

MR. VASUDEVAN:  Okay.

THE COURT:  Okay?

MR. VASUDEVAN:  Okay.

THE COURT:  So any complaint about that, that's not what that is saying.

MR. VASUDEVAN:  Yeah, that's fine.

But in her statement when she was talking, she was saying, "I was abused sexually and financially" and all that.  She was saying that.

THE COURT:  Okay.

MR. VASUDEVAN: So what I'm saying is there's no such thing like sexual abuse or rape or anything like that and no physical injury or anything like that.

What it just says in the protective order, it's simply written and nothing of such thing happened. And I provided a copy of that protective order, also.

There she has simply written on there but there is nothing of such thing happened and there is no proof. She has not provided any proof. And there is no 911 calls or police reports or any of such thing.

She -- they simply write this protective order just to get the protective order and just to throw the husband out of the house. That's what they use that for, I think; and probably it's all done by the lawyer and not by my wife.

THE COURT: Mr. Brownstein.

MR. BROWNSTEIN: If I may respond, Your Honor. On May 27th this Court heard this case. My client was the only party to offer testimony and exhibits, other than me regarding attorney's fees. Mr. Alavoor declined to testify.

Immediately prior to trial -- which was May 27th -- on April the 2nd, we supplemented discovery. On May 5th -- now, this is 2014; and the trial was May 27th, 2014 -- we filed our Third Amended Inventory.

On May the 7th, 2014, we amended our -- we supplemented our inventory again. And then on May the 9th, 2014, we filed our Fourth Amended Inventory.

Your Honor, way back on June 27th, 2011 -- that's when the first application for a protective order was entered -- the parties reached an agreement back on June 28th, 2011, regarding temporary orders.

The case brought before you was just on the divorce. The protective order and the divorce were consolidated.

And, Your Honor, we believe that the decision that you made was correct. There has been no suggestion of newly discovered evidence. Mr. Alavoor is complaining that he feels that your division of property was unfair and that he feels it was unfair that you found grounds for divorce not only insupportability but cruelty.

And as much as he has now appealed this to the Fourteenth Court of Appeals, Your Honor, I'm asking this Court to deny all post-trial motions of Mr. Vasudevan in a proposed order that I have before this Court and to deny a new trial.

We think your decision was accurate based upon the evidence, and we ask that you deny all of these motions.

MR. VASUDEVAN: I raise objection to his

statements, Your Honor, because what amended inventory they filing, they have not updated the figures according to the latest statements.

And also, on the protective order, what of it has she written? It's not written by her. And there is no proof that there was any cruelty.

So to date, they have not submitted anything; and I asked them to. I also send a copy to the opposing counsel to submit the proof, if they have any; but so far I have not gotten any.

Also, for one of the items, No. 2, the DLR interest, it's a land that she purchased during the marriage; and it's, as per law, it is -- it's a community estate. CHECK INTERNET COURT RECORDS FOR THIS

And she has not provided any proof that it's a separate -- the burden lays on her to submit the proof. She has not given any solid proof to the Court.

And also, there was some gold, which -- a lot of gold she was hiding, like 14 gold bars and jewelry. And all this she has not disclosed that in the inventory at all. She's hiding and concealing.

So the inventory, whatever they submitted, is wrong; and it's not correct and accurate.

So what I'm requesting the Court is they should -- the Court should order them to correct the

inventory and give the latest -- update all the items.

And they need to update the statements and submit the statements, all the financial statements.

So I hope that justice will be done here; and if I don't get justice, then I may be forced to go to appeals court, the Fourteenth Court of Appeals.

And I don't want to go spend that much time in the Court of Appeals; and it takes a lot more time, so I want to settle this in this Court.

THE COURT: Give me just a minute. Let me go pull my notes and look at the Court's file. I'm going to pull my notes and come back and let you know what we're going to do.

MR. VASUDEVAN: Your Honor, I'll give you the same copy which I sent it to you before.

THE COURT: I have all that. It's all electronic. That's what I've been looking at.

MR. VASUDEVAN: You have all that. Okay.

(Brief recess.)

**THE COURT'S RULING**

THE COURT: All right. I have looked at the -- I'm going to call it the Motion to Reconsider, which was filed 9/12/2014 by Mr. Vasudevan. I have looked at the other notices that were filed and the Notice of Appeal.

I've also looked at the decree, the inventories that were filed, and I've looked at my notes from the time of the hearing.

And I will find that the motion for new trial should be denied. The decree will stand as the final order.

And you have already given notice of appeal, so we'll let the Court of Appeals deal with it from this point out.

MR. BROWNSTEIN: I have a proposed order I believe that encompasses your ruling, Your Honor. If you feel that is accurate, we ask that -- in essence, denied a new trial.

THE COURT: Yes. All right. Anything else?

MR. VASUDEVAN: Your Honor, they submitted the Third Amended Inventory; and they need to update the inventory, so they have not updated it yet.

THE COURT: They filed a Fourth Amended Inventory --

MR. VASUDEVAN: But those figures were not updated. They just simply did a fourth one.

THE COURT: I understand you might not believe that they are accurate, but that was the latest inventory --

MR. VASUDEVAN: That's old figures.

THE COURT: That's the latest inventory that was filed by Mr. Brownstein on behalf of his client.

In looking at the Court's file, I think --

MR. VASUDEVAN: I also filed one Third Amended Inventory. You might have got it along with that.

THE COURT: When did you file that?

MR. VASUDEVAN: It was on July --

THE REPORTER: I'm sorry. July what?

MR. VASUDEVAN: 2014.

THE COURT: After the trial.

MR. VASUDEVAN: Right.

THE COURT: Okay. It may be filed, but it was not filed such that it could be considered by the Court.

Your inventory that I considered at the time of the trial was -- I think that was filed October, 2013.

MR. VASUDEVAN: No, no. It was in May.

THE COURT: May?

MR. VASUDEVAN: Yeah. I took an oath; and then on the same day I submitted it, an inventory.

THE COURT: Submitted another inventory?

MR. VASUDEVAN: Yes, the second inventory.

THE COURT: I have one that was introduced as an exhibit.

I saw your notes to correct her inventory.

Did you file a separate inventory?

MR. VASUDEVAN: Yes.

THE COURT: On what day?

MR. VASUDEVAN: On the same day. I took an oath, and then I submitted.

THE COURT: What day?

MR. VASUDEVAN: On 27th May.

THE COURT: 27th May. The day of trial?

MR. VASUDEVAN: Yeah, the day of the trial.

THE COURT: Okay. That may have been the exhibit that was introduced. I did have an inventory that was filed or introduced as an exhibit that day, but I don't have the exhibits. Those are upstairs in the clerk's office.

If it was an updated one, I did take that into consideration at the time of the trial on May 27, 2014.

I can't take into consideration an inventory that was filed after the trial because it would be late.

MR. VASUDEVAN: Okay. It would be late; but for this trial, I think -- I thought you would consider that in today's hearing.

THE COURT: Well, there's certain things that have to be presented in the motion for new trial hearing; and I can't tell you what those are. I can't help you

represent yourself.

I understand that you're representing yourself, but I can't show you how to do those things. All right?

So my ruling is that the motions for new trial will be -- or motion to reconsider, which might also be known as a motion for new trial, will be denied.

MR. BROWNSTEIN:  May we be excused?

THE COURT:  Yes.  Thank you.

(Hearing concluded.)

THE STATE OF TEXAS      )
COUNTY OF BRAZORIA      )

I, Kim Keeler, Deputy Court Reporter in and for the 300th District Court of Brazoria County, State of Texas, do hereby certify that the foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted, tendered in an offer of proof, or offered into evidence.

I further certify that the total cost for the prepartion of this Reporter's Record is $150.00 and was paid by Alavoor Vasudevan.

WITNESS MY OFFICIAL HAND this the 12th day of November, 2014.

/s/Kimberly Keeler
Kimberly Keeler, CSR
Certification Number: 8253
Expiration: December 31, 2014
Deputy Court Reporter, 300th Judicial District
Brazoria County
111 E. Locust, Rm. 401
Angleton, Texas  77515
(281)352-0863

The trial courts judgment is attached in case envelope and also the exhibits. And this is sent directly to the 14th Appeals Court from the Court Reporter, 300th District Court. This is Reporter's Record Vol 1 of 3 by Renee Rape, CSR, 300th District Court.

As per TRAP 38.1(k)(1) which says brief "must contain a copy of the trial court's judgment or other appealable order from which relief is sought". Hence, included here is the copy of the trial courts record RR2.

**REPORTER'S RECORD**

VOLUME 1 OF 3 VOLUMES

TRIAL COURT CAUSE NO. 63935

APPELLATE COURT CAUSE NO. 14-14-00765-CV

| | | |
|---|---|---|
| IN THE MATTER OF | * | IN THE DISTRICT COURT OF |
| THE MARRIAGE OF | * | |
| | * | |
| DEEPA VASUDEVAN | * | 300TH JUDICIAL DISTRICT |
| AND | * | |
| ALAVOOR VASUDEVAN | * | |
| | * | |
| AND IN THE INTEREST OF | * | |
| PALLAVI DEV, A CHILD | * | BRAZORIA COUNTY, TEXAS |

*******************************************************

MASTER INDEX

*******************************************************

RENEE E. RAPE, CSR, RPR
OFFICIAL COURT REPORTER
300TH DISTRICT COURT

**A P P E A R A N C E S**

MR. ALAVOOR VASUDEVAN

PRO SE

Post Office Box 710163

Houston, Texas  77271

Phone:  (832) 244-1927

PETITIONER


AND


RONALD A. BROWNSTEIN

SBOT NO. 03229800

5208 West Broadway, Suite 200

Pearland, Texas  77581

Phone:  (281) 485-2770

ATTORNEY FOR RESPONDENT/COUNTER-PETITIONER,

DEEPA VASUDEVAN

CHRONOLOGICAL INDEX

**VOLUME 1 - MASTER INDEX**


**VOLUME 2 - TRIAL ON FINAL MERITS**

**MAY 27, 2014**                                        **PAGE** **VOL**

Witnesses Sworn by the Court  ..................   6  2


COUNTER-PETITIONER/

| RESPONDENT'S WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS | VOL |
|---|---|---|---|---|---|
| Vasudevan, Deepa | 8 | 59 | 81 | | 2 |
| Brownstein, Ronald Allen | 83 | 86 | | | 2 |

Counter-Petitioner/Respondent Rests  ...........  88  2

Petitioner Offers Exhibits  ....................  88  2

Petitioner Rests  .............................  92  2

Court's Orders  ...............................  92  2

Court Adjourned  ..............................  96  2

Court Reporter's Certificate  .................  97  2


**VOLUME 3 - MOTION FOR NEW TRIAL**

**OCTOBER 8, 2014**                                     **PAGE** **VOL**

Appearances  ..................................   2  3

Motion for New Trial  .........................   4  3

Court's Ruling  ...............................  10  3

Adjournment  ..................................  14  3

**CHRONOLOGICAL INDEX CONTINUED**

VOLUME 3 - MOTION FOR NEW TRIAL - (continued)

OCTOBER 8, 2014                                    PAGE VOL

Court Reporter's Certificate  ................. 15  3

| ALPHABETICAL INDEX OF WITNESSES | | | | | |
|---|---|---|---|---|---|
| WITNESS' NAME | DIRECT | CROSS | REDIRECT | RECROSS | VOL |
| Brownstein, Ronald Allen | 83 | 86 | | | 2 |
| Vasudevan, Deepa | 8 | 59 | 81 | | 2 |

**OFFICIAL REPORTER'S RECORD**

**CERTIFICATION PAGE**

THE STATE OF TEXAS)

COUNTY OF BRAZORIA)

I, Renee Rape, Official Court Reporter in and for the 300th District Court of Brazoria County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $576.00 and was paid/will be paid by Petitioner, Mr. Alavoor Vasudevan.

WITNESS MY OFFICIAL HAND this the 17th day of November, 2014.

 /s/*Renée Rape* _____
Renée Rape, Texas CSR# 4031
Expiration Date:  12-31-16
Official Court Reporter, 300th District Court
Brazoria County, Texas
111 East Locust, RM 402
Angleton, Texas  77515
979-864-1229

RENEE E. RAPE, CSR, RPR

OFFICIAL COURT REPORTER

300TH DISTRICT COURT

*Appendix C  Final Decree of Divorce (Trial Court)*

The trial courts final decree is attached in case envelope. And this is sent directly to the 14th Appeals Court from the District Clerk Office, Brazoria. See the index IDX 348 (see also: Appendix O).

As per TRAP 38.1(k)(1) which says brief "must contain a copy of the trial court's judgment or other appealable order from which relief is sought". Hence, included here is the copy of the Final Decree of divorce.

NO. **63935**

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ALAVOOR VASUDEVAN | § | |
| AND | § | **300TH JUDICIAL DISTRICT** |
| DEEPA VASUDEVAN | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| P.D., A CHILD | § | **BRAZORIA COUNTY, TEXAS** |

## FINAL DECREE OF DIVORCE

On May 27, 2014 the Court heard this case.

*Appearances*

Petitioner and Counterrespondent, ALAVOOR VASUDEVAN, (hereinafter "Petitioner") pro se, appeared in person and announced ready for trial.

Respondent and Counterpetitioner, DEEPA VASUDEVAN, (hereinafter "Respondent") appeared in person and through attorney of record, RON BROWNSTEIN, and announced ready for trial.

*Record*

The record of testimony was duly reported by the court reporter for the 300TH Judicial District Court, Ms. Renee Rape.

*Jurisdiction and Domicile*

The Court finds that the pleadings of Respondent are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed.

**13357**

The Court further finds that, at the time this suit was filed, Respondent had been a domiciliary of Texas for the preceding six-month period and a resident of the county in which this suit was filed for the preceding ninety-day period. All persons entitled to citation were properly cited.

*Jury*

A jury was waived, and questions of fact and of law were submitted to the Court.

*Divorce*

IT IS ORDERED AND DECREED that DEEPA VASUDEVAN, Respondent, is granted a divorce from ALAVOOR VASUDEVAN, Petitioner, and the marriage between them is dissolved on the grounds of insupportability and cruelty committed by Petitioner against Respondent.

*Child of the Marriage*

The Court finds that at the time of the filing of this divorce action, the following child of the marriage was subject to the jurisdiction of the Court:

Name: PALLAVI DEV

Sex: Female

Birth date: 12/07/1995

Home state: Texas

Social Security number: xxx-xx-x195

The Court further finds that on the date of hearing, said child was older than eighteen years of age and had received a high school diploma from an accreditied secondary school and was no longer subject to the jurisdiction of this Court; save and expect however, the Court retains jurisdiction regarding the child's property described below:

*Child's Property*

The Court finds that the below described property and accounts are confirmed as the sole and separate property of the adult child, PALLAVI DEV and it is further ordered that DEEPA VASUDEVAN and ALAVOOR VASUDEVAN shall transfer, deliver, and convey said property to PALLAVI DEV on or before June 13, 2014, to wit:

1. UTMA- LPL account #xxxx1549, American Funds account #xxxx0367

2. UTMA- LPL account #xxxx0721

3. Computer (located in upstairs office)

4. Kindle

5. Laptop, Apple

6. Laptop, pink

7. Piano (located downstairs bedroom)

*Division of Marital Estate*

The Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party.

<u>Property to Husband</u>

IT IS ORDERED AND DECREED that the husband, ALAVOOR VASUDEVAN, is awarded the following as his sole and separate property, and the wife is divested of all right, title, interest, and claim in and to that property:

H-1. The following described real property in India, to wit:

a. PLOT NO 16, SY No 107/A & 1070/AA OAK GARDENS, AVC TOWNSHIP, UPPERGUDA h/O kHALSA IBRAHIMPATNAM, IBRAHIMPATNAM, R.R. Dist.

b. House Gandhinagar India, 1/6th share.

3

H-2.    All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the husband located at 8701 Gustine Lane, Apt#5918, Houston, TX 77031, or otherwise subject to his sole control.

H-3.    All clothing, jewelry, and other personal effects in the possession of the husband located at 8701 Gustine Lane, Apt#5918, Houston, TX 77031, or otherwise subject to his sole control.

H-4.    All funds on deposit, together with accrued but unpaid interest, in the following banks, savings institutions, or other financial institutions in the husband's sole name or from which the husband has the sole right to withdraw funds or which are subject to the husband's sole control:

    a.    BANK OF AMERICA, Account number xxxx3392

    b.    TDECU Checking Account number xxxx8719

    c.    TDECU Savings Account number xxxx8719

    d.    WELLS FARGO, Account number xxxx3059

    e.    WELLS FARGO, Account number xxxx7461

    f.    529 PLAN- MFS account #xxxx4456, LPL #xxxx0732

    g.    CITIBANK, N.A., Account number xxxx559

    h.    HDFC, Account number xxxx294

    i.    Health Savings Plan with Fidelity account #xxx9315

    j.    PayPal

H-5.    All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to the following retirement account:

    a.    WELLS FARGO 401K, Account number xxx

H-6.   The following individual retirement accounts:

    a.    ROLLOVER IRA LPL, Account number xxxx0728

    b.    ROTH IRA LPL account #xxx0726, American Funds account #xxx8660

H-7.   A portion of DEEPA VASUDEVAN's retirement benefits in the UNIVERSITY OF TEXAS ORP MENTOR 403B PLAN arising out of DEEPA VASUDEVAN's employment with the UT HEALTH SCIENCE CENTER AT HOUSTON as of May 27, 2014, that portion being $128,567.09 and more particularly defined in a Qualified Domestic Relations Order to be hereinafter entered by the Court.

H-8.   The following policies of life insurance (including cash values):

    a.    NORTHWESTERN MUTUAL, Policy number xxxx1672

    b.    NORTHWESTERN MUTUAL, Policy number xxxx1741

    c.    F&G LIFE INSURANCE

H-9.   The 2009 TOYOTA COROLLA motor vehicle, vehicle identification number 1NXBU4DE59ZC88294, together with all prepaid insurance, keys, and title documents.

Property to Wife

IT IS ORDERED AND DECREED that the wife, DEEPA VASUDEVAN, is awarded the following as her sole and separate property, and the husband is divested of all right, title, interest, and claim in and to that property:

W-1.   All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the wife located at 3402 Castle Pond Court, Pearland, Texas, or otherwise subject to her sole control.

W-2.   All clothing, jewelry, and other personal effects in the possession of the wife located at 3402 Castle Pond Court, Pearland, Texas, or otherwise subject to her sole control.

W-3.   All funds on deposit, together with accrued but unpaid interest, in the following

banks, savings institutions, or other financial institutions in the wife's sole name or from which the wife has the sole right to withdraw funds or which are subject to the wife's sole control.

    a.    BANK OF AMERICA, Account number xxxx8479

    b.    CAPITAL ONE, Account number xxxx2066

    c.    MERRILL EDGE, Account number xxxx14S04

    d.    TOD LPL account #xxxx0729, American Funds account #xxxx3620

    e.    TOD LPL, Account number xxxx5742

    f.    529 PLAN- LPL account #xxxx0724, Fidelity #xxxx8707

W-4.  All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights in wife's UNIVERSITY OF TEXAS ORP METNOR 403B PLAN, save and except the sum $128,567.09 awarded to husband out of wife's UNIVERSITY OF TEXAS ORP METNOR 403B PLAN and more particularly described in a Qualified Domestic Relations Order to be hereinafter entered by the Court.

W-5.  The following individual retirement accounts:

    b.    ROTH IRA LPL account #xxx0723, American Funds account #xxx8662

W-6.  The following policies of life insurance (including cash values):

    a.    NORTHWESTERN MUTUAL, Policy number xxxx1841

    b.    NORTHWESTERN MUTUAL, Policy number xxxx0804

W-7.  The 2010 VOLVO C30 motor vehicle, vehicle identification number YV1672MK6A2178413, together with all prepaid insurance, keys, and title documents.

W-8.  The 2010 MERCEDES-BENZ E350W motor vehicle, vehicle identification number WDDHF5GB5AA223383, together with all prepaid insurance, keys, and title documents, subject to the terms and conditions in a lease contract concerning said motor vehicle.

6

### Division of Debt

#### Debts to Husband

IT IS ORDERED AND DECREED that the husband, ALAVOOR VASUDEVAN, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the wife and her property harmless from any failure to so discharge, these items:

H-1. The following debts, charges, liabilities, and obligations:

    a.    Debt owed to DISCOVER, Account number xxxx8851

H-2. All debts, charges, liabilities, and other obligations incurred solely by the husband from and after June 2011 unless express provision is made in this decree to the contrary.

H-3. All encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the property awarded to the husband in this decree unless express provision is made in this decree to the contrary.

#### Debts to Wife

IT IS ORDERED AND DECREED that the wife, DEEPA VASUDEVAN, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the husband and his property harmless from any failure to so discharge, these items:

W-1. The balance due, including principal, interest, and all other charges, on the promissory note payable to WELLS FARGO DEALER SERVICES and given as part of the purchase price of and secured by a lien on the 2010 VOLVO C30 motor vehicle awarded to wife.

W-2. The following debts, charges, liabilities, and obligations:

    a.    Debt owed to CAPITAL ONE, Account number xxxx7063

    b.    Debt owed to DISCOVER, Account number xxxx6482

    c.    Debt owed to BANK OF AMERICA, Account number xxxx7493

W-3.  All debts, charges, liabilities, and other obligations incurred solely by the wife from and after June 2011 unless express provision is made in this decree to the contrary.

W-4.  All encumbrances, ad valorem taxes, liens, assessments, or other charges due or to become due on the property awarded to the wife in this decree unless express provision is made in this decree to the contrary.

Notice

IT IS ORDERED AND DECREED that each party shall send to the other party, within three days of its receipt, a copy of any correspondence from a creditor or taxing authority concerning any potential liability of the other party.

**Provisions Dealing with Residence**

The Court makes the following orders regarding the residence of the parties located at 3402 Castle Pond Court, Pearland, Texas more particularly described as follows, to wit:

LOT SIXTEEN (16), IN BLOCK ONE (1), FINAL PLAT VILLAGES OF EDGEWATER ESTATES, SECTION TWO (2), PEARLAND, BRAZORIA COUNTY, TEXAS, ACCORDING THE MAP OR PLAT THEREOF RECORDED IN VOLUME 20 PAGES 185-188 OF THE PLAT RECORDS, BRAZORIA COUNTY, TEXAS.

IT IS ORDERED that DEEPA VASUDEVAN shall have the exclusive right to the use, possession, and occupancy of the residence. DEEPA VASUDEVAN shall continue to make all monthly mortgage payments of principal and interest due on any promissory note given as part of the purchase price of the residence.

Commencing August 15, 2014, the residence will be placed on the market for sale. In the event that DEEPA VASUDEVAN and ALAVOOR VASUDEVAN receive a valid earnest money contract of sale by a third party that is acceptable to DEEPA VASUDEVAN and

ALAVOOR VASUDEVAN, then DEEPA VASUDEVAN shall have the first right to purchase ALAVOOR VASUDEVAN's net equity in the house on the same terms and conditions as are offered by the third party. DEEPA VASUDEVAN shall have 45 days to match the purchase price offer made by the third party by arranging for the payment to ALAVOOR VASUDEVAN the purchase price offered by the third party less the full payment of the mortgage indebtedness and less one-half the resulting difference paid to ALAVOOR VASUDEVAN as his equity. Upon payment to ALAVOOR VASUDEVAN, he shall transfer all of his right, title, and interest in the residence to DEEPA VASUDEVAN by General Warranty Deed.

In the event DEEPA VASUDEVAN elects not to match the third party purchase offer, then the parties are free to accept the third party offer. Should the sale of the property close, the net sale proceeds (defined as the gross sale price less cost of sale and full payment of any mortgage indebtedness or liens on the property) shall be distributed as follows:

1. One-half (1/2) to DEEPA VASUDEVAN; and

2. One-half (1/2) to ALAVOOR VASUDEVAN.

In the event the sale of the property does not close, then DEEPA VASUDEVAN's right to purchase ALAVOOR VASUDEVAN's net equity in the house shall remain in full force and effect and the procedure described above shall remain applicable.

Attorney's Fees

To effect an equitable division of the estate of the parties and as a part of the division, and for services rendered in connection with conservatorship and support of the child, each party shall be responsible for his or her own attorney's fees, expenses, and costs incurred as a result of legal representation in this case.

IT IS FURTHER ORDERED AND DECREED, as a part of the division of the estate of the parties, that any community liability not expressly assumed by a party under this decree is to

9

be paid by the party incurring the liability, and the party incurring the liability shall indemnify and hold the other party and his or her property harmless from any failure to so discharge the liability.

## Confirmation of Separate Property

IT IS ORDERED AND DECREED that the following described property is confirmed as the sole and separate property of DEEPA VASUDEVAN and ALAVOOR VASUDEVAN is divested of any right, title, interest, and claim in and to said property:

1. CITIBANK NRI BUSINESS account #xxxx390

2. DLR Interest LP- (1/5) interest

3. Jewelry and personal effects

## Change of Respondent's Name

IT IS ORDERED AND DECREED that DEEPA VASUDEVAN's name is changed to DEEPA IYENGAR.

## Court Costs

IT IS ORDERED AND DECREED that costs of court are to be borne by the party who incurred them.

## Resolution of Temporary Orders

IT IS ORDERED AND DECREED that all obligations and duties for JULY 22, 2011 imposed by the temporary orders of this Court that are not yet discharged shall survive this judgment, and independent enforcement may be sought.

## Discharge from Discovery Retention Requirement

IT IS ORDERED AND DECREED that the parties and their respective attorneys are discharged from the requirement of keeping and storing the documents produced in this case in accordance with rule 191.4(d) of the Texas Rules of Civil Procedure.

10

*Monetary Judgment*

The Court finds that on March 15, 2013 this Court entered an order entitled "Order Denying Motion to Compel" which in part, ordered ALAVOOR VASUDEVAN to pay DEEPA VASUDEVAN $600.00 as attorney's fees reimbursement. The Court finds that ALAVOOR VASUDEVAN has failed to pay said $600.00.

The Court further finds that ALAVOOR VASUDEVAN failed to appear for his oral deposition set on July 11, 2013 which resulted in the payment by DEEPA VASUDEVAN the sum of $150.00 to the court reporter for the reporter's "Certificate on Non-Appearance". DEEPA VASUDEVAN has therefore been damaged in the sum of $150.00.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that DEEPA VASUDEVAN is awarded an accumulated judgment against ALAVOOR VASUDEVAN in the amount of $750.00 plus interest at the rate of six percent (6%) per annum as of May 27, 2014 until paid in full. DEEPA VASUDEVAN shall be entitled to such writs and orders as shall become necessary to enforce execution of this judgment.

*Clarifying Orders*

Without affecting the finality of this Final Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

*Relief Not Granted*

IT IS ORDERED AND DECREED that all relief requested in this case and not expressly granted is denied. This is a final judgment, for which let execution and all writs and processes necessary to enforce this judgment issue. This judgment finally disposes of all claims and all parties and is appealable.

11

*Date of Judgment*

This divorce judicially PRONOUNCED AND RENDERED in court at the 300th Judicial District Court, Brazoria County, Texas, on May 27, 2014 and further noted on the court's docket sheet on the same date, but signed on ___ **AUG 1 5 2014** , 2014.

_____
JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

Ron Brownstein
5208 West Broadway, Suite 200
Pearland, Texas 77581
Tel: (281) 485-2770
Fax: (281) 485-4128
E-Mail: rbrownstein@hotmail.com

By: _____
RON BROWNSTEIN
Attorney for Respondent
State Bar No. 03229800

_____
ALAVOOR VASUDEVAN, Petitioner

_____
DEEPA VASUDEVAN, Respondent

12

STATE OF TEXAS
COUNTY OF BRAZORIA

I certify that the foregoing is a true and correct
copy of the original record on file in my office.
Given under my hand and seal of the court at
my office in Angleton, Texas.
RHONDA BARCHAK, DISTRICT CLERK

By _____ Deputy

*Appendix D  Inventory filed by Husband*

Inventory filed by Husband is attached in case envelope

Appendix D is on record (IDX 364, RR3 page 12 line 4,  RR3 page 5 line 12, RR3 page 8 line 25, page 9 line 18, page 10 line 14, RR4 page 3 line 4,7,9; BR at 11)

Cause No. **63935**

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ALAVOOR VASUDEVAN | § | |
| AND | § | 300TH JUDICIAL DISTRICT |
| DEEPA VASUDEVAN | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| PALLAVI DEV VASUDEVAN, A CHILD | § | BRAZORIA COUNTY, TEXAS |

THIRD

## ~~SECOND~~ AMENDED INVENTORY AND APPRAISEMENT OF ALAVOOR VASUDEVAN
### Husband's Proposed Division And Award of Property Belonging To The Parties

| No. | Commnunity Personal Property | Poss | Husband | Wife | Net Value | Notes |
|---|---|---|---|---|---|---|
| 1 | CITI BANK NRI BUSINESS | W | 113,358.21 | 0.00 | 113,358.21 | Came from joint a/c of Al |
| 2 | DLR INTEREST LP – 1/5 interest | W | 51,450.00 | 0.00 | 51,450.00 | Comm Estate bought after 1992 |
| 3 | Jewellery and personal effects | W | 450,000.00 | 450,000.00 | 900,000.00 | See Exhibit B 18may2014 |
| 4 | India property Plot no 16, 107/a | H | 0.00 | 0.00 | 0.00 | Does not exist. Mail fraud. |
| 5 | Residence 3402 Castle Pond,TX77584 | W | 0.00 | 0.00 | 0.00 | Per mediated settl agreemen |
| 6 | 2009 Toyota Corolla | H | 3,500.00 | | 3,500.00 | Has dents, repairs, broken |
| 7 | 2010 Mercedes Benz E 350W | W | 0.00 | | 0.00 | Leased car |
| 8 | 2010 Volvo C30 | W | 0.00 | 5,528.00 | 5,528.00 | Wife |
| 9 | Account 401K Wells Fargo | H | 17,814.37 | | 17,814.37 | Husband |
| 10 | Account – 529 Plan Fidxx807 LPL0724 | W | | 36,586.37 | 36,586.37 | Wife |
| 11 | Account – 529 Plan LPL0732 MFS4456 | H | 32,294.54 | | 32,294.54 | Husband |
| 12 | Account – Bank of Am xxx8479 | W | 9,300.00 | | 9,300.00 | Wife |
| 13 | Account – Bank of Am cheking xx3992 | H | 7,924.73 | | 7,924.73 | Husband. As of 25may2014 |
| 14 | Account – Citibank, N.A ac | H | | | 0.00 | miniscule bal. A/c dead |
| 15 | Account – Citibank, NA ac xx559 | H | | | 0.00 | miniscule bal. a/c dead |
| 16 | Account – Capital One ac xx2066 | W | 12,000.00 | | 12,000.00 | Previous inventory filings shows |
| 17 | Account – HDFC bank ac xx294 | H | | | 0.00 | value miniscule – a/c dead |
| 18 | Account – Merrill Edge ac xx14S04 | W | 33,843.00 | 0.00 | 33,843.00 | Wife |
| 19 | Account – Paypal alavoor | H | 385.00 | | 385.00 | Husband |
| 20 | Account RothIRA LPLxx0726 Am 8660 | H | 5,802.57 | | 5,802.57 | Husband |
| 21 | Account- Rollover IRA LPL xx0728 | H | 83,070.98 | | 83,070.98 | Husband |
| 22 | Account – RothIRA LPL0723 Am 8662 | W | 6,138.07 | 0.00 | 6,138.07 | Wife |
| 23 | Account – TDECU checking xx8719 | H | 3,051.05 | | 3,051.05 | Husband |
| 24 | Account – TDECU savings xx8719 | H | 307.91 | | 307.91 | Husband |
| 25 | Account – TOD LPL x0729 Am x3620 | W | 16,127.80 | 0.00 | 16,127.80 | sep2013 shows$19,204.81(3k withdw |
| 26 | Account – TOD LPL xx5742 | W | 69,389.88 | 0.00 | 69,389.88 | 12dec13 & RFP#8 May2013 show |
| 27 | Account – Univ Texas ORP 403B plan | W | 238,722.82 | 238,722.82 | 477,445.63 | Should be higher now |
| 28 | Account – Wells fargo chg xx3059 | H | 4,124.01 | | 4,124.01 | as of 25may2014 |

*Cause # 63935*

| No. | Commnunity Personal Property | Poss | Husband | Wife | Net Value | Notes |
|---|---|---|---|---|---|---|
| 29 | Account – Wells Fargo Saving x7461 | H | 1,281.64 | | 1,281.64 | |
| 30 | Alarm clock down Bedroom | W | | | 0.00 | Broken |
| 31 | Almirah in dining room | W | | 1,000.00 | 1,000.00 | Expensive wood, architect |
| 32 | Bed master bedroom | W | | 600.00 | 600.00 | Includes headboard wood |
| 33 | Cabinets (in small dine, up office) | W | | 50.00 | 50.00 | |
| 34 | Camera | W | | 50.00 | 50.00 | |
| 35 | Camera professional cannon | W | | 50.00 | 50.00 | |
| 36 | Chairs in up game room & office | W | | | 0.00 | Not there any more. Sold ?? |
| 37 | Chairs & Tables in side living room | W | | 1,600.00 | 1,600.00 | Luxury wood & architect |
| 38 | Child items(laptop, piano,kindle,apple) | W | | 1,600.00 | 1,600.00 | see ExhibitA of deepa4thAm |
| 39 | Coat Hanger in big dine room | W | | 30.00 | 30.00 | |
| 40 | Coat Hanger in small dine room | W | | 30.00 | 30.00 | |
| 41 | Coffee machine in kitchen | W | | 20.00 | 20.00 | |
| 42 | Contents upstairs BR futon,bed,dvdPla | W | | 150.00 | 150.00 | |
| 43 | Contents upstairs BR table,TV, bed | W | | 500.00 | 500.00 | |
| 44 | Contents upstairs BR Ctables,bed | W | | 150.00 | 150.00 | computers |
| 45 | DVD player in man living room | W | | 120.00 | 120.00 | |
| 46 | DVD player upstairs game room | W | | 50.00 | 50.00 | |
| 47 | DVD player with router small dine | W | | 120.00 | 120.00 | |
| 48 | Dining room table (large glass) | W | | 3,000.00 | 3,000.00 | Luxury wood & architect |
| 49 | Dining room table in small dine | W | | 180.00 | 180.00 | glass table |
| 50 | Dolls in entry and side room | W | | 750.00 | 750.00 | expensive wood dolls |
| 51 | Electric cooker large (kitchen) | W | | 40.00 | 40.00 | |
| 52 | Electric cooker small (kitchen) | W | | 25.00 | 25.00 | |
| 53 | Exercise bike in BR | W | | 50.00 | 50.00 | |
| 54 | Exercise equip (treadmill, wts etc) | W | | 300.00 | 300.00 | |
| 55 | External hard drive | W | | 0.00 | 0.00 | |
| 56 | F&G Life insurance | H | 0.00 | | 0.00 | Wife also has F&G account |
| 57 | Furniture in poss of husband | H | 0.00 | | 0.00 | None |
| 58 | Garage items (bike, wires, plastics) | W | | 50.00 | 50.00 | |
| 59 | Glass chess in side living room | W | | 60.00 | 60.00 | |
| 60 | Gold plated idols, silver in dine room | W | | 600.00 | 600.00 | See Exhibit D 18May2014 letter |
| 61 | Health saving ac Fidelity xxx9315 | H | 479.17 | | 479.17 | |
| 62 | Key standboard in main living | W | | 40.00 | 40.00 | wood expensive |
| 63 | Lamp in side living | W | | 60.00 | 60.00 | |
| 64 | Life insurance NorthwesternM xx0804 | W | 20,684.60 | 48,684.60 | 69,369.19 | |
| 65 | Life insurance NWMutual X1672 pallavi | H | 14,792.97 | | 14,792.97 | |
| 66 | Life insurance NWMut x1741 alavoor | H | 61,435.83 | | 61,435.83 | |
| 67 | Life insurance NWMut x1841 Deepa | W | | 41,182.18 | 41,182.18 | |
| 68 | Microwave in kitchen | W | | | 0.00 | came with the house |
| 69 | Monitor upstairs office | W | | 50.00 | 50.00 | |
| 70 | Paintings in entryway | W | | 300.00 | 300.00 | |
| 71 | Phone, wireless down Bedroom | W | | 50.00 | 50.00 | |
| 72 | Pots/Pan in Kitchen | W | | 300.00 | 300.00 | |

# Cause # 63935: Third Amended Inventory & Appraisement of Alavoor Vasudevan, July 2014

| No. | Commnunity Personal Property | Poss | Husband | Wife | Net Value | Notes |
|---|---|---|---|---|---|---|
| 73 | Refrigerator in garage | W | | 100.00 | 100.00 | |
| 74 | Refrigerator in kitchen | W | | 800.00 | 800.00 | |
| 75 | Shelves, two wooden in master BR | W | | 70.00 | 70.00 | |
| 76 | Silk Sarees (cloths) silver,gold metal | W | | 500.00 | 500.00 | Has gold, silver wires in cloth |
| 77 | Sofa (located in main living room) | W | | 500.00 | 500.00 | |
| 78 | Sony camcorder | W | | 50.00 | 50.00 | |
| 79 | Sprinkler system (yard) | W | | 0.00 | 0.00 | part of the house |
| 80 | Surround sound speak living, game rms | W | | 300.00 | 300.00 | |
| 81 | Table (located upstairs office) | W | | 100.00 | 100.00 | Glass TV table |
| 82 | Tea table in living room | W | | 40.00 | 40.00 | |
| 83 | Televisions (BR,dine,living rooms) | W | | 1,500.00 | 1,500.00 | |
| 84 | Toaster, bread in kitchen | W | | 20.00 | 20.00 | |
| 85 | Toaster oven in kitchen | W | | 20.00 | 20.00 | |
| 86 | Vase (in entry way) | W | | 100.00 | 100.00 | |
| 87 | Wall poster paint in living room | W | | 75.00 | 75.00 | |
| 88 | Wall poster paint in side living room | W | | 75.00 | 75.00 | |
| 94 | UTMA LPL xx0721 | H | 56,021.00 | | 56,021.00 | |
| 95 | UTMA LPL xx1549 Am #xx0367 | W | | 41,288.29 | 41,288.29 | |
| 96 | F&G Life insurance | W | | 0.00 | 0.00 | Both W, H have F&G insurance |
| 97 | Dresser set mirror master BR | W | | 500.00 | 500.00 | |
| 98 | Account – Nabard bank | W | 50,000.00 | 50,000.00 | 100,000.00 | Rs36,000,00 in year 2004. Now mor |
| 99 | Account – India banks(vij,syn,corp,ici) | W | | | 0.00 | Wife needs to provide details |
| 100 | Account – Paypal Deepa | W | | 500.00 | 500.00 | |
| | | | | | | |
| | **Commnunity Personal Property** | | **1,363,300** | **929,217** | **2,292,517** | |

## Cause # 63935: Third Amended Inventory & Appraisement of Alavoor Vasudevan, July 2014

| No. | Commnunity Unsecured Debt | Poss | Husband | Wife | Net Value | Notes |
|-----|---------------------------|------|---------|------|-----------|-------|
| 89 | Bank of America ac xx7493 | W | 0.00 | 2,218.87 | -2,218.87 | |
| 90 | Capital One ac xx7063 | W | 0.00 | 6,560.00 | -6,560.00 | |
| 91 | Discover ac xx6482 | W | 0.00 | 8,434.45 | -8,434.45 | |
| 92 | Discover ac xx8851 | H | 11,500.00 | | -11,500.00 | |
| 93 | State Bank of India House loan xx286 | H | 0.00 | 0.00 | 0.00 | not exist |
| 94 | Education Loan Alavoor India banks | H | 10,000.00 | | -10,000.00 | |
| 95 | Money owed to brother, sisters India | H | 10,000.00 | | -10,000.00 | |
| 96 | Money owed to friends | H | 5,000.00 | | -5,000.00 | |
| 97 | Attorney fees owed | H | 8,000.00 | 37,114.00 | -45,114.00 | |
| | **Commnunity Unsecured Debt** | | **44,500.00** | **54,327.32** | **-98,827.32** | |

| No. | Separate Real Property | Poss | Husband | Wife | Net Value | Notes |
|-----|------------------------|------|---------|------|-----------|-------|
| 97 | House Gandhinagar India, 1/6th share | H | 5500.00 | 0.00 | 5,500.00 | Alavoor 10,000 – 4500 debts |

## DIVISION ANALYSIS

| | Combined Total | Husband's Total | Wife's Total |
|---|---|---|---|
| Community Real Estate | Mediated Sett Agreement | 0 | 0 |
| Community Personal Property | 2,292,517 | 1,363,300 | 929,217 |
| Community Unsecured Debts | -98,827 | -44,500 | -54,327 |
| Total Net Community Estate | 2,193,690 | 1,318,800 | 874,890 |
| Percentage of Community Estate | 100 | 60 | 40 |
| Separate Real Estate | 5,500 | 5,500 | 0 |
| Separate Personal Property | 0 | 0 | 0 |
| Separate Unsecured Debt | 0 | 0 | 0 |
| Total Separate Estate | 5,500 | 5,500 | 0 |
| Total Community and Separate | 2,199,190 | 1,324,300 | 874,890 |

The document is correct to the best of my knowledge. But wife needs to update the figures as they are very old

(ALAVOOR VASUDEVAN)

State of Texas County of Brazoria
Subscribed and sworn before me on 9/2/14
(Date)
(Notary Signature)

FRANCES RIFFE
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
JUNE 13, 2017

Cause No. **63935**

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| ALAVOOR VASUDEVAN | § | |
| AND | § | 300TH JUDICIAL DISTRICT |
| DEEPA VASUDEVAN | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| PALLAVI DEV VASUDEVAN, A CHILD | § | BRAZORIA COUNTY, TEXAS |

## THIRD ~~SECOND~~ AMENDED INVENTORY AND APPRAISEMENT OF ALAVOOR VASUDEVAN
### Husband's Proposed Division And Award of Property Belonging To The Parties

| No. | Commnunity Personal Property | Poss | Husband | Wife | Net Value | Notes |
|---|---|---|---|---|---|---|
| 1 | CITI BANK NRI BUSINESS | W | 113,358.21 | 0.00 | 113,358.21 | Came from joint a/c of Al |
| 2 | DLR INTEREST LP – 1/5 interest | W | 51,450.00 | 0.00 | 51,450.00 | Comm Estate bought after 1992 |
| 3 | Jewellery and personal effects | W | 450,000.00 | 450,000.00 | 900,000.00 | See Exhibit B 18may2014 |
| 4 | India property Plot no 16, 107/a | H | 0.00 | 0.00 | 0.00 | Does not exist. Mail fraud. |
| 5 | Residence 3402 Castle Pond,TX77584 | W | 0.00 | 0.00 | 0.00 | Per mediated settl agreemen |
| 6 | 2009 Toyota Corolla | H | 3,500.00 | | 3,500.00 | Has dents, repairs, broken |
| 7 | 2010 Mercedes Benz E 350W | W | 0.00 | | 0.00 | Leased car |
| 8 | 2010 Volvo C30 | W | 0.00 | 5,528.00 | 5,528.00 | Wife |
| 9 | Account 401K Wells Fargo | H | 17,814.37 | | 17,814.37 | Husband |
| 10 | Account – 529 Plan Fidxx807 LPL0724 | W | | 36,586.37 | 36,586.37 | Wife |
| 11 | Account – 529 Plan LPL0732 MFS4456 | H | 32,294.54 | | 32,294.54 | Husband |
| 12 | Account – Bank of Am xxx8479 | W | 9,300.00 | | 9,300.00 | Wife |
| 13 | Account – Bank of Am cheking xx3992 | H | 7,924.73 | | 7,924.73 | Husband. As of 25may2014 |
| 14 | Account – Citibank, N.A ac | H | | | 0.00 | miniscule bal. A/c dead |
| 15 | Account – Citibank, NA ac xx559 | H | | | 0.00 | miniscule bal. a/c dead |
| 16 | Account – Capital One ac xx2066 | W | 12,000.00 | | 12,000.00 | Previous inventory filings shows |
| 17 | Account – HDFC bank ac xx294 | H | | | 0.00 | value miniscule – a/c dead |
| 18 | Account – Merrill Edge ac xx14S04 | W | 33,843.00 | 0.00 | 33,843.00 | Wife |
| 19 | Account – Paypal alavoor | H | 385.00 | | 385.00 | Husband |
| 20 | Account RothIRA LPLxx0726 Am 8660 | H | 5,802.57 | | 5,802.57 | Husband |
| 21 | Account- Rollover IRA LPL xx0728 | H | 83,070.98 | | 83,070.98 | Husband |
| 22 | Account – RothIRA LPL0723 Am 8662 | W | 6,138.07 | 0.00 | 6,138.07 | Wife |
| 23 | Account – TDECU checking xx8719 | H | 3,051.05 | | 3,051.05 | Husband |
| 24 | Account – TDECU savings xx8719 | H | 307.91 | | 307.91 | Husband |
| 25 | Account – TOD LPL x0729 Am x3620 | W | 16,127.80 | 0.00 | 16,127.80 | sep2013 shows$19,204.81(3k withdw |
| 26 | Account – TOD LPL xx5742 | W | 69,389.88 | 0.00 | 69,389.88 | 12dec13 & RFP#8 May2013 show |
| 27 | Account – Univ Texas ORP 403B plan | W | 238,722.82 | 238,722.82 | 477,445.63 | Should be higher now |
| 28 | Account – Wells fargo chg xx3059 | H | 4,124.01 | | 4,124.01 | as of 25may2014 |

| No. | Commnunity Personal Property | Poss | Husband | Wife | Net Value | Notes |
|---|---|---|---|---|---|---|
| 29 | Account – Wells Fargo Saving x7461 | H | 1,281.64 | | 1,281.64 | |
| 30 | Alarm clock down Bedroom | W | | | 0.00 | Broken |
| 31 | Almirah in dining room | W | | 1,000.00 | 1,000.00 | Expensive wood, architect |
| 32 | Bed master bedroom | W | | 600.00 | 600.00 | Includes headboard wood |
| 33 | Cabinets (in small dine, up office) | W | | 50.00 | 50.00 | |
| 34 | Camera | W | | 50.00 | 50.00 | |
| 35 | Camera professional cannon | W | | 50.00 | 50.00 | |
| 36 | Chairs in up game room & office | W | | | 0.00 | Not there any more. Sold ?? |
| 37 | Chairs & Tables in side living room | W | | 1,600.00 | 1,600.00 | Luxury wood & architect |
| 38 | Child items(laptop, piano,kindle,apple) | W | | 1,600.00 | 1,600.00 | see ExhibitA of deepa4thAm |
| 39 | Coat Hanger in big dine room | W | | 30.00 | 30.00 | |
| 40 | Coat Hanger in small dine room | W | | 30.00 | 30.00 | |
| 41 | Coffee machine in kitchen | W | | 20.00 | 20.00 | |
| 42 | Contents upstairs BR futon,bed,dvdPla | W | | 150.00 | 150.00 | |
| 43 | Contents upstairs BR table,TV, bed | W | | 500.00 | 500.00 | |
| 44 | Contents upstairs BR Ctables,bed | W | | 150.00 | 150.00 | computers |
| 45 | DVD player in man living room | W | | 120.00 | 120.00 | |
| 46 | DVD player upstairs game room | W | | 50.00 | 50.00 | |
| 47 | DVD player with router small dine | W | | 120.00 | 120.00 | |
| 48 | Dining room table (large glass) | W | | 3,000.00 | 3,000.00 | Luxury wood & architect |
| 49 | Dining room table in small dine | W | | 180.00 | 180.00 | glass table |
| 50 | Dolls in entry and side room | W | | 750.00 | 750.00 | expensive wood dolls |
| 51 | Electric cooker large (kitchen) | W | | 40.00 | 40.00 | |
| 52 | Electric cooker small (kitchen) | W | | 25.00 | 25.00 | |
| 53 | Exercise bike in BR | W | | 50.00 | 50.00 | |
| 54 | Exercise equip (treadmill, wts etc) | W | | 300.00 | 300.00 | |
| 55 | External hard drive | W | | 0.00 | 0.00 | |
| 56 | F&G Life insurance | H | 0.00 | | 0.00 | Wife also has F&G account |
| 57 | Furniture in poss of husband | H | 0.00 | | 0.00 | None |
| 58 | Garage items (bike, wires, plastics) | W | | 50.00 | 50.00 | |
| 59 | Glass chess in side living room | W | | 60.00 | 60.00 | |
| 60 | Gold plated idols, silver in dine room | W | | 600.00 | 600.00 | See Exhibit D 18May2014 letter |
| 61 | Health saving ac Fidelity xxx9315 | H | 479.17 | | 479.17 | |
| 62 | Key standboard in main living | W | | 40.00 | 40.00 | wood expensive |
| 63 | Lamp in side living | W | | 60.00 | 60.00 | |
| 64 | Life insurance NorthwesternM xx0804 | W | 20,684.60 | 48,684.60 | 69,369.19 | |
| 65 | Life insurance NWMutual X1672 pallavi | H | 14,792.97 | | 14,792.97 | |
| 66 | Life insurance NWMut x1741 alavoor | H | 61,435.83 | | 61,435.83 | |
| 67 | Life insurance NWMut x1841 Deepa | W | | 41,182.18 | 41,182.18 | |
| 68 | Microwave in kitchen | W | | | 0.00 | came with the house |
| 69 | Monitor upstairs office | W | | 50.00 | 50.00 | |
| 70 | Paintings in entryway | W | | 300.00 | 300.00 | |
| 71 | Phone, wireless down Bedroom | W | | 50.00 | 50.00 | |
| 72 | Pots/Pan in Kitchen | W | | 300.00 | 300.00 | |

| No. | Commnunity Personal Property | Poss | Husband | Wife | Net Value | Notes |
|---|---|---|---|---|---|---|
| 73 | Refrigerator in garage | W | | 100.00 | 100.00 | |
| 74 | Refrigerator in kitchen | W | | 800.00 | 800.00 | |
| 75 | Shelves, two wooden in master BR | W | | 70.00 | 70.00 | |
| 76 | Silk Sarees (cloths) silver,gold metal | W | | 500.00 | 500.00 | Has gold, silver wires in cloth |
| 77 | Sofa (located in main living room) | W | | 500.00 | 500.00 | |
| 78 | Sony camcorder | W | | 50.00 | 50.00 | |
| 79 | Sprinkler system (yard) | W | | 0.00 | 0.00 | part of the house |
| 80 | Surround sound speak living, game rms | W | | 300.00 | 300.00 | |
| 81 | Table (located upstairs office) | W | | 100.00 | 100.00 | Glass TV table |
| 82 | Tea table in living room | W | | 40.00 | 40.00 | |
| 83 | Televisions (BR,dine,living rooms) | W | | 1,500.00 | 1,500.00 | |
| 84 | Toaster, bread in kitchen | W | | 20.00 | 20.00 | |
| 85 | Toaster oven in kitchen | W | | 20.00 | 20.00 | |
| 86 | Vase (in entry way) | W | | 100.00 | 100.00 | |
| 87 | Wall poster paint in living room | W | | 75.00 | 75.00 | |
| 88 | Wall poster paint in side living room | W | | 75.00 | 75.00 | |
| 94 | UTMA LPL xx0721 | H | 56,021.00 | | 56,021.00 | |
| 95 | UTMA LPL xx1549 Am #xx0367 | W | | 41,288.29 | 41,288.29 | |
| 96 | F&G Life insurance | W | | 0.00 | 0.00 | Both W, H have F&G insurance |
| 97 | Dresser set mirror master BR | W | | 500.00 | 500.00 | |
| 98 | Account – Nabard bank | W | 50,000.00 | 50,000.00 | 100,000.00 | Rs36,000,00 in year 2004.Now mor |
| 99 | Account – India banks(vij,syn,corp,ici) | W | | | 0.00 | Wife needs to provide details |
| 100 | Account – Paypal Deepa | W | | 500.00 | 500.00 | |
| | | | | | | |
| | | | | | | |
| | **Commnunity Personal Property** | | 1,363,300 | 929,217 | 2,292,517 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| No. | Commnunity Unsecured Debt | Poss | Husband | Wife | Net Value | Notes |
|-----|---------------------------|------|---------|------|-----------|-------|
| 89 | Bank of America ac xx7493 | W | 0.00 | 2,218.87 | -2,218.87 | |
| 90 | Capital One ac xx7063 | W | 0.00 | 6,560.00 | -6,560.00 | |
| 91 | Discover ac xx6482 | W | 0.00 | 8,434.45 | -8,434.45 | |
| 92 | Discover ac xx8851 | H | 11,500.00 | | -11,500.00 | |
| 93 | State Bank of India House loan xx286 | H | 0.00 | 0.00 | 0.00 | not exist |
| 94 | Education Loan Alavoor India banks | H | 10,000.00 | | -10,000.00 | |
| 95 | Money owed to brother, sisters India | H | 10,000.00 | | -10,000.00 | |
| 96 | Money owed to friends | H | 5,000.00 | | -5,000.00 | |
| 97 | Attorney fees owed | H | 8,000.00 | 37,114.00 | -45,114.00 | |
| | **Commnunity Unsecured Debt** | | **44,500.00** | **54,327.32** | **-98,827.32** | |

| No. | Separate Real Property | Poss | Husband | Wife | Net Value | Notes |
|-----|------------------------|------|---------|------|-----------|-------|
| 97 | House Gandhinagar India, 1/6th share | H | 5500.00 | 0.00 | 5,500.00 | Alavoor 10,000 – 4500 debts |

## DIVISION ANALYSIS

| | Combined Total | Husband's Total | Wife's Total |
|---|---|---|---|
| Community Real Estate | Mediated Sett Agreement | 0 | 0 |
| Community Personal Property | 2,292,517 | 1,363,300 | 929,217 |
| Community Unsecured Debts | -98,827 | -44,500 | -54,327 |
| Total Net Community Estate | 2,193,690 | 1,318,800 | 874,890 |
| Percentage of Community Estate | 100 | 60 | 40 |
| Separate Real Estate | 5,500 | 5,500 | 0 |
| Separate Personal Property | 0 | 0 | 0 |
| Separate Unsecured Debt | 0 | 0 | 0 |
| Total Separate Estate | 5,500 | 5,500 | 0 |
| Total Community and Separate | 2,199,190 | 1,324,300 | 874,890 |

The document is correct to the best of my knowledge.
But wife needs to update the figures as they are very old

(ALAVOOR VASUDEVAN)

State of _Texas_ County of _Brazoria_
Subscribed and sworn before me on _9/2/14_
_____ (Date)
(Notary Signature)

FRANCES RIFFE
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
JUNE 13, 2017

District clerk sent this appendix directly to 14th Appeals court.

Trial court's mistake of not considering the husband's inventory but court's division based on Inventory filed by Wife is attached in case envelope.

The District Clerk, Brazoria sent directly the "Court Division based on Inventory filed by wife" in document titled "EXHIBIT-COURT's DIVISION of property 5-27-14" to 14th Appeals Court and is also referenced in Index 297 (page 297, IDX 297, Appendix O).

Wife's inventory filed is Fourth Amended Inventory (Exhibit 5) which had wrong figures and incorrect amounts (RR2 page 5 line 20). Husband raised objections to wife's inventory (RR2 pg41 line20, RR2 pg43 line10, pg44 line1, pg44 line14). The trial court's judge had never said "Five is admitted", see between "Four is admitted" (RR2 pg43 line1) and "Six is admitted" (RR2 pg49 line19). There was never a word saying "exhibit five is admitted". Hence, wife's inventory is rejected by the trial court and judge. But in spite of this how the trial court made error by putting this Exhibit 5 as admitted ? No one knows!

As per TRAP 38.1(k)(1) which says brief "must contain a copy of the trial court's judgment or other appealable order from which relief is sought". Hence, included here is the copy of the trial courts "Exhibit - Court's Division of property".

| IN THE MATTER OF THE MARRIAGE OF | IN THE DISTRICT COURT |
|---|---|
| ALAVOOR VASUDEVAN AND DEEPA VASUDEVAN | 300TH JUDICIAL DISTRICT |
| AND IN THE INTEREST OF PALLAVI DEV, A CHILD | BRAZORIA COUNTY, TEXAS |

## FOURTH AMENDED INVENTORY AND APPRAISEMENT OF DEEPA VASUDEVAN

### Wife's Proposed Division And Award Of Property Belonging To The Parties

| Wife's Separate Personal Property | Poss | Husband | Wife | |
|---|---|---|---|---|
| 1. CITI BANK NRI BUSINESS | W | | 103,143.00 | Wife |
| 2. DLR INTEREST LP - 1/5 interest | W | | 51,450.00 | Wife |
| 3. Jewelry and personal effects | W | | 5,000.00 | Wife |
| **Wife's Separate Personal Property** | | 0.00 | 159,593.00 | |

| Community Real Property | Poss | Husband | Wife | |
|---|---|---|---|---|
| 4. India Property - PLOT NO 16, SY No 107/A & 1070/AA OAK GARDENS, AVC TOWNSHIP, UPPERGUDA h/O kHALSA IBRAHIMPATNAM, IBRAHIMPATNAM, R.R. Dist | H | | | Husband |
| 5. Residence located 3402 Castle Pond Ct, Pearland, TX 77584 | W | 0.00 | 0.00 | Per MSA |
| **Community Real Property** | | 0.00 | 0.00 | |

| Community Personal Property | Poss | Husband | Wife | |
|---|---|---|---|---|
| 6. 2009 Toyota Corolla | H | ~~5,000.00~~ 3500~ | | Husband |
| 7. 2010 Mercedes-Benz E350W | W | | 0.00 | Wife |
| 8. 2010 Volvo C30 | W | | 5,528.00 | Wife |
| 9. Account - 401K- Wells Fargo | H | 17,814.37 | | Husband |
| 10. Account - 529 Plan - Fidelity # XXXX807 LPL # XXXX0724 | W | | 36,586.37 | Wife |
| 11. Account - 529 Plan - LPL # XXXX0732 MFS # XXXX4456 | H | 33,294.54 | | Husband |
| 12. Account - Bank of America Account # XXX8479 | W | | 9,300.00 | Wife |
| 13. Account - Bank of America Checking Account # XXXX3992 | H | ~~11,931.60~~ 7924~ | | Husband |
| 14. Account - CITIBANK, N.A. Account # XXXX | H | | | Husband |

5/16/2014



# FOURTH AMENDED INVENTORY AND APPRAISEMENT OF DEEPA VASUDEVAN

## Wife's Proposed Division And Award Of Property Belonging To The Parties

| Community Personal Property | Poss | Husband | Wife | |
|---|---|---|---|---|
| 15. Account - CITIBANK, N.A. Account # XXXX559 | H | | | Husband |
| 16. Account - Capital One Account # XXXX2066 | W | | 0.00 | Wife |
| 17. Account - HDFC Bank Account # XXXX294 | H | | | Wife |
| 18. Account - Merrill Edge Account # XXXX14S04 | W | | 33,843.00 | Wife |
| 19. Account - PayPal | H | 2,000.00 | | Husband |
| 20. Account - ROTH IRA LPL # XXXX0726 American Funds # XXXX8660 | H | 5,802.57 | | Husband |
| 21. Account - Rollover IRA LPL # XXXX0728 | H | 83,070.98 | | Husband |
| 22. Account - Roth IRA LPL # XXXX0723 American Funds # XXXX8662 | W | | 6,138.07 | Wife |
| 23. Account - TDECU Checking Account # XXXX8719 | H | 3,051.05 | | Husband |
| 24. Account - TDECU Savings Account # XXXX8719 | H | 307.91 | | Husband |
| 25. Account - TOD Account LPL # XXXX0729 American Funds # XXXX3620 | W | | 16,127.80 | Wife |
| 26. Account - TOD Account LPL # XXXX5742 | W | | 53,732.32 | Wife |
| 27. Account - University of Texas - ORP Mentor 403B Plan | W | | 337,878.54 | Wife |
| 28. Account - University of Texas - ORP Mentor 403B Plan | W | 128,567.09 | | Husband |
| 29. Account - Wells Fargo Checking Account # XXXX3059 | H | 4,695.47 414~ | | Husband |
| 30. Account - Wells Fargo Savings Account # XXX7461 | H | 1,281.64 | | Husband |
| 31. Alarm clock (located in downstairs bedroom) | W | | 0.00 | Wife |
| 32. Almirah (located in dining room) | W | | 1000 50.00 | Wife |
| 33. Bed (located in downstairs bedroom) | W | | 1000 50.00 | Wife |
| 34. Cabinets (located in small dining room, upstairs office, and small dining room) | W | | 50.00 | Wife |
| 35. Camera | W | | 50.00 | Wife |
| 36. Camera, professional, Cannon | W | | 50.00 | Wife |
| 37. Chairs (located in upstairs game room and office) | W | | 0.00 | Wife |
| 38. Chairs and Tables (located in side living room) | W | | 800.00 | Wife |

# FOURTH AMENDED INVENTORY AND APPRAISEMENT OF DEEPA VASUDEVAN

## Wife's Proposed Division And Award Of Property Belonging To The Parties

| Community Personal Property | Poss | Husband | Wife | |
|---|---|---|---|---|
| 39. Child's Property | | | | Child — See Exhibit A |
| 40. Coat hanger (located in dining room) | W | | 0.00 | Wife |
| 41. Coat hanger (located in small dining room) | W | | | Wife |
| 42. Coffee machine (located in kitchen) | W | | 2.00 | Wife |
| 43. Contents in upstairs bedroom (futon bed and dvd player) | W | | 150.00 | Wife |
| 44. Contents in upstairs bedroom (table, television, and bed) | W | | 150.00 | Wife |
| 45. Contents in upstiars bedroom (2 computer tables, bed, and computer) | W | | 150.00 | Wife |
| 46. DVD player (located in main living room) | W | | 20.00 | Wife |
| 47. DVD player (located in upstairs game room) | W | | 20.00 | Wife |
| 48. DVD player with router (located in small dining room) | W | | 10.00 | Wife |
| 49. Dining room table | W | | 1,000.00 | Wife |
| 50. Dining table (located in small dining room) | W | | | Wife |
| 51. Dolls (located in entryway and side living room) | W | | 300.00 | Wife |
| 52. Electric cooker, large (located in kitchen) | | | 0.00 | Wife |
| 53. Electric cooker, small (located in kitchen) | W | | | Wife |
| 54. Exercise bike (located in downstairs bedroom) | W | | | Wife |
| 55. Exercise equipment, weights and treadmill (located in upstairs game room) | W | | 200.00 | Wife |
| 56. External hard drive | W | | | Wife |
| 57. F&G Life Insurance | H | 3,000.00 | | Husband |
| 58. Furniture in possession of Husband | H | | | Husband |
| 59. Garage itmes (bicycle, wires, plastics) | W | | 50.00 | Wife |
| 60. Glass chess (located in side living room) | W | | 20.00 | Wife |
| 61. Gold plated idols, silver (located in dining room) | | | | Wife |
| 62. Health Savings Accoutn with Fidelity Account # XXXX9315 | H | 479.17 | | Husband |
| 63. Key standboard (located in main living room) | | | | Wife |
| 64. Lamp | W | | 10.00 | Wife |

# FOURTH AMENDED INVENTORY AND APPRAISEMENT OF DEEPA VASUDEVAN

## Wife's Proposed Division And Award Of Property Belonging To The Parties

| Community Personal Property | Poss | Husband | Wife | |
|---|---|---|---|---|
| 65. Life Insurance - Northwestern Mutual Policy # XXXX0804 Insured Deepa Vasudevan | W | | 44,369.19 | Wife |
| 66. Life Insurance - Northwestern Mutual Policy # XXXX1672 Insured Pallavi Dev | H | 14,792.97 | | Husband |
| 67. Life Insurance - Northwestern Mutual Policy # XXXX1741 Insured Alavoor Vasudevan | H | 61,435.83 | | Husband |
| 68. Life Insurance - Northwestern Mutual Policy # XXXX1841 Insured Deepa Vasudevan | W | | 41,182.18 | Wife |
| 69. Microwave (located in kitchen) | W | | | Wife |
| 70. Monitor (located in upstairs office) | W | | | Wife |
| 71. Paintings (located in entryway) | W | | 100.00 | Wife |
| 72. Phone, wireless (located downstairs bedroom) | W | | 10.00 | Wife |
| 73. Pots/pan (located in kitchen) | W | | 200.00 | Wife |
| 74. Refrigerator (located in garage) | W | | 50.00 | Wife |
| 75. Refrigerator | W | | | Wife |
| 76. Shelves, two, wooden (located in downstairs bedroom) | W | | 0.00 | Wife |
| 77. Silk Sareers (cloths) | W | | 500.00 | Wife |
| 78. Sofa (located in main living room) | W | | 100.00 | Wife |
| 79. Sony Camcorder | W | | 50.00 | Wife |
| 80. Sprinkler system (yard) | | | | Wife |
| 81. Surround sound speakers (located in main living room and upstairs game room) | W | | 200.00 | Wife |
| 82. Table (located in upstairs office) | W | | 20.00 | Wife |
| 83. Tea table (located in main living room) | | | | Wife |
| 84. Televisions (located in downstairs bedroom, small dining room, and main living room) | W | | 1,500.00 | Wife |
| 85. Toasted, bread (located in kitchen) | W | | 10.00 | Wife |
| 86. Toaster oven (located in bedroom) | W | | 10.00 | Wife |
| 87. Vase (located in entry way) | W | | 20.00 | Wife |
| 88. Wall poster paint (located in main living room) | W | | 25.00 | Wife |
| 89. Wall poster paint (located in side living room) | W | | 25.00 | Wife |
| **Community Personal Property** | | ~~376,525.19~~ | ~~590,637.47~~ | |
| | | 370,447 | 582,137 | |

## Wife's Proposed Division And Award Of Property Belonging To The Parties

| Community Unsecured Debt | Poss | Husband | Wife | |
|---|---|---|---|---|
| 90. Bank of America Account #XXXX7493 | W | | -16,357.24 | Wife |
| 91. Capital One Account # XXXX7063 | W | | -6,560.00 | Wife |
| 92. Discover Account # XXXX6482 | W | | -8,434.45 | Wife |
| 93. Discover Account # XXXX8851 | H | -3,668.00 | | Husband |
| 94. State Bank of India - Housing Loan Account # XXXX286 | H | 0.00 | | Husband |
| **Community Unsecured Debt** | | **-3,668.00** | **-31,351.69** | |

Atty fees     H    8,100~

           W          37,114~

Net CP       358,779    523,672

63935

| IN THE MATTER OF<br>THE MARRIAGE OF | IN THE DISTRICT COURT |
|---|---|
| ALAVOOR VASUDEVAN<br>AND<br>DEEPA VASUDEVAN | 300TH JUDICIAL DISTRICT |
| AND IN THE INTEREST OF<br>PALLAVI DEV, A CHILD | BRAZORIA COUNTY, TEXAS |

## CHILD'S PROPERTY

| **Wife's Proposed Division And Award Of Property Belonging To The Parties** | | | | |
|---|---|---|---|---|
| | Poss | Husband | Wife | |
| 1. Computer (located in upstairs office) | W | | 50.00 | Child |
| 2. Kindle | W | | 25.00 | Child |
| 3. Laptop, Apple | W | | 200.00 | Child |
| 4. Laptop, pink | W | | 50.00 | Child |
| 5. Piano (located downstairs bedroom) | W | | 1,000.00 | Child |
| 6. UTMA - LPL # XXXX0721 | H | | 56,021.86 | Child |
| 7. UTMA - LPL # XXXX1549 American Funds # XXXX0367 | W | | 41,288.29 | Child |
| | | 0.00 | 98,635.15 | |

## Appendix F  Proof filed by Husband for Community Estates

Proof filed by Husband is attached in case envelope

Appendix F (IDX 325 Exhibit 2, RR3 pg 5 line 12, RR2 pg 4 line 9, RR2 pg 78 line 4 and line 10, RR2 pg 88 line 19, IDX 364, RR4 page 3 line 4, RR4 pg 3 line 9,11,13,14, page 4 line 4; BR 11) Trial court made mistake of not admitting Appendix F during 1st trial. And in the 2nd trial when this issue pointed (RR3 pg 10 line 14), the judge said since appeal is being filed, let appeals court deal with it (RR3 pg 11 line 8).

The proof here shows that there were more than $100,000 US Dollars(in Indian rupees) in CitiNRI bank a/c in the joint a/c of both husband and wife. And wife withdrew that amount which is now shown in inventory item # 1.

# CITIBANK NRI BUSINESS
WEALTH MANAGEMENT FOR THE GLOBAL INDIAN

## Statement of Account


citibank

Your Citibank Account Statement for the period APR 01,2003 to MAR 31,2004          Page 1 of 2

APRIL       01, 2004

DEEPA   VASUDEVAN
3402 CASTLE PORD CT
PEARLAND

TEXAS
USA - 77584

Dear Customer

Thank you for your continued patronage of Citibank
NRI Business. I would like to inform you of two
major enhancements in our Customer Access
channels. Our CitiPhone platform  - currently
serving customers in US, UK and Singapore is now
available 24 hours, seven days a week. We have
also increased our branch network in India to
26 branches across 19 cities - including Noida,
Surat, Lucknow and Faridabad.

Warm Regards.

Rahul Malhotra
NRI Business Manager

### Important messages for you

Enjoy complete access to your funds with your
ATM/Debit card, currently coupled with an
interest rate of 3.5% per annum, on your
balances. With the mandate facility, your family
member can access your funds in India too. Log
on to www.citinri.com and order drafts payable
at over 870 locations and delivered free to a
beneficiary in India.

Please see overleaf                    Incorporated with limited liability in the USA

---

# CITIBANK NRI BUSINESS
WEALTH MANAGEMENT FOR THE GLOBAL INDIAN

## Statement of Account


citibank

DEEPA   VASUDEVAN                                            Page 2 of 2
        Citibank Account Relationship at a glance from APR 01,2003 to MAR 31,2004

Joint Holders

2  ALAVOOR  VASUDEVAN

Account Details

**$1,00,000 US Dollars**

| CHECKING ACCOUNTS | Account # | Opening Bal. APR 01,2003 | Increases | Decreases | Closing Bal. MAR 31,2004 |
|---|---|---|---|---|---|
| 1. SAVING AC |  | 0.00 | 5047250.78 | 4500947.93 | 546302.85 |
| Total Balance |  |  |  |  | 546302.85 |

All figures are in Indian Rupees

Do not hand over your Citicard / Internet Password (NPIN) to anyone.
Citibank never solicits information about your NPIN through e-mail  phone,
fax, letters, etc. While using your NPIN, check that it is a Citibank
site - www.citinri.com.

Statement Period - Apr 01, 2004 to Mar 31, 2005    Statement Date: Apr 01, 2005

DEEPA VASUDEVAN
3402 CASTLE PORT CT
PEARLAND

TEXAS
USA - 77584

Dear Client

This year Citibank NRI Business completes two decades of partnering NRI's all over the world and we thank you for your continued patronage of the business. For our customers holding NR deposits in India, I am pleased to inform you that the interest on NRE Accounts and Foreign Currency Deposits will continue to enjoy exemption from income taxes imposed by the Indian tax authorities.

Warm regards,

Rahul Malhotra
NRI Business Manager

**Important messages for you**

As you're aware, RBI has capped the maximum interest rate to be offered on NRE Savings accounts to 6 months LIBOR, subject to revision every quarter. Please visit www.citinri.com or call the toll free no. in your region to know the latest interest rates. Clearing time for foreign currency cheques differ. Cheques may be subject to a hold period please check with us when presenting the same.

Citibank Account Relationship at a glance from Apr 01, 2004 to Mar 31, 2005

Joint Holders

1. ALAVOOR VASUDEVAN

| | Account # | Opening Bal. Apr 01, 2004 | Increases | Decreases | Closing Bal. Mar 31, 2005 |
|---|---|---|---|---|---|
| SAVING AC | | 546302.85 | 11464.78 | 555939.43 | 1828.20 |
| Total Balances | | | | | 1828.20 |

All figures are in Indian Rupees

Fully repatriable and Indian income-tax exempt, the FCNR (B) deposits currently available at attractive interest rates. Options also available in Euro & GBP. visit www.citinri.com or call the toll-free number of your region for further details. Rates subject to change without prior notice.

### *Appendix G  Proof filed by Husband for hidden gold bars of wife*

Proof filed by Husband is attached in case envelope

Appendix G 'Missing items in inventory': Wife's handwriting 14 Gold bars . The Appendix G was referenced in trial and in court filings (RR3 pg 9 line 18, RR2 pg 76 line 7, RR2 pg 77 line 7, RR4 page 3 line 13;  page 4 line 4, Appendix N exhibit 13, BA pg 203; BR 11)

**EXHIBIT 1: Missing Items in Inventory: Wife's Handwriting 14 Gold Bars**
**Cause No. 63935**

| | | |
|---|---|---|
| DEEPA VASUDEVAN | § | IN THE DISTRICT COURT |
| AND | § | 300TH JUDICIAL DISTRICT |
| ALAVOOR VASUDEVAN | § | BRAZORIA COUNTY, TEXAS |

This "Exhibit" says in last paragraph Item (6) as handwritten by wife (Deepa): *"14 Gold Bars"* (marked by red arrow). This is for inventory number 3 which includes 14 Gold Bars and 30 Gold Coins.

*Appendix H  Court reporters – Exhibit List 27 May 2014*

Court reports report is filed directly to 14th Appeals Court for 27 May 2014 hearing and 08 Oct 2014 hearing. Appendix H is exhibit index as reported by trial court (RR4, IDX 373).

As per TRAP 38.1(k)(1) which says brief "must contain a copy of the trial court's judgment or other appealable order from which relief is sought". Hence, included here is the copy of the trial courts "Exhibit List" (reporter Ms. Renee Rape RR4).

**EXHIBIT INDEX**

PETITIONER'S EXHIBITS

| NO. | DESCRIPTION | OFFERED | ADMITTED | VOL |
|-----|-------------|---------|----------|-----|
| 1 | Second Amended Inventory and Appraisement of Alavoor Vasudevan | 88 | 90 | 2 |
| 2 | Objections to Inventory Filed By Wife on 9 May 2014 | 90 | X | 2 |
| 5 | Citibank Account Statement for April 1, 2003 to March 31, 2004 | 67 | X | 2 |
| 12 | Wedding Photographs Showing Gold, Diamonds, Jewelry | 71 | X | 2 |
| 13 | Handwriting Diary of Wife | 71 | X | 2 |
| 14 | 1. Bank of America Payment Notice, 7-1-13 to 6-30-14 | 71 | 75 | 2 |
|  | 2. Bank of America Payment Notice, 7-1-08 to 6-30-09 |  |  |  |
|  | 3. Bank of America Account Statement August, 2001 - Pages 1 and 2 of 13 |  |  |  |
|  | 4. Bank of America Account Statement August, 2001 - Pages 7 and 8 of 13 |  |  |  |
|  | 5. Bank of America Account Statement July, 2002 - Pages 1 and 2 of 13 |  |  |  |
|  | 6. Bank of America Account Statement July, 2002 - Pages 3 and 4 of 13 |  |  |  |

**EXHIBIT INDEX CONTINUED**

PETITIONER'S EXHIBITS

| NO. | DESCRIPTION | OFFERED | ADMITTED | VOL |
|---|---|---|---|---|
| 14 | 7. Handwritten Notes | 71 | X | 2 |
| 15 | Handwritten Notes | 71 | X | 2 |
| 16 | Samples of Identity Thefts and Article from Odisha Sun Times | 72 | X | 2 |

RESPONDENT/COUNTER-PETITIONER'S EXHIBITS

| NO. | DESCRIPTION | OFFERED | ADMITTED | VOL |
|---|---|---|---|---|
| 1 | Bank of America Account Activity as of 10-28-13 | 31 | 32 | 2 |
| 2 | Letters between Petitioner and Mr. Ron Brownstein | 33 | 33 | 2 |
| 3 | Deepa Vasudevan's Motion to Compel Discovery and for Sanctions and Protective Order | 36 | 38 | 2 |
| 4 | Affidavit for Business Records For Deepa Vasudevan | 41 | 42 | 2 |
| 5 | Fourth Amended Inventory and Appraisement of Deepa Vasudevan | 43/50 | 50 | 2 |
| 6 | Photograph | 49 | 49 | 2 |
| 7 | Photograph | 52 | 52 | 2 |
| 8 | Attorney's Fees for Ronald Allen Brownstein | 85 | 86 | 2 |

All the documents filed with the Trial court are attached in the case envelope. They are sent directly to 14th Appeals Court by District Clerk Office, Brazoria county.

Court reports report is filed directly to 14th Appeals Court for 27 May 2014 hearing and 08 Oct 2014 hearing. Appendix I is court reporter's record Vol 2 of 3 as reported by trial court (RR2, IDX 373).

As per TRAP 38.1(k)(1) which says brief "must contain a copy of the trial court's judgment or other appealable order from which relief is sought". Hence, included here is the copy of the trial courts reporter's "Vol 2 of 3" (reporter Ms. Renee Rape RR2).

**REPORTER'S RECORD**

VOLUME 2 OF 3 VOLUMES

TRIAL COURT CAUSE NO. 63935

APPELLATE COURT CAUSE NO. 14-14-00765-CV

IN THE MATTER OF              *    IN THE DISTRICT COURT OF
THE MARRIAGE OF               *
                             *
DEEPA VASUDEVAN               *    300TH JUDICIAL DISTRICT
AND                          *
ALAVOOR VASUDEVAN             *
                             *
AND IN THE INTEREST OF        *
PALLAVI DEV, A CHILD          *    BRAZORIA COUNTY, TEXAS

*******************************************************

TRIAL ON FINAL MERITS

*******************************************************

On the 27th day of May, 2014, the following proceedings

came on to be heard in the above-entitled and numbered

cause before the Honorable K. Randall Hufstetler, Judge

presiding, held in Angleton, Brazoria County, Texas.


Proceedings reported by Machine Shorthand Method.

RENEE E. RAPE, CSR, RPR
OFFICIAL COURT REPORTER
300TH DISTRICT COURT

**A P P E A R A N C E S**

MR. ALAVOOR VASUDEVAN

PRO SE

Post Office Box 710163

Houston, Texas   77271

Phone:   (832) 244-1927

PETITIONER


AND


RONALD A. BROWNSTEIN

SBOT NO. 03229800

5208 West Broadway, Suite 200

Pearland, Texas   77581

Phone:   (281) 485-2770

ATTORNEY FOR RESPONDENT/COUNTER-PETITIONER,

DEEPA VASUDEVAN

**I N D E X**

MAY 27, 2014                                          PAGE  VOL

Witnesses Sworn by the Court  ..................  6   2


COUNTER-PETITIONER/

| RESPONDENT'S WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS | VOL |
|---|---|---|---|---|---|
| Vasudevan, Deepa | 8 | 59 | 81 | | 2 |
| Brownstein, Ronald Allen | 83 | 86 | | | 2 |

Counter-Petitioner/Respondent Rests  ..........  88   2

Petitioner Offers Exhibits  ...................  88   2

Petitioner Rests  .............................  92   2

Court's Orders  ...............................  92   2

Court Adjourned  ..............................  96   2

Court Reporter's Certificate  .................  97   2

RENEE E. RAPE, CSR, RPR
OFFICIAL COURT REPORTER
300TH DISTRICT COURT

**EXHIBIT INDEX**

PETITIONER'S EXHIBITS

| NO. | DESCRIPTION | OFFERED | ADMITTED | VOL |
|-----|-------------|---------|----------|-----|
| 1 | Second Amended Inventory and Appraisement of Alavoor Vasudevan | 88 | 90 | 2 |
| 2 | Objections to Inventory Filed By Wife on 9 May 2014 | 90 | X | 2 |
| 5 | Citibank Account Statement for April 1, 2003 to March 31, 2004 | 67 | X | 2 |
| 12 | Wedding Photographs Showing Gold, Diamonds, Jewelry | 71 | X | 2 |
| 13 | Handwriting Diary of Wife | 71 | X | 2 |
| 14 | 1. Bank of America Payment Notice, 7-1-13 to 6-30-14 | 71 | 75 | 2 |
|  | 2. Bank of America Payment Notice, 7-1-08 to 6-30-09 | | | |
|  | 3. Bank of America Account Statement August, 2001 - Pages 1 and 2 of 13 | | | |
|  | 4. Bank of America Account Statement August, 2001 - Pages 7 and 8 of 13 | | | |
|  | 5. Bank of America Account Statement July, 2002 - Pages 1 and 2 of 13 | | | |
|  | 6. Bank of America Account Statement July, 2002 - Pages 3 and 4 of 13 | | | |

**EXHIBIT INDEX CONTINUED**

PETITIONER'S EXHIBITS

| NO. | DESCRIPTION | OFFERED | ADMITTED | VOL |
|---|---|---|---|---|
| 14 | 7. Handwritten Notes | 71 | X | 2 |
| 15 | Handwritten Notes | 71 | X | 2 |
| 16 | Samples of Identity Thefts and Article from Odisha Sun Times | 72 | X | 2 |

RESPONDENT/COUNTER-PETITIONER'S EXHIBITS

| NO. | DESCRIPTION | OFFERED | ADMITTED | VOL |
|---|---|---|---|---|
| 1 | Bank of America Account Activity as of 10-28-13 | 31 | 32 | 2 |
| 2 | Letters between Petitioner and Mr. Ron Brownstein | 33 | 33 | 2 |
| 3 | Deepa Vasudevan's Motion to Compel Discovery and for Sanctions and Protective Order | 36 | 38 | 2 |
| 4 | Affidavit for Business Records For Deepa Vasudevan | 41 | 42 | 2 |
| 5 | Fourth Amended Inventory and Appraisement of Deepa Vasudevan | 43/50 | 50 | 2 |
| 6 | Photograph | 49 | 49 | 2 |
| 7 | Photograph | 52 | 52 | 2 |
| 8 | Attorney's Fees for Ronald Allen Brownstein | 85 | 86 | 2 |

RENEE E. RAPE, CSR, RPR
OFFICIAL COURT REPORTER
300TH DISTRICT COURT

**MAY 27, 2014**

THE COURT:  All right.  All those who are going to be testifying in the Vasudevan matter, please stand and raise your right hand to be sworn.

**(The witnesses were sworn by the Court.)** 11:34AM

THE COURT:  All right.  Please have a seat at counsel table, and we will get started.

All right.  Mr. Brownstein?

MR. BROWNSTEIN:  Well, Your Honor, I am the Counter-Petitioner in this case.  I would be glad to 11:35AM proceed forward if Alavoor would allow me to do so.

THE COURT:  Mr. Vasudevan?

MR. VASUDEVAN:  Yes, sir.

THE COURT:  You are representing yourself?

MR. VASUDEVAN:  Yes, Your Honor. 11:35AM

THE COURT:  And you understand this is on final today?

MR. VASUDEVAN:  Yes.

THE COURT:  Give me just one second.

And this was consolidated with another case, 11:37AM 66539.

MR. VASUDEVAN:  Yes.

THE COURT:  So, we have 63935 and 66539. Everything is in the older matter.  And we're still working with your original petition; is that correct? 11:37AM

MR. VASUDEVAN:  Yes.

THE COURT:  And, Mr. Brownstein, you have -- is it still your original Counter-Petition, or have you had an amended?

MR. BROWNSTEIN:  The original Counter-Petition was filed by previous counsel from Scott Brown's office.  I had filed a First Amended Counter-Petition and supplemented that twice, the most recent of which was a name change request, Your Honor.

So, my active pleadings are my First Amended Counter-Petition with two supplemental -- two supplements to that document, Your Honor.

THE COURT:  November 22, 2013, and December 16, 2013.  I have both of those.

All right.  Mr. Vasudevan, do you want to proceed as the Petitioner, or do you want Mr. Brownstein to proceed first as the Counter-Petitioner?  Your choice.

MR. VASUDEVAN:  It doesn't matter.  He can proceed.

THE COURT:  Thank you.

Mr. Brownstein, on your Counter-Petition.

MR. BROWNSTEIN:  Your Honor, I first ask the Court to take judicial notice of the entire file in this case, including the original Application for Protective

Order of which this, being the older case, has now been consolidated with the divorce action.

THE COURT: I'll take notice of both files in 63935 and 66539.

MR. BROWNSTEIN: All right. I would like to call my client, Mrs. Deepa Vasudevan.

THE COURT: Once you're seated, if you'll pull that microphone in front of you, please.

You may proceed.

**DEEPA VASUDEVAN,**

and having been first duly sworn, testified as follows:

**DIRECT EXAMINATION**

**BY MR. BROWNSTEIN:**

Q. Please tell the Judge your name.

A. Deepa Vasudevan.

Q. And may I address you as Deepa, since that's how I've known you for over two years in this case?

A. Yes.

Q. Mrs. Deepa, prior to filing your lawsuit and Counter-Petition for divorce, you first filed an Application for a Protective Order against your husband; is that correct?

A. Yes.

Q. Are you married to Alavoor Vasudevan?

A. Yes.

Q. When did the two of you marry?

A. March, 1992.

Q. And when did you separate, more or less, living together as husband and wife?

A. Around June. I filed for the Protective Order in June of 2011.

Q. Prior to filing your -- and you subsequently then filed with Scott Brown's office a Petition or a Counter-Petition for divorce; is that correct?

A. Yes.

Q. Prior to filing your Counter-Petition for divorce, did you live in the state of Texas at least six months and Brazoria County the preceding 90-day period?

A. Yes.

Q. Approximately six months before you filed for divorce, you filed your Application for Protective Order; is that correct?

A. Yes.

Q. Why did you seek the protection of the Court?

A. Because at the point that I filed for it, I had the injury to myself and I was not in a safe environment; and both for me and my daughter, I needed some protection because I was abused both mentally, physically, as well as sexually by my husband.

Q. And in your Application for Protective Order,

there was attached an affidavit which accused your husband of certain activity.  Is it true --

**A.**  Yes.

**Q.**  -- that your husband threatened to kill you and your daughter?

**A.**  Yes.

**Q.**  Is it true that he threatened to burn down the house with you and your daughter in it?

**A.**  Yes.

**Q.**  Is it true that your husband had a history or pattern of physically assaults upon you?

**A.**  Yes.

**Q.**  Would he grab you and shake you?

**A.**  Yes.

**Q.**  Why would he do that?

**A.**  In most cases, it was as if it was because he wanted to either get physical with me or if there was a disagreement on any issue relating to finances.

**Q.**  On June 26, 2011, the day before you filed your -- or prepared your affidavit, is it true that he followed you into the bathroom and started shaking you and pinning you against the bathroom wall?

**A.**  Yes.

**Q.**  Who came to your rescue?

**A.**  I called one of my friends, and her husband

came.  They lived in the neighborhood, and they came to help me.

Q.    Was your daughter in the house at this time?

A.    She was.  She was sleeping upstairs.

MR. BROWNSTEIN:  May I approach, Your Honor?

THE COURT:  Yes, sir.

Q.    (BY MR. BROWNSTEIN)  As a result of your Application for Temporary Orders -- for a Protective Order, you and your husband and his respective attorney agreed to Temporary Orders; is that correct?

A.    Yes.

MR. BROWNSTEIN:  Judge, these were filed with the Court on July 22nd, 2011.

Q.    (BY MR. BROWNSTEIN)  In the Temporary Orders, was it agreed upon at that time that although the two of you did not agree and use the term "conservator", that you were appointed the primary custodian of your daughter?

A.    Yes.

Q.    Your daughter was what age at that time?

A.    She was 15 and a half.

Q.    Okay.  And she was going to public schools; is that correct?

A.    Yes.

Q.    And pursuant to the terms of the agreement, you

were agreed to have exclusive rights to designate where the child lived within Brazoria and the surrounding counties?

A.   Yes.

Q.   Exclusive right to consent to medical and surgical treatment involving any invasive procedures?

A.   Yes.

Q.   Exclusive right to psychiatric and psychological treatment of the child?

A.   Yes.

Q.   Exclusive right to receive support for the child, child support?

A.   Yes.

Q.   Exclusive right to represent the child in legal action; to agree, if you so consented, to early marriage or enlistment in the armed forces; to make educational decisions; and to manage her estate, all of these being exclusively awarded to you in this agreement; is that correct?

A.   Yes.

Q.   Regarding your husband's possession or access to the child, was it agreed that any access by your husband, Alavoor, was to be supervised by a friend or a family member designated by you?

A.   Yes.

Q.   And that no specific times and dates were awarded to him on visitation.

A.   Yes.

Q.   And you both agreed that was in the best interest of the child.

A.   Yes.

Q.   Why didn't -- did the child want to be around the father?

A.   The child has had actually no bond at all with the father.  He had not spent any time with her.  Her complete care from when she was born close to about four years was helped by my mother because I was doing my residency.  And after that, after my mom passed, it was pretty much under -- she was under my care.

So, she had no bond whatsoever.  There has never been a day that she's been alone with her father taking care of her.  So, she was very, very nervous about staying with him.  And after the threatening episode in June, there was definitely no -- I was very nervous and so was she to spend any amount of time with him alone.

Q.   As a matter of fact, since the date of your Protective Order hearing, which occurred on July the 19th, 2011; is that correct?

A.   Yes.

Q. To today's date, has the father ever had the child spend overnight access with him?

A. No.

Q. How many times has the father, your husband, physically been in the presence of the child for visitation or access?

A. I would say three to four times.

Q. And have all of those times been supervised?

A. Yes.

Q. And have sometimes you've been the person to supervise that visitation?

A. Yes.

Q. Regarding the child support, did you agree that Mr. Vasudevan, your husband, would pay child support as deemed appropriate by him?

A. Yes.

Q. Until September of 2011, at which time -- at that time, either party could seek additional orders; is that correct?

A. Yes.

Q. As part of your agreement in this Protective Order application, did you also agree that both of you would attend a parent education and family stabilization course?

A. Yes.

Q. And that you would present proof that you have taken that course and filed your certificate with the Court?

A. Yes.

Q. Did you take that course?

A. Yes.

Q. And did you file that certificate with the Court?

A. Yes.

Q. Do you know if your husband ever filed any certificate with the Court?

A. I'm not aware.

Q. All right. Was your husband also ordered to attend at least ten sessions of anger management?

A. Yes.

Q. Did he ever tell you if he had attended all ten sessions or at least ten sessions?

A. He did not tell me.

Q. You also agreed at the time of the hearing on your Protective Order that the residence of the parties, 3402 Castle Pond, that you would be awarded the exclusive use of that house.

A. Yes.

Q. And that you would have the exclusive use of your Mercedes.

RENEE E. RAPE, CSR, RPR
OFFICIAL COURT REPORTER
300TH DISTRICT COURT

A.    Yes.

Q.    And that your husband, if he has not already vacated, vacate the premises; is that correct?

A.    Yes.

Q.    You each had exclusive use of certain vehicles.

And there was an issue regarding a pink computer that was addressed in the Temporary Orders.  He was ordered to return the pink computer belonging to your daughter, Pallavi; is that correct?

A.    Yes.

Q.    Now, tell me the date of birth of Pallavi, if you know it.

A.    12-7-1995.

Q.    Did you and your husband acquire a pink computer for your daughter's education?

A.    Yes.

Q.    At that time, was she doing very well in school?

A.    Extremely well.

Q.    As a matter of fact, has she graduated number one in her class at Dawson High School in Pearland, Texas?

A.    Yes.

Q.    She's the valedictorian.

A.    Yes.

Q.    What would she use that pink computer for?

A. She had all of her files on -- all the Word files that she used to do her school work on, she had saved them on that file.

And after the Protective Order was filed, two hours later, my husband came to the house when he was ordered not to by the Court. And my daughter was with her -- the housekeeper. And he came, disconnected all the connections, all the computer connections, took her pink laptop which was there, and left at that point.

And so, she was distraught because all her work was on the computer. And hence, I had to come back and file, so that way I was able to get that computer back to her, at least to get all the files transferred back to a new computer, if I needed to.

Q. All right. And did Alavoor return the computer back to your daughter?

A. After the Court ordered, yes.

Q. Okay.

MR. BROWNSTEIN: Your Honor, I have not marked the Temporary Orders as an exhibit since it's a part of the Court's file. But if you wanted a written copy -- I didn't know which is easier for you to review, if it's --

THE COURT: I have it electronically.

MR. BROWNSTEIN: So, you do not need it for

that purpose.

THE COURT: I don't need it unless you want it marked as an exhibit. It's up to you.

MR. BROWNSTEIN: No, I do not, Your Honor.

THE COURT: All right. Thank you.

Q. (BY MR. BROWNSTEIN) Deepa, would you tell us a little bit about your educational background?

A. I am an MD by my degree, and I finished my medical school in India in 1992. And I had, in Europe, internship that I did not complete. And I got married and I came to the United States, did my exams, went back to finish the course, and then did my residency here with the University of Texas.

So, I have an undergraduate degree, which is from India, and then an MD, which is also from India. But passing my exams, I was able to start my residency in the United States.

Q. All right. And tell me a little bit about your employment history.

A. Okay. So, I started my residency 1995, June. And before that, I was here for a very short time. I came in here in 1993, joined my husband for about seven months, did my exams, went back, finished all the required training, the internship that I had to do. Came back in early '95, took all my interviews, and then

started working in 1995. From '95 to '98, I was an intern at the University of Texas in Houston.

Q. All right. I'm going to stop you. During your internship, '95 through '98 --

A. Yes.

Q. -- what was your approximate salary or income?

A. About 36,000.

Q. All right.

A. Annually.

And then in 1998, September, I was offered the position of a faculty with the university and I accepted that and that's where I am presently employed to.

Q. Can you tell us approximately the incomes you have made since becoming a faculty member at the University of Texas?

A. So, initially, I started off at 110 to 120,000. And then progressively -- for a couple of years, I stayed at that salary and then went up to about 150 and -- for another few years. And then last year, I was promoted; and I'm right now at 195,000.

Q. All right. Of the marriage, Pallavi was the only child born; is that correct?

A. Yes.

Q. You have identified her on your petition as --

her name as Pallavi, last name, D-e-v; is that correct?

A. Yes.

Q. No other children were born or adopted during your marriage?

A. No.

Q. And you are not expecting a child at this time.

A. No.

Q. As grounds for divorce, you have alleged two grounds. One, that your marriage has become insupportable due to discord or conflict of personalities between you and your husband that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation. Is that true?

A. Yes.

Q. You've also alleged that your husband is guilty of cruel treatment towards you of a nature that renders further living together insupportable. Is that also true?

A. Yes.

Q. Can you be more specific and give examples of how your husband's cruel treatment has caused you to seek this divorce?

A. To go back a little bit, ours was an arranged marriage. And it was in 1992 that our families arranged

the wedding. And my husband returned back to the United States after the wedding in March of 1992. I joined him in January of 1993 for a short time.

The -- and then the first three years we spent a little time just because of my travel between India and here. So, I did not know him very well at that point. After coming and spending some time with me, I've always had -- it's always been what he's wanted, whether it's been emotional, physical, sexual. It's never been what I have wanted. It's always been -- that was always the way it worked. And I was new. I was young. I was about 22. So, I didn't -- and I came from a very different culture where I was raised very differently.

We had Pallavi in 1995, about a year after I had stayed with him. And all through the pregnancy, he had not come with me even for maybe one visit to the physician. Never offered any emotional, financial, or physical support of any kind. It was just, you know, a way to -- just fathering a child. That was all that was important to him.

After the child was born, I was a resident and so, my mother did come here to help me with the child. She took care of the child most of the time for about four years. During those times, there was very

minimal help offered, whether it was taking care of her, whether it was taking her to the doctors. I had a full-time housekeeper who would help my mother take care of the child's needs. The child slept with my mother in her room.

There was never an emotional bonding that was there with him and his child. And after I started my -- I finished my residency, I became the primary caretaker of the child. All her visits, all her school care, everything related to Pallavi was done by me.

In 2007, I lost my mother to breast cancer. At that point, he started mentally, as well as emotionally, abusing me. It was like the child was always the center. He knew that the child was my weakest link; and so, it was always I'm going to tell the child or I'm going to take her here or -- it was very different.

Never provided for her. And I used to go to work and never be sure that I would come back and have the child fed or even taken to any of the activities she needed. We had a housekeeper who did most of the work.

Emotionally, it was very difficult because it was always about what he wanted and I had to give in just because we had a very young child. I was unsure of the system. I had just lost my mother. I was probably

at my lowest time.

At that time, financially, he made several steps where he actually closed out an account, took money away. And so, at that point, I had to start making some financial decisions myself and that was difficult for him to digest and he emotionally got worse.

This continued for about ten years where I was the primary caretaker for Pallavi. Even for a breakfast appointment, like a breakfast with dad, I had to send money with the child, so that he could get a donut for her -- I mean, she could buy him a donut instead of the other way around.

About when she was 15, I think, my patience broke and it was getting -- every single day was a challenge. Either it was physical, it was mental, it was emotional or sexual. And finally, I think a time came where I couldn't handle; and I moved upstairs into a bedroom upstairs. And I think that was the one where the physical abuse got quite strong.

I actually had to call in several friends several times to talk to him because he was under the impression that if he wanted something, he got it, whether it was physical, mental, financial, or sexual.

And when I moved into a separate bedroom, I

think it was very difficult for him to understand that, you know, he was not getting what he needed. At that point, I think the physical abuse got worse.

And I had kept my child very separate from all this. Whatever was happening between us was always between four walls. But I think with this, it sort of separated out and my child got to see some of it. And I think when one of -- when I woke up one day and I walked down, that was when he pinned me down and I was very nervous. I thought that would have been my last day. I did not think I would survive that, and I'm glad I did.

And that's when I made the decision to say that I needed to file for -- I couldn't take the physical, mental, as well as sexual torture anymore. So, that's when I filed for the Temporary Orders.

THE COURT: All right. We're going to recess for lunch. See y'all at 1:00 o'clock.

**(Recess was taken.)**

THE COURT: All right. Let's continue.

Mr. Brownstein?

MR. BROWNSTEIN: Yes, Your Honor. May I proceed?

THE COURT: Yes, sir.

Q. (BY MR. BROWNSTEIN) Deepa, tell the Judge a little bit about your husband's educational background

and his work history.

A. He has an undergraduate degree in engineering from India, which is called BS. And he has an MS from university -- University of Texas El Paso here. And he's done several courses online, as well as he's pursuing a PhD, I think.

Q. All right. And is his pursuit of a PhD, is that in computer engineering or a computer science field?

A. I think it is in computer science.

Q. And has your husband been employed throughout the marriage?

A. Through most of the marriage, yes, he's been employed. He had a few months probably in 2003 that he was looking for work in between, but most of the time all throughout he has been employed.

Q. All right. Can you tell us the type of employment, who his -- who his employers were and his approximate income?

A. In California where we were initially, he was working for a company called Amdahl; and he made anywhere between 80 to 120,000. And then after that, he worked for an accounting corporation in Houston. And subsequent to that, he changed -- he's worked for the, I think, San Jac college. He has worked for other companies, and his income has been anywhere between 80

to 110,000.

Q.   Is he employed today?

A.   Yes.

Q.   Okay.  Who is he currently employed with?

A.   I'm not sure, but I think ABB is what I was told.

Q.   All right.  And his approximate income today is what?

A.   About 90 to 100,000.

Q.   As your child is getting ready for graduation, tell me about her future plans.

A.   My daughter wants to pursue medicine as a career; so, she looked at several undergraduate colleges.  And we went -- and we were in-state touring, as well as out of state.  And she has decided to go to University of Texas Dallas, the provision with admission to Southwestern Medical School in Dallas.

Q.   And how many campuses or universities did you join her in looking at before she made her decision?

A.   We went to about six campuses, and I was there in all of them.

Q.   And, Deepa, tell me about your future.

By the way, you and your husband are both naturalized U.S. citizens; is that correct?

A.   Yes.

Q. And what are your future plans regarding service to our country?

A. At this point since my biggest commitment, which was my daughter, is going to go off to college, it has given me some chance -- I always wanted to give back to the country that gave me quite a bit. So, I'm planning to be a reservist in the Army for -- for a couple of years. So, I've already talked to the U.S. Army recruiters. I haven't decided on a date because my daughter is still a little nervous, but I probably will do that next year.

And that entails two months out of the year that I need to go and serve at one of the Army bases; and if there is a need determined, I will be asked to go serve in that area. And that may mean that with the state I may be -- I will have to give a temporary resignation with the fact that since it's a federal opportunity, I will be given my job back when I do come back from service.

Q. As a reservist, is it possible that you could be called up for an indefinite time period if the military branch so chooses?

A. Yes, that's a possibility.

Q. Okay. In July 13 of 2012, you filed a Motion to Modify the Temporary Orders seeking child support; is

that correct?

A. Yes.

Q. And why did you do that?

A. Because initially when we came and I got the Temporary Orders, my husband was supposed to pay child support as deemed appropriate; but he never paid me any support. And hence, I had to file a motion to ask him to pay child support.

Q. As a matter of fact, he contributed no support to you from the date of your hearing on the Temporary Orders on your Protective Order, that was July 22nd of 2011, until September 1st of 2012; is that correct?

A. Yes.

MR. VASUDEVAN: Objection, please, because I was told not to give her any support by --

THE COURT: I didn't understand. You were told what?

MR. VASUDEVAN: I was told not to give her any support or anything because of the court order.

THE COURT: Okay. Go ahead.

Q. (BY MR. BROWNSTEIN) So, that period, September, 2011 -- I mean, July, 2011, through September of 2012, was 14 months where he contributed nothing to the support of you and your child; is that correct?

A. Yes.

Q. You and your husband reached an agreement with his attorney at that time for additional Temporary Orders; is that correct?

A. Yes.

Q. And commencing -- and that was a court order of this Court.

MR. BROWNSTEIN: May I approach again, Your Honor?

THE COURT: Yes, sir.

Q. (BY MR. BROWNSTEIN) Deepa, you and your husband reached an agreement that was filed with the Court on September the 11th, 2012, now ordering your husband to pay child support; is that correct?

A. Yes.

Q. And was he ordered to pay you $1,200 per month beginning September 1st, 2012?

A. Yes.

Q. And a like payment due and payable on each month until further order of the Court; is that correct?

A. Yes.

Q. And did your husband initially pay his Court-ordered support of $1,200 per month?

A. He started -- I think, the first month was September; and since then, he did not pay one month of child support from the time he was ordered to now.

Q. Okay. All right. Did it come to pass that in November of 2012 -- well, let me have my outline back.

I'm going to hand you what is marked as Respondent's Exhibit Number 1. And is this a record of your bank records where your husband was making direct deposits of child support?

A. Yes.

Q. All right. He was not ordered to pay through the Child Support Office; is that correct?

A. Yes.

Q. All right. For the payment of November, 2012, did he pay you $1,200?

A. No.

Q. How much did he pay you?

A. It says $1,048.36.

Q. Do you know why he paid you less than the $1,200 he was ordered to pay?

A. Because he took me and my daughter out for dinner; and so, the cost of the dinner was --

MR. VASUDEVAN: Objection, Your Honor. This is not correct. This is the utility bill I paid. Maybe that's --

MR. BROWNSTEIN: Your Honor, opposing counsel will get a chance to cross-examine her.

THE COURT: Go ahead.

Q. (BY MR. BROWNSTEIN) Okay. So, he paid you less than 1,200 --

A. Yes.

Q. -- because he took you out to dinner.

A. Yes.

Q. That difference was $151.64.

A. Yes.

Q. Was that the cost of the dinner?

A. Yes.

Q. And in which he participated, as well.

A. Yes.

Q. Did he also miss a payment in July of 2013?

A. Yes.

Q. Okay. Has he ever caught that payment up?

A. No.

Q. Okay. Does Respondent's Exhibit Number 1 evidence the November payment of 2012 that he was short and also evidence that there is no payment or no credit for child support that he delivered into your bank account for the month of July of 2012?

A. Yes.

MR. BROWNSTEIN: I'm going to offer Respondent's Exhibit Number 1.

**(Discussion off the record between Mr. Brownstein and Mr. Vasudevan.)**

MR. BROWNSTEIN:  Your Honor, I'm going to offer Respondent's Exhibit Number 1.

THE COURT:  Any objection?

MR. VASUDEVAN:  Yes, Your Honor.  On this, the 1,048, that is due to the utility bill, which came to my address.

THE COURT:  That's cross.  You'll have an opportunity to ask her some questions.  All I'm asking you right now is do you object to this being a copy of a bank statement --

MR. VASUDEVAN:  No.

THE COURT:  -- of the witness?

All right.  One is admitted.

MR. BROWNSTEIN:  Thank you, Your Honor.

Q.   (BY MR. BROWNSTEIN)  Additionally, did you have your attorney send your husband a letter, among other things, indicating that he was behind in his child support?

A.   Yes.

Q.   Okay.  And is Respondent's Exhibit Number 2 a true and correct copy of the letter sent to your husband, among other things, notifying him that he was behind in his child support of past due?

A.   Yes.

Q.   Okay.  Attached as part of Respondent's Exhibit

Number 2, is this a true and correct copy of the response, in part, received by you or your attorney indicating that Alavoor indicated that there was a delay due to a technical problem on the bank website?

A.   Yes.

Q.   Is that correct?

MR. BROWNSTEIN:  Do you have any objections to our correspondences?

MR. VASUDEVAN:  No.

MR. BROWNSTEIN:  Okay.  No objection, Your Honor, I ask that Respondent's Number 2 be admitted.

THE COURT:  Two will be admitted.

Q.   (BY MR. BROWNSTEIN)  On or about February 14th of 2013, did your husband file a Motion to Compel Discovery?

A.   Yes.

Q.   All right.  And at this time, he was no longer being represented by Annette Henry?  He was representing himself.

A.   Yes.

Q.   Okay.  And was hearing held on that Motion to Compel on March 11th, 2013?

A.   Yes.

Q.   At the hearing on March 11, 2013, the Court made a ruling denying your husband's Motion to Compel

Production; is that correct?

A. Yes.

Q. And in addition, the Court ordered your husband to pay you $600 in attorney's fees and costs on or before March 18th, 2013; is that correct?

A. Yes.

Q. Did you ever receive that payment?

A. No.

Q. As we sit here today, your husband continues to violate that Court order by not paying the $600; is that correct?

A. Yes.

Q. Shortly after the hearing, on March the 19th, your husband filed a request for court order on the Motion to Compel that the Judge just made a ruling on; is that correct?

A. Yes.

Q. And he also submitted to the Court a court order for the Judge to sign; is that correct?

A. Yes.

Q. That was never heard or submitted to the Court; was it?

A. No.

Q. Do you know why your husband sent a second request and a proposal for the Judge to sign the Motion

to Compel when the Judge had just made a ruling seven days prior?

A. I'm not sure.

Q. On June 5th, 2013, did you request that I forward a notice to take the oral deposition of your husband set for July 11, 2013?

A. Yes.

Q. At the deposition set in my office on July 11, 2013, did your husband appear at his deposition?

A. No.

Q. Were you required through your attorney to pay the court reporter $150 for her appearance?

A. Yes.

MR. BROWNSTEIN: May I approach again, Your Honor?

THE COURT: Yes, sir.

Q. (BY MR. BROWNSTEIN) Because your husband failed to appear for his deposition and because he was forwarding numerous additional production-related requests, were you forced to file a Motion to Compel Discovery and for Sanctions?

A. Yes.

Q. Although this has been filed with the Court, I'm going to mark this as Respondent's Exhibit Number 3. Is this a true and correct copy of the Motion to Compel

Discovery and for Sanctions that I filed with the Court?

**A.** Yes.

**Q.** This was filed for several reasons; is that correct?

**A.** Yes.

**Q.** One of which is your husband did not pay the $600 in attorney's fees ordered by the Court; is that correct?

**A.** Yes.

**Q.** And that your husband failed to appear at his deposition. Is that also correct?

**A.** Yes.

MR. BROWNSTEIN: I'm going to ask that Respondent's Exhibit Number 3 be admitted.

MR. VASUDEVAN: I do raise objections on the motions.

MR. BROWNSTEIN: I understand. You can cross-examine. Do you have any objections to the filing of this?

MR. VASUDEVAN: Yeah, I do.

MR. BROWNSTEIN: Your Honor, I'm going to ask that Respondent's Exhibit Number 3 be admitted. It is a true and correct copy of the Motion to Compel Discovery that was filed with this Court that you have taken notice of on August -- August 2nd, 2013.

THE COURT: Any objection?

MR. VASUDEVAN: Yes, I do have objections, Your Honor.

THE COURT: What's your objection?

MR. VASUDEVAN: The objection was that Motion to Compel, it was not complete. The Judge said he wanted more permission from me; so, that's why I sent it.

THE COURT: He's offering an exhibit. Do you have any objection to that exhibit?

MR. VASUDEVAN: I do have objections.

THE COURT: What's the objection to the exhibit? Not to the hearing, not to the Motion to Compel, but to that exhibit.

MR. VASUDEVAN: The objections I have were on Page 3, the hearing on Motion to Compel, and also on the Page 4, the Motion to Compel Discovery and for Sanctions.

THE COURT: Okay. I don't know if you're understanding me or not, but we're not going back and rehearing that hearing. Mr. Brownstein is simply offering that as an exhibit as to what happened.

MR. VASUDEVAN: Oh, okay.

THE COURT: Okay? Do you have any objection to that?

MR. VASUDEVAN: No, I don't.

THE COURT: Okay. Three is admitted.

Q. (BY MR. BROWNSTEIN) Now, among the reasons that you have requested this Motion to Compel included the defaults of your husband you just testified to.

A. Yes.

Q. Not appearing at his oral deposition, not paying.

And in addition, did your -- attached to this exhibit that has been now admitted, Respondent's Exhibit Number 3, is correspondence that your husband directed to me questioning the corruption of the Court; is that correct?

A. Yes.

Q. And his questions regarding the court hearing, he suggested that the presiding Associate Judge at that time -- he asked several questions including whether I had a blood relative or other relationship with Judge Robertson; is that correct?

A. Yes.

Q. And that he basically, in a nutshell, if you were to summarize his questions, accused the Judge of being corrupt; is that correct?

A. Yes.

MR. BROWNSTEIN: Respondent's Number 3, Your

Honor.

THE COURT: Thank you.

Q. (BY MR. BROWNSTEIN) At the hearing on this Motion to Compel, at that time he had just recently hired an attorney by the name of Shannon Tigner; is that correct?

A. Yes.

Q. And did y'all reach an agreement regarding what was to take place regarding my motion?

A. Yes.

Q. All right. Did y'all agree that we would pass the Motion to Compel and that the parties were to attend mediation with Jimmy Phillips?

A. Yes.

Q. Was your husband required, among other things, to produce records that were responsive to the Exhibit A on my Motion for Oral Deposition?

A. Yes.

Q. And was he also required to file an inventory at least seven days prior to the mediation?

A. Yes.

Q. Did your husband file his inventory prior to the mediation?

A. No.

Q. Filed with this Court is the Mediated Settlement

Agreement as to Pallavi. You and your husband at the first mediation of Jimmy Phillips were able to reach an agreement regarding your child; is that correct?

A. Yes.

Q. That agreement, among other things, appointed you the primary conservator of the child but only allowed possession and access of the child with the father as agreed upon between the child and the father.

A. Yes.

Q. He was also ordered to pay -- or y'all agreed for an increase in child support beginning on the first pay period after the date of the divorce. But you haven't been divorced yet; have you?

A. No.

THE COURT: Mr. Brownstein, just as a point for my notes, this is a property issue case; right? I mean, we got a lot of questions about child support, about visitation, about her going to visit all these schools, and I'm -- I haven't made a note yet on property division.

MR. BROWNSTEIN: We're getting very close there, Judge. Since we have asked --

THE COURT: Can we go ahead and get there?

MR. BROWNSTEIN: Yes, Your Honor.

THE COURT: All right.

**(Discussion off the record between Mr. Brownstein and Mr. Vasudevan.)**

Q.   (BY MR. BROWNSTEIN)  Deepa, I'm going to hand you a copy of your Fourth Amended Inventory, which you have filed with the Court on May the 9th.

And I'm going to also hand you what is marked as Respondent's Exhibit Number 4, which is your Affidavit of Business Records that you filed with the Court and gave notice to your husband back on May the 9th, 2014.

MR. BROWNSTEIN:  First, let me tender Respondent's Exhibit Number 4.  Do you have any objections to the business records affidavit, Mr. Vasudevan?

MR. VASUDEVAN:  Yes, I do have objections on this.

MR. BROWNSTEIN:  Well, would you inform the Court what your objections are since I'd like to offer this?

MR. VASUDEVAN:  I do send objections on this one, on the inventory.

THE COURT:  When did you send it?

MR. VASUDEVAN:  I just gave it this morning before lunch.  The one where it says objections to the --

THE COURT: In this stack?

MR. VASUDEVAN: Yeah, that stack. It's the second page, the second document.

THE COURT: Okay. Well, once again, what is being offered is a summary.

Well, is it your four? Is that what you're on right now?

MR. BROWNSTEIN: Yes. Respondent's 4 is the business records affidavit.

THE COURT: That's not the inventory.

Your next exhibit is the inventory; right?

MR. BROWNSTEIN: That's coming up next, Your Honor.

THE COURT: Okay. What is being offered now is a business records affidavit, which contains records. Do you have any objection to that? What you just showed me was your objections to her inventory.

MR. VASUDEVAN: Right. Those documents are correct, but only thing is they are outdated.

THE COURT: They're correct?

MR. VASUDEVAN: They are not up to date.

THE COURT: Are they correct?

MR. VASUDEVAN: They are correct as for the last two years.

THE COURT: That's all I need to know.

All right.  Four is admitted.

Q.   (BY MR. BROWNSTEIN)  All right.  And, Deepa, I'm going to hand you what is marked as Respondent's Exhibit Number 5.  And is this your proposed division of how you're asking this Court to divide your estate?  Is that correct?

A.   Yes.

MR. BROWNSTEIN:  Do you have any objections to our proposal?

MR. VASUDEVAN:  Yes, I do have objections. I gave that to the Judge.  He already has a copy of the objections.

MR. BROWNSTEIN:  Your Honor, I'm going to offer Respondent's Exhibit Number 5, which is our proposed division of property as required by your local rules of this Court for proposals to be tendered to the Court.  There is an objection.

THE COURT:  Do you understand what is being offered, Mr. Vasudevan?  This is an offer of what your wife would testify to if she were testifying with regard to each of these items.  You may disagree with them, but that's going to be her testimony and that's what he is offering.

So, do you object to this being a summary of her testimony?

MR. VASUDEVAN:  Yes, I do have objections.

THE COURT:  What is your objection?

MR. VASUDEVAN:  Those objections are given in my --

THE COURT:  You're not understanding what I'm saying.  She's going to testify to everything on here.

MR. VASUDEVAN:  Okay.

THE COURT:  You might disagree with it, but that's what she's going to say.

MR. VASUDEVAN:  Okay.

THE COURT:  So, do you have any objection if they offer this as a shorthand of what she would say?

MR. VASUDEVAN:  Yes, I do.

THE COURT:  Okay.  Then go through each item.

MR. BROWNSTEIN:  Your Honor --

THE COURT:  I have a copy.

MR. BROWNSTEIN:  Of the Fourth Amended Inventory?  All right.

Q.  (BY MR. BROWNSTEIN)  All right.  Deepa, we're going to have you walk this Judge through what is the central issue now before this Court, which is how is your property to be divided by this Judge.

In conjunction with your Fourth Amended

Affidavit [sic], you have -- and the Judge has accepted your affidavit Of Business Records -- does your Affidavit of Business Records contain bank records and other documents that support each and every one of your valuations as far as bank accounts and property that you are claiming as your separate versus community?  Is that correct?

A.    Yes.

Q.    Okay.  All right.  In that regard, Deepa, you are claiming as your separate property a bank account in India right now; is that correct?

A.    Yes.

Q.    Of a Citibank NRA [sic] with a value of $103,000.

A.    Yes.

Q.    The -- of the 89 pages of your business records, is the first document your bank statement dated as early as July of 2013 showing a balance of 103,143?

A.    Yes.

Q.    Is the balance of that account substantially the same today?

A.    Yes.

Q.    You are claiming that as your separate property as the sale of an inherited house that you inherited from your mother; is that correct?

A. Yes.

Q. If we turn to the latter pages of your business records affidavit, does this include a Last Will and Testament of your beloved grandmother?

A. Yes.

Q. And this will leaves property to some of your grandmother's heirs, including your mother; is that correct?

A. Yes.

Q. And is this -- and does this Last Will and Testament direct that a house be sold and that certain amounts of money be paid to different relatives of your grandmother, including your own mother?

A. Yes.

Q. Okay. And what house is that, Deepa?

A. That was the primary residence of my grandmother and mother's estate in India.

Q. And when that was sold, your mother was to keep most of the proceeds -- the majority of the proceeds; is that correct?

A. Yes.

Q. But she was required under her mother's will to dispose of certain amounts of money to different relatives; is that correct?

A. Yes.

Q.   Who are those relatives?

A.   They were my mother's siblings and my mother's nieces and nephews.

Q.   Okay.  Now, when your mother died -- and when did she die, ma'am?

A.   She died on June 8th, 2004.

Q.   And she was living here in the state of Texas at the time of her death?

A.   Yes.

Q.   And was she married at the time of her death?

A.   No.

Q.   Did she have any children born or adopted by her other than you?

A.   No.

Q.   You are her only surviving heir; is that correct?

A.   Yes.

Q.   Did you, in fact, enter into an agreement to sell that house that you inherited from your mother?

A.   Yes.

Q.   All right.  And attached to your business records is the agreement between you and who else?

A.   It's between the developer that bought the property.

Q.   And what was the -- what were the terms of this

sale?

A. The -- the terms of the sale were the initial payment was going to be made for the land; and once they built some apartments, the rest of the money was going to be paid.

Q. All right. Approximately, how much did you receive from the sale of this property that you inherited through your mother?

A. The entire property sold for about 1 crore 27 lakhs, which is about $211,000. And this was the entire property; and I had to distribute it based on the will, to give other relatives that were determined to get some money from the proceeds, as well.

Q. Okay. After those proceeds were given to other relatives who owned that property, did you inherit approximately a little over $100,000 -- or 150,000?

A. Yes.

Q. Okay. 100,000 of that is still in the bank account in India; is that correct?

A. Correct.

Q. Identified on your inventory under separate property as having a value of 103,000?

A. Yes.

Q. And did you, thereafter, take 50,000 and purchase an interest in a partnership here in Texas?

A.   Yes.

Q.   And was your partnership contribution $51,450?

A.   About that, yes.

Q.   Okay.  Has there been any increase in value in that partnership interest?

A.   No.

Q.   When you got married --

I'm going to hand you what is marked as Respondent's Exhibit Number 6 and ask if you can identify this.

A.   Yes.  This is a picture of me on my wedding day.

Q.   Okay.

MR. BROWNSTEIN:  Do you have any objections to this?

MR. VASUDEVAN:  No.

MR. BROWNSTEIN:  And -- okay.  I'm going to offer Respondent's Exhibit Number 6.  No objections on this one?

THE COURT:  Six is admitted.

Do you have any other proffer on Number 5?

MR. BROWNSTEIN:  Well, I do; but I'm walking through the inventory, so to speak, as quickly as I can. That will be --

THE COURT:  Okay.  You moved off from that.

MR. BROWNSTEIN:  Oh, okay.  I'm sorry.

THE COURT: I was going to rule on it.

MR. BROWNSTEIN: I'm sorry, Judge?

THE COURT: I was going to rule on it.

MR. BROWNSTEIN: Well, Your Honor, as I'm walking through the inventory, I would like to offer Exhibit Number 5, which is our proposed division of property based upon my client's sworn inventory that has been -- her Fourth Amended Inventory that has been filed with the Court.

THE COURT: And five will be admitted for that purpose.

MR. BROWNSTEIN: Thank you, Your Honor.

Q. (BY MR. BROWNSTEIN) And in this photograph of you on your wedding day -- or on or about your wedding day; is that correct?

A. Yes.

Q. You are bedecked with what appears to be jewels; is that correct?

A. Yes.

Q. Okay. And were these jewels gifted to you by your family?

A. Yes.

Q. Okay. Were some of these --

A. Yes.

Q. Tell me what they are.

A. Some of them were bangles, gold; and some of them were just cosmetic jewelry. The hair band and stuff that you see is cosmetic, but the other stuff is gold.

Q. Okay. And on your inventory, you're claiming this jewelry that you were wearing on your wedding day as your separate property; is that correct?

A. Yes.

Q. And you have evaluated that at approximately $5,000.

A. Yes.

Q. All right. Exhibit Number 7 is a photograph when opposing counsel wanted to inspect your safety deposit box here in Houston; is that correct?

A. Yes.

Q. And did you allow them access --

A. Yes.

Q. -- to take photos?

A. Yes.

Q. And is Respondent's Exhibit Number 7 a correct representation of the contents of your safety deposit box?

A. Yes.

Q. Were some of these items in Exhibit Number 7, some of this jewelry, the same jewelry you were wearing

on the date of your marriage?

A. Yes.

Q. What items are identical?

A. There is a hand band that I'm wearing in the wedding day. The earrings that I'm wearing, the same ones.

Q. Any of the -- are any of the bangles or any other jewelry?

A. I can't tell. There's a couple of bangles there, and I think those are the same ones that I'm wearing.

MR. BROWNSTEIN: Do you have objections to Number 7?

MR. VASUDEVAN: No. No objections.

MR. BROWNSTEIN: Okay. I'm going to offer -- I think six has been admitted. I offer Respondent's Number 7, Your Honor.

THE COURT: Seven is admitted.

Q. (BY MR. BROWNSTEIN) Other than this separate property that you have identified, is the remaining property that you have identified on your Fourth Amended Inventory community property?

A. Yes.

Q. Save and except those funds that are listed as Exhibit A, which is your child's property; is that

correct?

A. Yes.

Q. Deepa, are all of the items that are listed with a bank account on your community property, are all of those values identified in your business records affidavit?

A. Yes.

Q. I am not going to go item by item; but if the Court were to look at your business records affidavit, the values here would be identical to those documents contained in your business records affidavit.

A. Yes.

Q. Is that correct?

We've also listed as Exhibit A that property that you believe belongs to your child.

A. Yes.

Q. Tell me, did you and your -- did you or you and your husband gift your child with a Kindle reading device?

A. Yes.

Q. Two laptops, one Apple and one pink?

A. Yes.

Q. A piano?

A. Yes.

Q. Does she play the piano?

A.   Yes.

Q.   Has she been taking music lessons for many years?

A.   Yes.

Q.   And finally, you and your husband set up two Uniform Gift to Minors Accounts, one that you control and one that your husband controls, listed as Items Number 6 and 7 on Exhibit A as your child's property.

A.   Yes.

Q.   And are you asking this Court -- now that she is age 18, does she need these funds for college?

A.   Yes.

Q.   Do you want this Court to, as part of its court order, to find and order that all of these funds belong to your daughter on your Exhibit A?  Do you want that?

A.   Yes.

Q.   And do you want the Judge to order the immediate release and surrender of these accounts to your daughter, ones that you previously held and your husband previously held as custodians for the benefit of your daughter?

A.   Yes.

Q.   In your division of property, you have identified under Item Number 4 some India property that is in your husband's name or subject to his control; is

that correct?

A. Yes.

Q. You are not on the title of that India property; are you?

A. No.

Q. You really don't know the value of that property; do you?

A. No.

Q. You have also listed a bank account in your husband's name in India with a value unknown; is that correct?

A. Yes.

Q. All of those are evidenced in your business records affidavit; is that correct?

A. Yes.

Q. Deepa, you have made a proposal to this Judge, based upon your inventory, of how your estate should be divided.

A. Yes.

Q. You're asking this Court to find as your separate property the remaining sale proceeds of your mother's house in India of about $103,000; is that correct?

A. Yes.

Q. That account being in an Indian account.

A. Yes.

Q. And 50,000 you used from the sale proceeds to buy an interest with some friends and relatives called DLR Interest?

A. Yes.

Q. And, of course, all of your jewelry and personal effects.

A. Yes.

Q. If the Judge were not to find this as your separate property, would you still want the Judge to award this to you as part of your division of your overall estate?

A. Yes.

Q. All of the items listed in your proposal have a possession sign for -- "H" for husband and "W" for wife. You're asking the Court to award you not only the house, the contents in the house, the personal effects, rather than trying to divide those.

A. Yes.

Q. And your husband's inventory with the Court that he filed several months ago, he has not listed any household furnishings in his possession; has he?

A. No.

Q. Okay. To award you -- you're asking the Court to award you a greater share of the estate?

A. Yes.

Q. Is that in part because of the fault involved in this relationship?

A. Yes.

Q. And in part because your husband did not contribute to your support for a period of 14 months until a Judge ordered him to do so; is that correct?

A. 14 months was the one that the Judge, but he hasn't done much. Our finances have been separate since 2004, and there's been no contributions since then.

Q. If the Judge were to honor our proposal, it would allow you to keep all of the accounts in your name and the same for your husband; is that correct?

A. Yes.

Q. Save and except a retirement account that you have.

A. Yes.

Q. And that is with your current employer; is that correct?

A. Yes.

Q. And you're asking this Judge to award you out of your 403 -- 403(b) plan with the University of Texas, 337,878?

A. Yes.

Q. And 128,567 to your husband?

A.   Yes.

Q.   And if the Judge were to do that and award to you the proposal that you see here, you would be awarded approximately 60 percent of the community estate, as you have testified.

A.   Yes.

Q.   Do you think that is a fair and equitable division of your estate?

A.   Yes.

Q.   Deepa, was it necessary for you to hire me to represent you in this case?

A.   Yes.

Q.   And have you agreed to pay me an hourly rate of $350 an hour?

A.   Yes.

Q.   And have you, to date, paid me over $37,000 in attorney's fees?

A.   Yes.

Q.   And you're asking this Court to award you attorney's fees in this case; is that correct?

A.   Yes.

            MR. BROWNSTEIN:   One minute, Your Honor?

            THE COURT:   Yes, sir.

            MR. BROWNSTEIN:   I pass the witness, Your Honor.

THE COURT: All right. Mr. Vasudevan, do you have any questions of the witness?

MR. VASUDEVAN: Yes, Your Honor.

THE COURT: You may proceed.

MR. VASUDEVAN: Yes.

**CROSS-EXAMINATION**

**BY MR. VASUDEVAN:**

Q. First question I have is --

MR. BROWNSTEIN: Your Honor, I wish opposing counsel would just go ahead and ask from his chair unless he has something as an exhibit for her to review.

MR. VASUDEVAN: Okay.

Q. (BY MR. VASUDEVAN) So, Deepa, when did you come to U.S.?

A. First time, January of 1993.

Q. After coming to U.S., how many times did you travel back to India?

A. I can't remember for sure.

Q. Did you at any time travel or -- after 1993?

A. Absolutely.

Q. About how many times?

A. I can't remember. I must have gone three or four times at least.

Q. So, when you went back to India, how many -- how many months did you stay there?

**A.** The first time I went there, I stayed for about seven months because I had to finish my internship.

**Q.** So, when did your mom come to U.S.?

**A.** I can't remember the exact date, but she came when I was pregnant.

**Q.** Was her visa --

**A.** It was in 1995.

**Q.** -- rejected several times?

**A.** What's that?

**Q.** Was her visa rejected several times?

MR. BROWNSTEIN: Your Honor, I'm going to object as not relevant.

THE COURT: What's the relevance of that?

MR. VASUDEVAN: I want to prove that I was taking care of the family and the house and all that. And she was saying that the maid servant was taking care of the house, but there was no maid servant. That's my point.

THE WITNESS: That was after Pallavi was born.

THE COURT: Okay.

MR. BROWNSTEIN: Your Honor, I would object on relevance.

THE COURT: Your daughter is how old?

THE WITNESS: She is 18.

THE COURT:  18?

THE WITNESS:  Yes.

THE COURT:  So, what does that have -- 18 years ago, what does that have to do with what I'm going to be doing today?

MR. VASUDEVAN:  Oh, for the last 18 years, I have been taking care of the family.

THE COURT:  Okay.

MR. VASUDEVAN:  And she was saying that --

THE COURT:  Hang on.  Are you asking me to do something with regard to that 18 years?

MR. VASUDEVAN:  No.  I just want -- she was saying in the beginning that I was not taking care of the home and --

THE COURT:  And that's -- so, I'm going to tell you the same thing I did Mr. Brownstein.  What does that have to do with the property division?  And Mr. Brownstein got right to the property issue, and that's when his --

MR. VASUDEVAN:  Okay.

THE COURT:  -- questioning stopped.  So, what does that have to do with property?

MR. VASUDEVAN:  It's important in the marriage as to whose fault it is.

THE COURT:  The fact that you were taking

care of the family --

MR. VASUDEVAN: Yes.

THE COURT: -- has to do with the fault. Okay. If you see that as an issue, I'll let you ask that. I don't, but --

MR. BROWNSTEIN: I'm going to object, Your Honor, because his petition -- the only grounds for divorce is insupportability, not fault.

THE COURT: I'll sustain that objection.

Your next question?

Q. (BY MR. VASUDEVAN) The next question was: So, you've been working like all time and working night duty and all that?

A. I was working at UT. UT gives me the ability to work overtime if needed. And I have to support the family; and hence, I did work overtime. And my salary represents my -- what I get is one paycheck from the University of Texas. Whether I moonlight, whether I work excess, it's one paycheck. I do not get multiple paychecks. And they're all documented.

Q. So, who was taking care of the child when, in the night duty, when you were doing night duty?

A. My mother.

Q. Your mother was not here; right?

A. 1995. She came when I was pregnant and stayed

for one and a half year.

Q. How can she stay about one and a half years when the visa was only good for six months?

A. She filed an extension for about a year after that. 02:08PM

Q. No. The maximum extension is only six months.

MR. BROWNSTEIN: Your Honor, I'm going to object. There's no question. He's testifying.

THE COURT: Sustained.

MR. VASUDEVAN: So, I want to prove, Your 02:08PM Honor, that I was taking care of the child and she was going on duty -- on night duty and moonlighting, and I was taking care of the child. And child loves me, and I love the child and I love the family, too.

MR. BROWNSTEIN: Your Honor, again, I'm 02:09PM going to object to testifying. If he has a question --

THE COURT: I'll sustain it.

Make sure that you ask questions.

MR. VASUDEVAN: Okay, Your Honor.

Q. (BY MR. VASUDEVAN) So, when I was working, I 02:09PM was traveling a lot doing consulting work to other places?

A. I think you did one year where you went consulting. But most of yours was primarily in Houston.

Q. But even in Houston, I had to travel a lot; 02:09PM

right?  To Dallas every week?

A.  I don't -- I mean, I cannot remember when you were working in Dallas.  Most of your travel was within Houston.

Q.  Okay.  Oh, on the pink laptop, you said that I had taken it; right?  The pink laptop?  Who bought that laptop?

A.  I think we bought it for our child.

Q.  And that was -- I was also doing office work on that?

A.  I don't think.  There was very limited.  There was nothing that you were working on.  You had your own laptop.

Q.  No.  I was using that for my office work, too.

MR. VASUDEVAN:  So, that's the reason I took that laptop, Your Honor.  And then after I copied that, I returned that laptop.

MR. BROWNSTEIN:  Objection.  Not a question, Your Honor.

THE COURT:  Make sure -- don't argue.  Just ask questions.  All right?

MR. VASUDEVAN:  Okay.

Q.  (BY MR. VASUDEVAN)  So, why was the phone blocked when my -- my phone was blocked.  I couldn't call home.

A. I had --

MR. BROWNSTEIN: Objection. Asking questions of evidence that's not been testified to, Your Honor.

THE COURT: Sustained.

Ask a question.

Q. (BY MR. VASUDEVAN) Okay. In the inventory, number one, where it says the Citibank NRI, it was reportedly having $113,000; right? And you have withdrawn $10,000 recently?

A. Yes.

Q. Why -- why was it withdrawn?

A. I had to pay for attorney fees. I had to pay taxes. Also, for that bank, I have to pay the taxes for the India -- for the money in India. So, that was deducted directly from that account. I also had to pay for other things that I needed for Pallavi's education.

Q. What did you spend for Pallavi's education?

A. Books, travel. She had to go to campus tours.

Q. So, what were you doing with the salary? You were making 200, 300K salary; right?

A. I was also running a house.

MR. BROWNSTEIN: Your Honor, I'm going to object. That's such a general question. It's impossible to answer what did she do with her salary.

RENEE E. RAPE, CSR, RPR
OFFICIAL COURT REPORTER
300TH DISTRICT COURT

THE COURT: Sustained.

Q. (BY MR. VASUDEVAN) So, the Citibank NRI account, that 103, came from a joint account which we both had?

A. No. Initially, we held a joint account in 2004. And that account was changed, and this account was opened. And this --

Q. How much -- how much was the money in that account?

A. In the previous account, I cannot remember. But it was definitely between 5 and 6 lakhs.

MR. VASUDEVAN: Your Honor, I want to show an exhibit.

THE COURT: Okay.

MR. VASUDEVAN: It's Exhibit Number -- Number 5 in the deposition that she had.

THE COURT: Her exhibit or your exhibit?

MR. VASUDEVAN: My exhibit.

THE COURT: Your exhibit?

MR. VASUDEVAN: Yes.

THE COURT: All right. Do you want to show Mr. Brownstein, so that he can figure out if he's going to object or not?

MR. BROWNSTEIN: Your Honor -- well, I don't know if anything is being offered. So, if he wants to

ask questions about something -- I don't know how to respond. Nothing has been offered at this moment, Your Honor.

THE COURT: All right. Are you going to offer that as an exhibit --

MR. VASUDEVAN: Yes.

THE COURT: -- or are you just going to read from it?

MR. VASUDEVAN: Yeah, I'm going to offer this as an Exhibit Number 5. Or the entire thing, I want to give it. This is the deposition exhibits. So, I want to give them to the Court.

MR. BROWNSTEIN: Your Honor, I'm going to object if Mr. Alavoor wants to offer an exhibit to a non-certified copy of a deposition of my client. Nothing has been filed with the Court. I'm going to object to it in its entirety.

THE COURT: Do you have a certified copy?

MR. VASUDEVAN: Yeah. This was signed by -- this was a deposition that was taken on --

THE COURT: Do you have a signed copy?

MR. VASUDEVAN: Right. It's signed by the court reporter.

THE COURT: Okay. Do you want to show it to Mr. Brownstein?

(Discussion off the record between Mr. Brownstein and Mr. Vasudevan.)

MR. BROWNSTEIN: Judge, this is not a certified copy of a deposition that opposing counsel is tendering to offer, nor is it the written -- the original. It's evidently something file stamped, a copy unsigned by my client. And I object to its introduction.

THE COURT: I'll sustain the objection.

Q. (BY MR. VASUDEVAN) So, this is Number 5. What's among -- it shows here --

MR. BROWNSTEIN: Your Honor, I thought you had sustained my objection. So, for counsel to use what you just sustained my objection, I'm going to further object that he not approach my client with it.

THE COURT: Sustained.

Do you understand what the objection was? The objection was that it was not a certified copy of a deposition. So, he's made an objection to you offering it as an exhibit, which I sustained, being that you cannot use it as an exhibit. If you have some questions that you want to ask, you're welcome to ask those questions.

MR. VASUDEVAN: Yeah, I have a question to ask. I need to show it to her. This is a statement --

this is a bank statement. It was showing amount of --

THE COURT: And that bank statement is in the same document that I sustained the objection, so that you can't use it as an exhibit.

MR. VASUDEVAN: The reason is, I want to prove that this amount --

THE COURT: You can ask questions. Don't tell me what's in the document.

MR. VASUDEVAN: The document, it says the balance is about -- more than $100,000.

THE COURT: If you have a question, you can ask the witness.

MR. VASUDEVAN: Yes. But she was saying that --

THE COURT: Don't ask me. Don't make a statement. Ask a question.

Q. (BY MR. VASUDEVAN) So, the statement here says that having more than 100,000.

A. I don't know what --

MR. BROWNSTEIN: Your Honor, I'm going to object. Again, there's no evidence previously testified to my client regarding these issues. So, I'm going to object as to being questioned about evidence that hasn't been introduced before this Court.

THE COURT: Sustained.

MR. VASUDEVAN: Can I ask her the question?

THE COURT: Sure.

Q. (BY MR. VASUDEVAN) Yeah. The statement here says --

THE COURT: Not about that. That's just the objection I just sustained.

MR. VASUDEVAN: Okay.

THE COURT: Okay?

Q. (BY MR. VASUDEVAN) The next question I have is about the Entry Number 2, the DLR Interest. Here it says $51,000 as being your part interest. How did you get this money?

A. That was money that I got through the sale of the property in India, which my mother inherited from her mother. And that's what I invested, because that was her desire that it go as a gift to her granddaughter.

Q. But you got it in India rupees. How did you transfer it?

A. I got it -- I converted it from India rupees. It was done with friends and family. So, I gave them in Indian rupees. I gave them the value of that $50,000 in rupees.

Q. And how did they give you the dollar? Where is that? Did they deposit?

**A.** The property was purchased, yes.

**Q.** Where was it deposited?

**A.** Into the account. They paid the money for that. I gave them the rupees, they got the dollars, and it was paid into that -- paid for the sale of that property.

**Q.** Where is the receipt for that? Receipts?

**A.** The receipts for?

**Q.** For the payments.

**A.** They paid. There are receipts. The property is bought; so, the amount is there. And this was done in 2004. Exactly around the time when I got the cash, it was given to the family, and they paid the amount. And if you want that -- at that point, yes, there are probably receipts. But it was purchased -- the land was purchased for that amount. The land is the receipt.

MR. VASUDEVAN: Your Honor, this is not the separate property. This is a -- it should come out of the community property, these two.

MR. BROWNSTEIN: I'm going to object. Again, we're under cross.

THE COURT: Sustained.

MR. VASUDEVAN: The next question I have is regarding the Item Number 3 where she's saying it is -- there's $5,000. I want to submit these Exhibits 12, 13, 14, and 15.

MR. BROWNSTEIN:  Your Honor, I'm going to object.  I'm not certain the purpose, but there appears to be blurry photographs along with somebody's notes, perhaps notes of Mr. Vasudevan since he is offering that in the form of his analysis or description of what that photo represents.  To the extent that it contains things beyond the blurry photo, I'm going to object as it being hearsay.

MR. VASUDEVAN:  Your Honor, I wish to show you these.

THE COURT:  This is what you're offering?

MR. VASUDEVAN:  Uh-huh, yes.

THE COURT:  12, 13, 14, 15, and 16?

MR. VASUDEVAN:  Uh-huh.

THE COURT:  Okay.

MR. BROWNSTEIN:  I didn't go through all of them.  If there's things beyond the photo, then I may have other objections, Your Honor.  I didn't know he was trying to tender 15 or 20 pages of things.

THE COURT:  There are several.

MR. BROWNSTEIN:  If I could take a look, I might offer additional objections, Your Honor.

Well, my goodness.  Okay.  As to the objections as to things called Exhibit 12, which contain photos and additional typewritten language -- basically,

the typewritten language contained on Exhibit 12 appears to be testimonial in nature. I object that it's hearsay.

The same objection to -- I can't tell where Exhibit 12 and where others continue. 13 appears to be a typewritten description of what appears to be handwritten. There's been no predicate. It's testimonial in nature. I object that it's hearsay. Along with Exhibit Number 13, a description of what this purportedly represents. Again, no predicate. It's hearsay, Your Honor.

Exhibit Number 14 --

So, if I could, could I ask the Judge to rule on my objections to at least 12 through 13 before we go to 14? That's a little bit different in nature.

THE COURT: Sustained.

MR. BROWNSTEIN: By the way, Your Honor, if I could, I have what is marked as Respondent's Fourth Amended Inventory that I marked as Exhibit 5. And quite frankly, I don't know if I just premarked that inappropriately.

THE COURT: I admitted that.

MR. BROWNSTEIN: Item 5, the inventory.

THE COURT: Oh, wait a minute. I thought you marked --

MR. BROWNSTEIN: I may have inadvertently marked this on my own.

THE COURT: The proposed division is what I have as five.

MR. BROWNSTEIN: Okay.

THE COURT: But I don't have five.

MR. BROWNSTEIN: You don't have Exhibit Number 5?

THE COURT: No.

MR. BROWNSTEIN: The proposed division?

THE COURT: No. You were asking questions.

MR. BROWNSTEIN: Oh. Oh, I guess this is the proposed division.

THE COURT: So it is.

MR. BROWNSTEIN: Thank you. I tender that back.

THE COURT: Thank you.

MR. BROWNSTEIN: As to Exhibit Number 14, appears to be documents regarding a safety deposit box of the parties, some rental dating back from August of 2001 to maybe some in 2013. To the extent they're offered to prove that my client had a safety deposit box, which we have the photos, I have no objections to Exhibit 14, 6 through 7, Your Honor.

THE COURT: You have no objection to those?

MR. BROWNSTEIN: I have no objections to 14 entitled Pages 1 -- 1 through 7, all the way through 6 through 7. There is part of Exhibit Number 14 that is 7 of 7 that I will offer objections to.

Regarding Exhibit 14, 7 of 7, again, absolutely no predicate. I have no idea what it is, Your Honor.

Exhibit Number --

MR. VASUDEVAN: Oh, I can explain what it is.

MR. BROWNSTEIN: Well, the remainder of these exhibits appear to be descriptions of some handwritten notes. There's been no predicate. I'm going to object.

And finally, the last page, Exhibit 16, appears to be a copy of something from a Internet regarding Indian fraud. And again, no predicate, no relevance.

I'm going to object to the remainder of Exhibit 14, 15, and 16, Your Honor, for those reasons.

THE COURT: 14, Pages 1 through 6 are admitted; Page 7 is not admitted.

15 and 16 are not admitted.

MR. VASUDEVAN: I can't ask any questions on this one?

76

THE COURT: You can ask questions, but they're not admitted as exhibits.

MR. VASUDEVAN: Can I show it to her as to what it is? No, I can't?

Q. (BY MR. VASUDEVAN) Okay. During the deposition on 24th, there was exhibit -- an Exhibit 4. It was saying there are 14 gold bars, all bought by me.

MR. BROWNSTEIN: Your Honor, I'm going to object. He's referring to an unsworn, uncertified deposition, exhibits to that, that you have already sustained my objection. So, I'm going to object that he's --

THE COURT: I sustained the objection.

MR. BROWNSTEIN: Well, I object that he's referring to a specific exhibit that is not before this Court.

THE COURT: I don't know what he's referring to. Those -- the documents in his hands were not that deposition. So, I don't know if he's asking a --

I'm going to let you ask the question. Just make sure you don't --

MR. VASUDEVAN: Oh, well, this document is in reference to the deposition she already had.

THE COURT: I have no idea what document you're referring to. I just know it's not the

deposition that you set down over here on counsel table. But you can ask that question.

MR. VASUDEVAN: Yeah, that's what I'm asking.

Q. (BY MR. VASUDEVAN) So, there were some -- there were handwritten notes, and then there were typewritten, like 14 gold bars all bought by me. Were they bought by you?

A. I don't even know who wrote it, typewritten, typed. I don't have any idea. I did not write it.

MR. VASUDEVAN: Can I show it to her if she says --

THE COURT: If it's on that exhibit, you can't.

MR. VASUDEVAN: Yes.

THE COURT: You cannot.

MR. VASUDEVAN: Then I can't prove further what it is.

THE COURT: Mr. Vasudevan, I cannot tell you how to present your case. You are representing yourself. There are certain rules of evidence and rules of procedure that apply to any case presented in the state of Texas. Representing yourself, you are bound to abide by those same rules of evidence and rules of procedure.

The objections that are being made are proper. I can't tell you what to do with the exhibits that you did not get admitted. But let's move along.

MR. VASUDEVAN: Well, what I want to prove was that Item Number 3 is not just 5,000. It's more than -- it's about $900,000.

THE COURT: All right. Let me ask you this question. Do you object that they are being claimed as your wife's separate property gifts?

MR. VASUDEVAN: I do raise objection on that, and I say it is a community estate. It was given to both -- both of us. And the value is also wrong. The value is not 5,000.

THE COURT: Okay.

Q. (BY MR. VASUDEVAN) The Item Number 4 in inventory, I don't know what it is. So, do you know what it is, the Item Number 4, the India property, Plot Number 16?

MR. BROWNSTEIN: May I go ahead and tender the inventory since my client is not --

THE COURT: Sure.

MR. BROWNSTEIN: -- able to remember everything by memory?

A. I'm sorry. What was the question?

Q. (BY MR. VASUDEVAN) Who gave you this one?

**A.** So, this was received as a mail. It came as a mail to our home address.

**Q.** To whose home address?

**A.** As of now, our home address.

**Q.** So, who received it? You received it? You opened it?

**A.** It was in the mailbox.

**Q.** It was in the mailbox.

**A.** Yes.

**Q.** And then did you open it?

**A.** I did not open it.

**Q.** If you did not open it, then --

**A.** So, the mail is also --

**Q.** -- how did you read the contents inside of it?

**A.** The mail was also picked up by Pallavi and gets picked up by my housekeeper, Maria. So, she opens the edges of the letter sometimes. And this one was opened by Pallavi. She did not read the name. She opened the envelope, and that's how that was -- how we got that. So, I'm not the only one who opens the envelope, is the answer.

MR. VASUDEVAN: I object, Your Honor. Somewhere -- either she has opened it or I have questions for Mr. Brownstein, if I can ask questions.

THE COURT: This is the witness on the stand

right here. I think she's answered your question.

MR. VASUDEVAN: The question was I want to ask if Mr. Brownstein has opened that mail.

THE COURT: He's not on the stand. You see who's on the stand right now.

Q. (BY MR. VASUDEVAN) So, this particular item should be ignored on Item Number 4. It's wrong.

MR. BROWNSTEIN: Objection. No question, Your Honor.

THE COURT: Sustained.

Are you claiming that you don't own a piece of property at Plot Number 16?

MR. VASUDEVAN: No, I don't own.

THE COURT: You don't own it?

MR. VASUDEVAN: No.

THE COURT: So, I can award that to her if it's owned by someone in the marriage? You're okay with that?

MR. VASUDEVAN: Yes. Uh-huh.

THE COURT: Okay. I just wanted to know what you wanted me to do with it.

MR. VASUDEVAN: Yes.

THE COURT: Go ahead. Do you have any more questions?

MR. VASUDEVAN: Yes, Your Honor. I have

some questions.

Q.   (BY MR. VASUDEVAN)  On Item Number 27, the IRA plan, you have withdrawn some $10,000 from there.  Why?  Why did you withdraw?

A.   There are a couple of withdrawals.  If you see, that is one, in answer to that question.  And then also the subsequent ones, we had to replace the HVAC of our house since the entire system broke down.  So, that cost me about $25,000 that I had to pay.  That was one.  I also have to pay the taxes April 15th, 2014, so.

MR. VASUDEVAN:  That's all I have now.  I can -- I can ask later, right, if I want to?

THE COURT:  I don't know.

Mr. Brownstein, do you have any more questions?

MR. VASUDEVAN:  Can I ask questions later?

MR. BROWNSTEIN:  Just a few follow-up, Your Honor.

THE COURT:  Okay.

**REDIRECT EXAMINATION**

**BY MR. BROWNSTEIN,**

Q.   Deepa, in your petition you requested that your name be changed.  What name do you wish?

A.   Deepa Iyengar.

Q.   And you are not seeking -- is that your maiden

name?

A. Yes.

Q. All right. And you're not seeking a name change to avoid criminal prosecution or repayment of creditors; is that correct?

A. Yes.

THE COURT: Yes, it is correct?

THE WITNESS: I mean, I -- I am not taking it for criminal court.

THE COURT: It was a bad question.

Q. (BY MR. BROWNSTEIN) Also, Deepa, you and your husband at the second mediation reached an agreement regarding the sale of the house; is that correct?

A. Yes.

Q. That's set out in the Mediated Settlement Agreement, which has been filed with the Court.

A. Yes.

Q. And on your proposed division of property regarding the residence, you just put on your proposal the division per the Mediated Settlement Agreement.

A. Yes.

MR. BROWNSTEIN: I pass the witness again, Your Honor.

THE COURT: Any more questions?

MR. VASUDEVAN: Not questions, Your Honor.

I have the Second Amended Inventory of mine.

MR. BROWNSTEIN: Your Honor, we're in the middle of -- if he has no further questions, I have another witness to call upon, Your Honor.

THE COURT: All right. Call your next witness.

MR. BROWNSTEIN: I call myself. Do you want me to --

Deepa, you can go ahead and sit down.

**(Discussion off the record between Mr. Brownstein and Mr. Vasudevan.)**

MR. VASUDEVAN: Yeah, I do have objections.

THE COURT: A proper one?

MR. BROWNSTEIN: May I testify in a narrative form, Your Honor?

THE COURT: Yes, sir.

**RONALD ALLEN BROWNSTEIN,**

and having been first duly sworn, testified as follows:

**DIRECT EXAMINATION**

**BY MR. BROWNSTEIN:**

Q. Your Honor, my name is Ron Brownstein. I'm an attorney licensed in the state of Texas, having been -- having been licensed since 1978, I believe, which I know is hard for you to believe considering how youthful I look. I was --

THE COURT: Remember, you're under oath.

Q. (BY MR. BROWNSTEIN) Since I'm under oath, I'll retract that last comment.

I was retained by Mrs. Deepa Vasudevan to continue on in her representation in this divorce action. Her previous attorney, through Scott Brown's office, had -- I either substituted or they were allowed to withdraw.

I am familiar with the customary and normal attorney's fees in Brazoria County for cases involving divorces. And the issues involved in this case initially were related to the child since the child was only 15 when -- or 15 and a half when we started but is now, for all practical purposes, an adult.

I am charging my client $350 an hour, which is, in my opinion, a reasonable fee considering the issues involved in this case. This has been a particularly difficult case, as the Respondent has had two separate attorneys that I have had dealings with, as well as himself, at two separate times, including now. A fee of $350 an hour for attorney's fees in this county is customary, is reasonable.

And the fees that I have charged my client are set out in Respondent's Exhibit Number 8, which is a summary of those fees and services that I have performed

for my client, detailing the date the service was performed, a brief description of same, and the amount of time devoted to that.

My attorney's fees, including trial, have totalled 102.70 hours at $350 an hour, which my client is seeking reimbursement. That is $35,945. In addition to that, there have been costs of $1,169.27. My total bill, which has been paid by my client, is $37,114.27.

I tender again Respondent's Number -- Exhibit Number 8 as a shorthand summary of my time devoted on this case.

MR. BROWNSTEIN: Do you have any objection, sir?

MR. VASUDEVAN: Yeah, I do have objections.

MR. BROWNSTEIN: Well --

THE COURT: What's the objection?

MR. VASUDEVAN: The objection is it should not be listed under the -- this inventory. It is something even I -- even I do pay attorney's fees.

THE COURT: What is the objection?

MR. VASUDEVAN: Oh, the objection is this should not be included in the inventory.

THE COURT: Okay.

MR. VASUDEVAN: If it is included, then even I have to include my attorney fees, too.

THE COURT: Do you have any objection to this document being offered?

MR. VASUDEVAN: Oh, this document which is offered? Yeah, no. No objection.

THE COURT: No objection. Eight is admitted.

MR. BROWNSTEIN: I pass the witness.

THE COURT: Do you have any questions of Mr. Brownstein?

MR. VASUDEVAN: Yeah, I do have some questions; but it's not related to that, the questions I do have.

THE COURT: I don't care what they're related to. As long as they're relevant, you can ask them.

MR. VASUDEVAN: Okay.

**CROSS-EXAMINATION**

**BY MR. VASUDEVAN:**

Q. This is regarding the Item Number -- the 4 in the inventory. Can I show you? The Item Number 4 on the inventory, Deepa was saying the India property, so and so. And then you have sent me a letter of this, right, the demand notice and all that. Who -- who gave it to you?

MR. BROWNSTEIN: I'm sorry. I don't

understand the question, Your Honor.

Q. (BY MR. VASUDEVAN) The question was: Did Deepa give it to you, that one, or --

A. I -- I prepared that inventory based on information provided by my client and by your attorneys, when you had attorneys, and yourself when you did not have an attorney.

Q. No. There was a demand notice, and I have the letters. Wait. Let me show it to you. These were the two, Articles 8 and Article 9 and 17, which are related to the Item Number 4 in that inventory.

A. All right. Sir, do you have a question?

Q. Yes. Who gave this document to you?

A. I'm sure this was provided by my client.

Q. Was it opened when it was given like that, or was it in an envelope?

A. Oh, I have no recollection whether it was in an envelope, in a box, or in the form delivered to you in a -- in a supplement to our production. I don't remember.

Q. So, you don't know who opened that mail; right?

A. I don't know how it came into anybody else's possession except mine. I don't know if it came through the mail or not.

Q. So, this can be incorrect, too; right? So, it

can be a fake.  It's not a real document maybe.  It can be a fake document.

    **A.**    I guess anything is possible, sir.

    **Q.**    Okay.

          MR. VASUDEVAN:  That's all I have.

          THE COURT:  Your next witness?

          MR. BROWNSTEIN:  I have no further witnesses, Your Honor.

          THE COURT:  Rest?

          MR. BROWNSTEIN:  We rest.

          THE COURT:  Mr. Vasudevan, do you have any witnesses?

          MR. VASUDEVAN:  No, Your Honor.

          THE COURT:  No witnesses?  All right.  You rest?  Do you rest?

          MR. VASUDEVAN:  Huh?

          THE COURT:  Do you rest, meaning are you done?

          MR. VASUDEVAN:  No, not yet, Your Honor.  I have this second amended --

          THE COURT:  That's what I just asked you: Do you have any witnesses?  You don't have any witnesses?

          MR. VASUDEVAN:  No, no witnesses; but I just want to submit this Second Amended Inventory.

THE COURT: Okay. Is that your inventory?

MR. VASUDEVAN: Yeah, this is my inventory.

MR. BROWNSTEIN: Your Honor, I'm --

MR. VASUDEVAN: I gave you a copy of this.

MR. BROWNSTEIN: Your Honor, I was handed a copy of an unsworn-to document entitled Second Amended Inventory. I'm going to object as to its lateness, the fact that it is not sworn as required by the scheduling order and your local rules. I have not had adequate time to study or vet that document since it was -- well, it's being tendered to you for some purpose. I don't know if it's for filing with the Court or for evidence. Those are my objections.

THE COURT: All right. Mr. Vasudevan, you are under oath; so, let me ask you --

MR. VASUDEVAN: Uh-huh.

THE COURT: -- are you stating that all the information contained in this document is true and correct?

MR. VASUDEVAN: Yes, true.

THE COURT: All the values are accurate?

MR. VASUDEVAN: Yes, Your Honor.

THE COURT: This is all the property that you believe to exist?

MR. VASUDEVAN: That's correct.

THE COURT: Is that your testimony?

MR. VASUDEVAN: Yeah, that's my testimony.

THE COURT: All right. I will let you file it and admit it.

MR. VASUDEVAN: Thank you.

THE COURT: You don't have it marked. Petitioner's 1 will be admitted.

Anything else?

MR. VASUDEVAN: One more document.

**(Discussion off the record between Mr. Brownstein and Mr. Vasudevan.)**

MR. VASUDEVAN: Your Honor, this is objections to the inventory which he has filed.

MR. BROWNSTEIN: Your Honor, I'm going to object that it is a document purportedly testimonial in nature. It's hearsay. And for those reasons, I'm going to object to the Court's consideration of that document.

THE COURT: I'll sustain your objection. And we'll mark this as Petitioner's Exhibit 2, but I will sustain the objection.

Anything else?

MR. VASUDEVAN: These are the copies of the deposition that she had taken. Do I need to -- shall I certify this and then submit? Or what do you want? What do you do?

MR. BROWNSTEIN: I think you've already --

THE COURT: I can't tell you what to do with it. If it's the same exhibit that you offered previously, I've already sustained the objection. I think it was Number 5?

MR. VASUDEVAN: No, no. These are the -- yeah, these are the exhibits in the deposition that she has done. I want to submit a copy to the Court.

THE COURT: I'm not looking at it if it's not certified.

MR. VASUDEVAN: So, shall I get it certified and then submit to you?

THE COURT: Can you do that right now?

MR. VASUDEVAN: I need time for that.

THE COURT: Today is the only day that's going to happen. Did you realize that today was your final trial date, Mr. Vasudevan?

MR. VASUDEVAN: Yes, uh-huh.

THE COURT: Okay. So, you got to be prepared. If it's not certified, then I'm not -- I'm not allowing it as an exhibit.

MR. VASUDEVAN: Okay.

THE COURT: Anything else?

MR. VASUDEVAN: That's all I have, Your Honor.

THE COURT: That's it?

MR. VASUDEVAN: Uh-huh.

THE COURT: Both sides rest?

MR. BROWNSTEIN: Yes, Your Honor.

THE COURT: All right. The evidence is closed. Give me until about 3:15, and I'll come back and give you my ruling. We'll be in recess until 3:15.

MR. BROWNSTEIN: Thank you, Your Honor.

**(Recess was taken.)**

THE COURT: All right. Let's go back on the record in Vasudevan. I will make the following findings.

I will find the marriage has become insupportable because of discord or conflict of personalities and find that there's no reasonable expectation of reconciliation.

I will further find fault in the breakup of the marriage; and based upon the testimony and evidence with regard to family violence, will find the cruelty fault to be true.

I will grant the divorce, terminate the marriage relationship as of today, pronouncing and rendering today, and give you an entry date of June 13 for the decree.

I will grant the name change that was

requested.

With regard to conservatorship, find that the child is now 18 and graduating. With regard -- therefore, no other orders will need to be issued with regard to the child.

Relative to the prior Court's order on the Motion to Compel, those orders are orders that are subject to being enforced and may be enforced following the entry of a decree, specifically with regard to the payment of the $600 and the costs of 150 for the deposition cost.

I will find that the division of property, as I will outline for you in the Court's division, is a fair and equitable division; and considering the fault of the breakup of the marriage, results in a 60-40 division. I have the division -- thank you, Ed -- that I will hand out; and as soon as you have that copy, I will go over this with you and let you know what I have found to be fair and equitable.

At the top of the page, I will confirm as Mrs. Vasudevan's separate property those three items -- 1, 2, and 3 -- finding that they are a result of inheritance on Items 1 and 2 and gift for wedding on Number 3.

With regard to Item Number 4, there's no

value assigned to it. And if that doesn't exist, then it doesn't exist. But if it does exist, then it's awarded to Mr. Vasudevan. But I've assigned no value; so, it doesn't impact the overall division of the property.

I've confirmed the parties' agreement relative to the residence located at 3402 Castle Pond Court, Pearland, Texas, and just confirming that that is to be dealt with pursuant to the Mediated Settlement Agreement.

Where the items have a typed value, I am confirming that and accepting that as the value to be assigned to it. Where you see an item crossed out and a new value placed on that, that's where I have made a change.

Item Number 6, I changed that value from 5,000 to 3,500. Item 13, I changed that from 11,931 to 7,924. Over on Page 2, Item 29, I changed those -- that value; and Items 32 and 33, I changed those items.

Turning over to Page 4 at the bottom, I have adjusted the overall division of the community property. And where you see the columns "Husband" and "Wife", those items that are awarded to the husband are listed in that column throughout this document and those items listed to wife are listed in that column throughout.

Page 5, I have also added the attorney's fees that Mr. Vasudevan is paying, pursuant to his inventory, of $8,000, to net out the value. And that's what you see at the bottom, Net CP, meaning Net Community Property. 358,779 to Mr. Vasudevan. 523,672 to Mrs. Vasudevan. And I've also included her attorney's fees. Each party will pay their own attorney's fees. And that division results in a 60-40 division. It's actually like 59.3 in favor of wife.

I will find this to be a fair and reasonable division of the parties' property.

Any of these items that are in this document that are awarded to a party and they are in the other party's possession, those will be turned over by the entry date, June 13. If those items are in your possession, nothing needs to be turned over. But if an item is awarded to you, it's to be turned over to you by June 13th, 2014.

If you don't see an item listed on this, I didn't find sufficient evidence to find that it existed. And if you don't see a value other than the items where you see values, I don't find that there is sufficient evidence to change the values, other than what has been set out.

On the last page, which is actually Page 6,

it's titled Child's Property, those items are awarded to the child, Pallavi, and are to be awarded to her.  And again, by June 13, 2014, those items are to be turned over to her.

And that will conclude our business.

Any questions, Mr. Brownstein?

MR. BROWNSTEIN:  None, Your Honor.  I'll prepare the draft.

THE COURT:  All right.  Any questions, Mr. Vasudevan?

If none, we'll be adjourned.

**(Court was adjourned.)**

**OFFICIAL REPORTER'S RECORD**

**CERTIFICATION PAGE**

THE STATE OF TEXAS)

COUNTY OF BRAZORIA)

I, Renee Rape, Official Court Reporter in and for the 300th District Court of Brazoria County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $576.00 and was paid/will be paid by Petitioner, Mr. Alavoor Vasudevan.

WITNESS MY OFFICIAL HAND this the 17th day of November, 2014.


 /s/*Renée Rape* _____
Renée Rape, Texas CSR# 4031
Expiration Date:  12-31-16
Official Court Reporter, 300th District Court
Brazoria County, Texas
111 East Locust, RM 402
Angleton, Texas  77515
979-864-1229

RENEE E. RAPE, CSR, RPR

OFFICIAL COURT REPORTER

300TH DISTRICT COURT

*Appendix J  Texas Family Code 3.003 - Community Estates*

Texas Family Code for Marital Property Rights
http://www.statutes.legis.state.tx.us/?link=FA

Code = Family Code

Chapter 3 Marital Property Rights and Liabilities

Sec.3.003. Presumption of community property

Sec. 3.003.  PRESUMPTION OF COMMUNITY PROPERTY.

(a)  Property possessed by either spouse during or on dissolution of marriage is presumed to be community property.

(b)  The degree of proof necessary to establish that property is separate property is clear and convincing evidence.

Added by Acts 1997, 75th Leg., ch. 7, Sec. 1, eff. April 17, 1997.

*Appendix K  Texas Penal Code 2.01 - Cruelty by Husband*

Texas Penal Code for Proof Beyond a reasonable doubt
http://www.statutes.legis.state.tx.us/Docs/PE/htm/PE.2.htm#2.01

Code = Penal Code

CHAPTER 2. BURDEN OF PROOF

Sec. 2.01.  PROOF BEYOND A REASONABLE DOUBT.  All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt.  The fact that he has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial.

Acts 1973, 63rd Leg., p. 883, ch. 399, Sec. 1, eff. Jan. 1, 1974.  Amended by Acts 1993, 73rd Leg., ch. 900, Sec. 1.01, eff. Sept. 1, 1994.

Trial court RR2 pg 92 line 19.

## *Appendix L  Felony Charge on Wife's Attorney filed by Husband*

Husband filed felony charge on wife's attorney for postal mail thefts is attached in case envelope

Appendix L Felony charge on Wife's attorney, a separate case is filed against wife's attorney for his violations. And this is related to this case and referenced at (RR2 pg 87 line 8-25) and this was also referenced in the deposition of Alavoor taken by wife's attorney (IDX 309).

**Oct 13, 2014**

| ALAVOOR VASUDEVAN | § | IN THE DISTRICT COURT |
|---|---|---|
| v/s | § | JUDICIAL DISTRICT |
| RON BROWNSTEIN | § | TEXAS |

Dear Ron Brownstein:

Please find below the "Notice of Intention to Petition". Please show causes as to why this lawsuit should not be filed against your firm.

## NOTICE OF INTENTION TO PETITION LAWSUIT

This is an intention to file petition with the court for the following violations by your Law Firm (and you):

a) Federal Privacy Law on mail and personal information
b) Texas Privacy Laws (various and general)
c) Federal Privacy Laws (various and general)

## Background Information

Mr Ron Brownstein, attorney at law and his Law Firm was hired by my ex-wife Deepa in divorce Cause #**63935** in Brazoria 300th District Court. That case had trial on 27 May 2014. And for that case Mr. Ron Browstein (and his Law Firm) had illegally intercepted and opened all my postal mails which was addressed to my home address at 3402 Castle Pond Court, Pearland, TX. Mr Ron Brownstein took advantage that I was not living in that home but was living in an apartment situated at 8701 Gustine Lane, #5918, Houston, TX 77031. In that home at Castle Pond, my ex-wife Deepa was living. Mr Ron Brownstein not only opened all my mails but also sent those to me via Registered Postal Mail with RFP#5,8,10,17(second supplement). Also these have been filed with District Court. Attached are the copies of the mail and RFPs.

An oral deposition of Alavoor Vasudevan had been taken by Mr Ron Brownstein on April 10, 2014 and several questions regarding these RFP#5,8,10,17 (second supplement) had been asked. The "Choice Reporting" did the recording and is also the witness for this oral deposition. As a proof, deposition pages from 131 thru 142 describe the contents of the RFPs 5,8,10,17 (second supplement).

Note that as per US laws – *Title 18 U.S. Code § 1708 -*
*Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein; or*
*Whoever steals, takes, or abstracts, or by fraud or deception obtains any letter, postal card, package, bag, or mail, or any article or thing contained therein which has been left for collection upon or adjacent to a collection box or other authorized depository of mail matter; or*
*Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card,*

*package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted—*
*Shall be fined under this title or imprisoned not more than five years, or both.*

*Amendments:* *1952—Act July 1, 1952, made any thefts or receipt of stolen mail a* **felony** *regardless of the monetary value of the thing stolen.*

      http://www.gpo.gov/fdsys/granule/USCODE-2011-title18/USCODE-2011-title18-partI-chap83-sec1708
      [http://ww.gpo.gov/fdsys/pkg/USCODE-2011-title18/pdf/USCODE-2011-title18-partI-chap83-sec1708.pdf](http://ww.gpo.gov/fdsys/pkg/USCODE-2011-title18/pdf/USCODE-2011-title18-partI-chap83-sec1708.pdf)

Attached is the copy of the Title 18 US code 1708.

Also Mr Ron Brownstein (and his Law Firm) had violated my privacy and violated general laws of privacy, intrusion, trespassing my "information-data", identity theft and various others. These will cause me  immense economic damages for a very long time. And there are other economic damages due to these actions.

## Damage Claim

I request the court to do following:

    i)  Impose court fine (US dollars) on Mr Ron Browstein (and/or on his Law firm) and other penalties.

    ii) Award me $200,000 in damages. It should be charged to mal-practice-insurance of Mr Ron Browstein (or law firm) or if no insurance coverage is available then from the personal assets of Mr Ron Browstein.

    iii)  Impose all the court fees, admin fees, judge fees (US dollars) on Mr Ron Browstein (and/or on his Law firm)

    iv) Pay my attorney fees and other costs which I may incur.
                Sincerely,


_____

*Appendix M  Health Reports of Husband*

Health reports of Husband is attached in case envelope

Appendix M Health reports of husband. The health reports of husband were sent to district clerk, Judge and to wife's attorney on 15 June 2014. Wife's attorney acknowledged/signed proof of delivery the document sent by registered email 16-Jun-14 at 09:50:54am. (See also: IDX 312, RR3 pg 5 line 18). The title was: "Prayer – Corrections to wordings in judgment" which contained health reports of husband.

Physicians at Sugar Creek - Southeast Pod
14023 Southwest Freeway  www.sugarcreekphysicians.org  Sugar Land, TX, USA
77478
Ph: (281) 325-4100  Fax: (281) 325-4271

Troy Fiesinger **MD**  (Prescribing Provider)
LIC:K8149 NPI:1245347541

Patient Name & Address:

Alavoor Vasudevan
13002 Misty Bay Ln c/o Pardhasarathy Vemuri
Pearland, TX  77584
Ph: (832)244-1927
Insurance: 1-BCBS PPO (1270) Grp:071778 ID:UTS0G31EC91L

Date: 10/8/2012
DOB: 07/07/1962
Sex: Male

## Rx PRAVASTATIN SODIUM 40 MG TABS
1 po once daily for cholesterol

Generic: PRAVASTATIN SODIUM
Indications: HYPERCHOLESTEROLEMIA

Qty: ***90***   NINETY
Refill: ***3***   THREE

EMR serial # 1665339947-507700  Void after_____

Quantity:

- [ ] 1-24
- [ ] 25-49
- [ ] 50-74
- [x] 75-100
- [ ] 101-150
- [ ] 150 and over
  _____ Units

Troy Fiesinger MD

A generically equivalent product may be dispensed unless the practitioner handwrites 'Dispense as written'
on the face of the prescription.
- [ ] Dispense as written

Allergies:  No Known Allergies

Security: [*] bound & spelled quantity & refills, quantity checkboxes, serial number, microprint signature line visible at 5x or greater magnification showing 'THIS-IS-AN-ORIGINAL-PRESCRIPTION', & this description of security features

This prescription was generated on a Centricity system which has obtained 'approvable status' with the Ohio State Board of Pharmacy

This prescription should not be accessible to unauthorized persons.
Prescription is void if more than one (1) prescription is written per blank.



PROMISED: 12:59p
04/07/2014
# Scripts: 01

CVS/pharmacy #7459    Ph. 281-242-2890

COUNSEL
New Drug

VASUDEVAN,ALAVOOR
3492 CASTLE PORD CT, PEARLAND, TX 775640093
Ph 832 244 1922
LATANOPROST 0.005% EYE DROPS
PLACE 1 DROP INTO BOTH EYES AT BEDTIME
Prscbr: NICHOLAS P BELL

VA
04/07/2014

/S/pharmacy

#7459    R 281-242-2890
www.cvs.com

---

**Robert M. Feldman, M.D.**
**Nicholas P. Bell, M.D.**
ROBERT CIZIK EYE CLINIC
Glaucoma Consultation and Surgery
General Ophthalmology
6400 Fannin, 18th Floor • Houston, TX 77030 / 713-559-5200

NAME: Alavor Vasdevan
ADDRESS:                          DATE:           AGE:

Rx

LABEL WITH NAME AND STRENGTH OF DRUG
PRESCRIPTION NOT VALID FOR CONTROLLED DRUGS

LUMIGAN .03% Ophth. gtts.

Disp: 5 ml / 7.5 ml / 3 x 5 ml
☐ Disp: 3 x 7.5 ml (Medicaid)

Sig: One gtt qhs    OD    OS    OU

Product Selection Permitted

NO. REFILL ☐    REFILL ___ TIMES
DEA NO.

_____ M.D.
Dispense as Written    LABEL ☐

---

PATIENT PRESCRIPTION INFORMATION

IF YOU HAVE ANY QUESTIONS ABOUT YOUR MEDICATION,
PLEASE CONTACT YOUR PHARMACIST

Dorinda B Williams, RPh.

VASUDEVAN,ALAVOOR                04/07/2014
3492 CASTLE PORD CT              Prscbr: NICHOLAS P BELL
PEARLAND, TX 775640093          Refills: 4
Ph: 832 244 1922

**LATANOPROST 0.005% EYE DROPS**

PLACE 1 DROP INTO BOTH EYES AT BEDTIME

---

This is a COLORLESS DROPS.
## LATANOPROST - OPHTHALMIC SOLUTION - (lay-TAN-oh-prost)
### COMMON BRAND NAME(S):
Xalatan

### USES:
Latanoprost is used to treat high pressure inside the eye due to glaucoma (open angle type) or other eye diseases (e.g., ocular hypertension). It is similar to a natural chemical in the body (prostaglandin) and works by regulating the flow of fluid within the eye which results in lower pressure. Lowering high pressure inside the eye helps to prevent blindness.

### HOW TO USE:
Apply this medication in the affected eye(s) usually once daily in the evening, or as directed by your doctor. Do not use this medication more frequently than prescribed; using more can decrease effectiveness. To apply eye drops, wash your hands first. To avoid contamination, do not touch the dropper tip or let it touch your eye or any other surface. The preservative in this product may be absorbed by contact lenses. If you wear contact lenses, remove them before using this medication and keep them out of your eyes for at least 15 minutes after applying latanoprost. Tilt your head back, look upward and pull down the lower eyelid to make a pouch. Hold the dropper directly over your eye and apply the prescribed number of drops. Look downward and gently close your eye for 1 to 2 minutes. Place one finger at the inside corner of your eye near the nose and apply gentle pressure. This will prevent the medication from draining out. Try not to blink and do not rub your eye. Do not rinse the dropper. Replace the dropper cap after each use. Use this medication regularly in order to get the most benefit from it. Remember to use it at the same time each day. It is important to continue using latanoprost even if you feel well. Most people with glaucoma or high pressure in the eye do not feel sick. If you are using another kind of eye medication (e.g., drops or ointments), wait at least 5 minutes before applying other products. Use eye drops before eye ointments to allow the eye drops to enter the eye.

### SIDE EFFECTS:
Blurred vision, burning/stinging/itching/redness of the eye, feeling as if something is in the eye, changes in eyelash number/color/length/thickness, eyelid changes/skin darkening, dry eye, lid crusting/discomfort, increased sensitivity to light, flu-like symptoms, or muscle/joint pain may occur. If any of these effects persist or worsen, notify your doctor or pharmacist promptly. This medication may slowly (over months to years) cause brown discoloration of the colored portion of the eye (iris). If you are using latanoprost in only one eye, only that iris may change color. This color change may be permanent but the long-term effects are uncertain. Notify your doctor if this occurs and schedule regular eye exams to monitor it. Remember that your doctor has prescribed this medication because he or she has judged that the benefit to you is greater than the risk of side effects. Many people using this medication do not have serious side effects. Tell your doctor immediately if any of these unlikely but serious side effects occur: eye pain, suspected eye infection (unusual redness or swelling of eyes), chest pain. Tell your doctor immediately if any of these highly unlikely but very serious side effects occur: rapid vision changes (e.g., loss of vision). A serious allergic reaction to this drug is unlikely, but seek immediate medical attention if it occurs. Symptoms of a serious allergic reaction include: rash, severe itching/swelling (especially of the face/tongue/throat), dizziness, trouble breathing. This is not a complete list of possible side effects. If you notice other effects not listed above,

4 of 9



| Patient Information | Specimen Information | Client Information |
|---|---|---|
| **VASUDEVAN, ALAVOOR**<br><br>**DOB: 07/07/1962    AGE: 47**<br>Gender:    M<br>Phone:    281.412.6919<br>Patient ID: NG | Specimen:    HU586651L<br>Requisition:  0005676<br><br>Collected:    02/22/2010<br>Received:    02/22/2010 / 20:33 CST<br>Reported:    02/23/2010 / 06:19 CST | Client #: 3564900        HS510000<br>PATEL, KIRANCHANDRA<br>THE PEARLAND CLINIC PA E/H /1<br>9804 BROADWAY ST<br>PEARLAND, TX 77584-8258 |

| Test Name | In Range | Out Of Range | Reference Range | Lab |
|---|---|---|---|---|
| COMPREHENSIVE METABOLIC | | | | RGA |
| PANEL W/EGFR | | | | |
| **GLUCOSE** | | 182 H *Diabetes* | 65-99 mg/dL | |
| | | | Fasting reference interval | |
| UREA NITROGEN (BUN) | 14 | | 7-25 mg/dL | |
| CREATININE | 1.10 | | 0.78-1.34 mg/dL | |
| eGFR NON-AFR. AMERICAN | >60 | | > OR = 60 mL/min/1.73m2 | |
| eGFR AFRICAN AMERICAN | >60 | | > OR = 60 mL/min/1.73m2 | |
| BUN/CREATININE RATIO | NOT APPLICABLE | | 6-22 (calc) | |

        Bun/Creatinine ratio is not reported when the BUN
        and creatinine values are within normal limits.

| | | | | |
|---|---|---|---|---|
| SODIUM | 143 | | 135-146 mmol/L | |
| POTASSIUM | 4.6 | | 3.5-5.3 mmol/L | |
| CHLORIDE | 104 | | 98-110 mmol/L | |
| CARBON DIOXIDE | 25 | | 21-33 mmol/L | |
| CALCIUM | 9.9 | | 8.6-10.2 mg/dL | |
| PROTEIN, TOTAL | 7.7 | | 6.2-8.3 g/dL | |
| ALBUMIN | 4.7 | | 3.6-5.1 g/dL | |
| GLOBULIN | 3.0 | | 2.1-3.7 g/dL (calc) | |
| ALBUMIN/GLOBULIN RATIO | 1.6 | | 1.0-2.1 (calc) | |
| BILIRUBIN, TOTAL | 0.6 | | 0.2-1.2 mg/dL | |
| ALKALINE PHOSPHATASE | 56 | | 40-115 U/L | |
| **AST** | | 61 H | 10-40 U/L | |
| **ALT** | | 104 H *Liver disease* | 9-60 U/L | |
| HEPATITIS B SURFACE | | | | RGA |
| ANTIGEN W/REFL CONFIRM | | | | |
| * HEPATITIS B SURFACE | | | | |
| ANTIGEN | NON-REACTIVE | | NON-REACTIVE | |
| * HEPATITIS B CORE | | | | RGA |
| ANTIBODY (IGM) | NON-REACTIVE | | NON-REACTIVE | |
| * HEPATITIS C ANTIBODY | NON-REACTIVE | | NON-REACTIVE | RGA |
| * SIGNAL TO CUT-OFF | 0.03 | | <1.00 | |
| * HEPATITIS A IGM | NON-REACTIVE | | NON-REACTIVE | RGA |

**PERFORMING SITE:**

RGA    QUEST DIAGNOSTICS HOUSTON, 5850 ROGERDALE ROAD, HOUSTON, TX 77072-1602 Laboratory Director: JOHN G. BUCK, MD, CLIA: 45D0660150

*liver enzymes high to refer to GST*

Quest, Quest Diagnostics, the associated logo and all associated Quest Diagnostics marks are the trademarks of Quest Diagnostics.

Quest, Quest Diagnostics, the associated logo and all associated Quest Diagnostics marks are the trademarks of Quest Diagnostics. © Quest Diagnostics Incorporated. All rights reserved. QD20300-NTL Revised 5/08. SC2K - 115570.



| Patient Information | Specimen Information | Client Information |
|---|---|---|
| **VASUDEVAN, ALAVOOR**<br><br>**DOB: 07/07/1962   AGE: 47**<br>Gender:   M<br>Phone:   281.412.6919<br>Patient ID: NG | Specimen:   HU436138L<br>Requisition: 0005655<br><br>Collected:   02/11/2010<br>Received:   02/11/2010 / 20:31 CST<br>Reported:   02/12/2010 / 17:20 CST | Client #: 3564900    HS510000<br>PATEL, KIRANCHANDRA<br>THE PEARLAND CLINIC PA E/H /1<br>9804 BROADWAY ST<br>PEARLAND, TX 77584-8258 |

**COMMENTS:**    FASTING

| Test Name | In Range | Out Of Range | Reference Range | Lab |
|---|---|---|---|---|
| MICROALBUMIN, RANDOM | | | | RGA |
| URINE (W/O CREATININE) | | | | |
| * MICROALBUMIN | 0.5 | | mg/dL<br>Reference Range<br>Not established | |

The ADA defines abnormalities in albumin
excretion as follows:

Category          Result (mcg/mg creatinine)

Normal                    <30
Microalbuminuria       30-299
Clinical albuminuria   > OR = 300

The ADA recommends that at least two of three
specimens collected within a 3-6 month period be
abnormal before considering a patient to be
within a diagnostic category.

| Test Name | In Range | Out Of Range | Reference Range | Lab |
|---|---|---|---|---|
| LIPID PANEL | | | | |
| **CHOLESTEROL, TOTAL** | | 235 H | 125-200 mg/dL | RGA |
| HDL CHOLESTEROL | 44 | | > OR = 40 mg/dL | RGA |
| **TRIGLYCERIDES** | | 190 H | <150 mg/dL | RGA |
| **LDL-CHOLESTEROL** | | 153 H | <130 mg/dL (calc) | RGA |

Desirable range <100 mg/dL for patients with CHD or
diabetes and <70 mg/dL for diabetic patients with
known heart disease.

| Test Name | In Range | Out Of Range | Reference Range | Lab |
|---|---|---|---|---|
| **CHOL/HDLC RATIO** | | 5.3 H | < OR = 5.0 (calc) | RGA |
| COMPREHENSIVE METABOLIC | | | | RGA |
| PANEL W/EGFR | | | | |
| **GLUCOSE** | | 123 H | 65-99 mg/dL | |

                              Fasting reference interval

| Test Name | In Range | Out Of Range | Reference Range | Lab |
|---|---|---|---|---|
| UREA NITROGEN (BUN) | 11 | | 7-25 mg/dL | |
| CREATININE | 0.97 | | 0.78-1.34 mg/dL | |
| eGFR NON-AFR. AMERICAN | >60 | | > OR = 60 mL/min/1.73m2 | |
| eGFR AFRICAN AMERICAN | >60 | | > OR = 60 mL/min/1.73m2 | |
| BUN/CREATININE RATIO | NOT APPLICABLE | | 6-22 (calc) | |

Bun/Creatinine ratio is not reported when the BUN
and creatinine values are within normal limits.

| Test Name | In Range | Out Of Range | Reference Range | Lab |
|---|---|---|---|---|
| SODIUM | 141 | | 135-146 mmol/L | |
| POTASSIUM | 5.1 | | 3.5-5.3 mmol/L | |
| CHLORIDE | 104 | | 98-110 mmol/L | |
| CARBON DIOXIDE | 25 | | 21-33 mmol/L | |
| CALCIUM | 9.9 | | 8.6-10.2 mg/dL | |
| PROTEIN, TOTAL | 8.0 | | 6.2-8.3 g/dL | |
| ALBUMIN | 4.9 | | 3.6-5.1 g/dL | |

Quest, Quest Diagnostics, the associated logo and all associated Quest Diagnostics marks are the trademarks of Quest Diagnostics.

© 2009 Quest Diagnostics Incorporated. All rights reserved. SC2X  143703



| Patient Information | Specimen Information | Client Information |
|---|---|---|
| **VASUDEVAN, ALAVOOR**<br><br>**DOB: 07/07/1962    AGE: 47**<br>Gender:   M<br>Patient ID: NG | Specimen:   HU436138L<br>Collected:   02/11/2010<br>Received:   02/11/2010 / 20:31 CST<br>Reported:   02/12/2010 / 17:20 CST | Client #: 3564900<br>PATEL, KIRANCHANDRA |

| Test Name | In Range | Out Of Range | Reference Range | Lab |
|---|---|---|---|---|
| GLOBULIN | 3.1 | | 2.1-3.7 g/dL (calc) | |
| ALBUMIN/GLOBULIN RATIO | 1.6 | | 1.0-2.1 (calc) | |
| BILIRUBIN, TOTAL | 0.6 | | 0.2-1.2 mg/dL | |
| ALKALINE PHOSPHATASE | 56 | | 40-115 U/L | |
| **AST** | | 70 H | 10-40 U/L | |
| **ALT** | | 124 H | 9-60 U/L | |
| HEMOGLOBIN A1C WITH MPG | | | | RGA |
| **HEMOGLOBIN A1c** | | 7.5 H | % of total Hgb<br>Reference Range<br>Non-Diabetic:  <6.0% | |
| MEAN PLASMA GLUCOSE | 190 | | mg/dL (calc) | |
| CBC (INCLUDES DIFF/PLT) | | | | RGA |
| WHITE BLOOD CELL COUNT | 4.5 | | 3.8-10.8 Thousand/uL | |
| RED BLOOD CELL COUNT | 5.30 | | 4.20-5.80 Million/uL | |
| HEMOGLOBIN | 14.4 | | 13.2-17.1 g/dL | |
| HEMATOCRIT | 42.2 | | 38.5-50.0 % | |
| **MCV** | | 79.6 L | 80.0-100.0 fL | |
| MCH | 27.3 | | 27.0-33.0 pg | |
| MCHC | 34.2 | | 32.0-36.0 g/dL | |
| RDW | 13.4 | | 11.0-15.0 % | |
| PLATELET COUNT | 171 | | 140-400 Thousand/uL | |
| ABSOLUTE NEUTROPHILS | 2390 | | 1500-7800 cells/uL | |
| ABSOLUTE LYMPHOCYTES | 1395 | | 850-3900 cells/uL | |
| ABSOLUTE MONOCYTES | 360 | | 200-950 cells/uL | |
| ABSOLUTE EOSINOPHILS | 311 | | 15-500 cells/uL | |
| ABSOLUTE BASOPHILS | 45 | | 0-200 cells/uL | |
| NEUTROPHILS | 53.1 | | % | |
| LYMPHOCYTES | 31.0 | | % | |
| MONOCYTES | 8.0 | | % | |
| EOSINOPHILS | 6.9 | | % | |
| BASOPHILS | 1.0 | | % | |

**PERFORMING SITE:**

RGA   QUEST DIAGNOSTICS HOUSTON, 5850 ROGERDALE ROAD, HOUSTON, TX 77072-1602 Laboratory Director: JOHN G. BUCK, MD, CLIA: 45D0660150

Quest, Quest Diagnostics, the associated logo and all associated Quest Diagnostics marks are the trademarks of Quest Diagnostics.

© 2009 Quest Diagnostics Incorporated. All rights reserved. SC2K - 149700.

# Physicians at Sugar Creek

An Affiliate of MEMORIAL HERMANN

**14023 Southwest Freeway**
**Sugar Land, TX  77478**

Telephone: (281) 325-4100    Fax: (281) 325-4271
Website:    www.sugarcreekphysicians.org

May 12, 2014

Alavoor Vasudevan
8701 Gustine Lane Apt 5918
Houston, TX  77031
(emailed to patient)

Dear Mr. Vasudevan:

I have received your recent test results. They are as follows:

**Your Kidney Test results:** The numbers from your kidney test are as follows: Your BUN (a measure of your kidney function) is 12. Your creatinine (another measure of your kidney function) is 1.2. Your sodium is 141. Your potassium is 5.3. Your chloride is 107. Your bicarb is 24. Your sugar is 111. Your calcium is 8.7. Your eGFR (glomerular filtration rate -- a measure of your kidney function) is 71.

Your kidney function tests, glucose, and calcium were all normal. Please continue your same medications.

**Your Liver Test results:** Your liver test results are as follows: Your SGPT (a chemical the liver releases when it is inflammed or injured) is 76. Your SGOT (the other liver chemical related to liver injury or inflammation) is 33.

For comparison, I am also enclosing your previous results: Your SGPT was 77. Your SGOT was 30.

The liver tests are about the same as last time.

**Your Cholesterol results:** Here are your most recent numbers: Your total cholesterol is 180. Your HDL (good) cholesterol is 39. Your LDL (bad) cholesterol is 113. Your triglyceride value (another fat in your blood) is 140.

For comparison, I am also including your previous results: Last time your total cholesterol was 158. Your last HDL (good) cholesterol was 39. Your LDL (bad) cholesterol last time was 83. Your triglycerides were 170.

I have included some goal numbers for you: Your total cholesterol should be under 200. Your HDL cholesterol should be greater than 40. Your LDL cholesterol should be under 100. Your triglycerides should be under 150.

These numbers are not what they should be. The current dose of your medication is not doing a good enough job. I would like to increase your dose. Please stop your current pill, and start the new one that I have sent to your pharmacy.

**Your Diabetes results:** Your most recent diabetes (sugar) tests are as follows: Your hemoglobin A1c (the three month sugar average) is 6.9. Your urine microalbumin (a test for kidney damage from the

diabetes or blood pressure) is 5.4.

For comparison, I am including your previous results: Your hemoglobin A1c was 6.6. Your urine microalbumin was 6.8.

Your Hemoglobin A1c is where I would like it to be. Keep up the great work!
The amount of protein (microalbumin) in your urine is less than last time. That is good news, and shows that the early kidney damage may be getting better.

**Your Thyroid results:** I am including your actual numbers: Your TSH (a measure of how active your thyroid is -- a high number means it is LESS active) is 4.410.

For comparison, I am also including your previous values: Your TSH was 4.290.

Your TSH is high, which means that you do not have enough thyroid hormone in your body.

When you come for your appointment, I want to talk about starting a low dise of thyroid medicine.

I am happy to address any questions or concerns you might have about these results.

Sincerely,

Troy Fiesinger MD

**PROMISED: 10:00p**
ReadyFill™ 10/08/2014  # Scripts: 01

CUSTOMER RECEIPT

Date: 10/08/2014  DAW: 0
Rx: 0510425 02

27 0510425 002 000 00 0001204

PAY: $12.04  Caps: Y

**VA**
10/08/2014

**CVS/pharmacy**
2102 ELDRIDGE RD.
SUGAR LAND, TX
77478

**CVS/pharmacy**#7459  Ph: 281.242.2890

**VASUDEVAN,ALAVOOR**
3402 CASTLE POND CT, PEARLAND, TX 775840000
DOB-        07-62
Ph: 832.244-1927
LATANOPROST 0.005% EYE DROPS
VALEANT
PLACE 1 DROP INTO BOTH EYES AT BEDTIME

NDC:24208-0463-25  Days Supply: 30  Refills: 2
Prscbr: NICHOLAS P BELL
TP: 2010
AUTH# 4428101 3#043 RG3099  Qt: RX9090
CAREMARK BIN 004336

**TB testing***
Available every day.
Just walk in!

**minuteclinic**®
Find a clinic at minuteclinic.com

*Insurance is not accepted for TB testing services. Payment is due at time of visit. MinuteClinic® treats patients 18 months and older.

002476

**A1c checks.***
Every day. Just walk in.

Results are immediate • Most insurance accepted

**minuteclinic**®
Find a clinic
at minuteclinic.com

*Must be age 18 or older.
Services may vary by state.

002474

## PATIENT PRESCRIPTION INFORMATION

IF YOU HAVE ANY QUESTIONS ABOUT YOUR MEDICATION,
PLEASE CONTACT YOUR PHARMACIST:
**Le-Minh Tran,RPh.**

**CVS/pharmacy**
2102 ELDRIDGE RD.
SUGAR LAND, TX
77478

#7459  Ph: 281.242-2890
www.cvs.com

**VASUDEVAN,ALAVOOR**
3402 CASTLE POND CT
PEARLAND, TX 775840000
Ph: 832.244-1927

10/08/2014
Prscbr: NICHOLAS P BELL
Refills: 2

**LATANOPROST 0.005% EYE DROPS**
VALEANT
PLACE 1 DROP INTO BOTH EYES AT BEDTIME

This is a COLORLESS DROPS.
**LATANOPROST · OPHTHALMIC SOLUTION · (lay-TAN-oh-prost)**
**COMMON BRAND NAME(S):**

Xalatan

**USES:**
Latanoprost is used to treat high pressure inside the eye due to glaucoma (open angle type) or other eye diseases (e.g., ocular hypertension). It is similar to a natural chemical in the body (prostaglandin) and works by regulating the flow of fluid within the eye which results in lower pressure. Lowering high pressure inside the eye helps to prevent blindness.

**HOW TO USE:**
Apply this medication in the affected eye(s) usually once daily in the evening, or as directed by your doctor. Do not use this medication more frequently than prescribed; using more can decrease effectiveness. To apply eye drops, wash your hands first. To avoid contamination, do not touch the dropper tip or let it touch your eye or any other surface. The preservative in this product may be absorbed by contact lenses. If you wear contact lenses, remove them before using this medication and keep them out of your eyes for at least 15 minutes after applying latanoprost. Tilt your head back, look upward and pull down the lower eyelid to make a pouch. Hold the dropper directly over your eye and apply the prescribed number of drops. Look downward and gently close your eye for 1 to 2 minutes. Place one finger at the inside corner of your eye near the nose and apply gentle pressure. This will prevent the medication from draining out. Try not to blink and do not rub your eye. Do not rinse the dropper. Replace the dropper cap after each use. Use this medication regularly in order to get the most benefit from it. Remember to use it at the same time each day. It is important to continue using latanoprost even if you feel well. Most people with glaucoma or high pressure in the eye do not feel sick. If you are using another kind of eye medication (e.g., drops or ointments), wait at least 5 minutes before applying other products. Use eye drops before eye ointments to allow the eye drops to enter the eye.

**SIDE EFFECTS:**
Blurred vision, burning/stinging/itching/redness of the eye, feeling as if something is in the eye, changes in eyelash number/color/length/thickness, eyelid changes/skin darkening, dry eye, lid crusting/discomfort, increased sensitivity to light, flu-like symptoms, or muscle/joint pain may occur. If any of these effects persist or worsen, notify your doctor or pharmacist promptly. This medication may slowly (over months to years) cause brown discoloration of the colored portion of the eye (iris). If you are using latanoprost in only one eye, only that iris may change color. This color change may be permanent but the long-term effects are uncertain. Notify your doctor if this occurs and schedule regular eye exams to monitor it. Remember that your doctor has prescribed this medication because he or she has judged that the benefit to you is greater than the risk of side effects. Many people using this medication do not have serious side effects. Tell your doctor immediately if any of these unlikely but serious side effects occur: eye pain, suspected eye infection (unusual redness or swelling of eyes), chest pain. Tell your doctor immediately if any of these highly unlikely but very serious side effects occur: rapid vision changes (e.g., loss of vision). A serious allergic reaction to this drug is unlikely, but seek immediate medical attention if it occurs. Symptoms of a serious allergic reaction include: rash, severe itching/swelling (especially of the face/tongue/throat), dizziness, trouble breathing. This is not a complete list of possible side effects. If you notice other effects not listed above,

Continued on reverse side.

For faster refills, phone in 24 hours in advance

Keep Out of Reach of Children

CVS Item#
15078

IMPORTANT DISCLAIMER: The side effects listed above are not all of the possible risks that could be caused by this medication. For further information, please consult with your physician about the uses, precautions and risks of the

PROMISED: 10:00p
ReadyFill™ 10-15-2014  # Scripts: 01
CUSTOMER RECEIPT

27 0518007 001 080 00 030013D3

Date: 10/15/2014  DAW: 0
Rx#: 0518007 01

PAY:  $15.03    Caps: Y

VA
10/15/2014

CVS/pharmacy
2102 ELDRIDGE RD.
SUGAR LAND, TX
77478

CVS/pharmacy #7459  Ph: 281.242.2890

VASUDEVAN,ALAVOOR
3402 CASTLE POND CT, PEARLAND, TX 775840000
Ph: 832.244-1927      DOB: 07-62
GLIMEPIRIDE 4 MG TABLET
TEVA USA
TAKE 1 TABLET BY MOUTH TWICE A DAY

NDC:00093-7256-01  Days Supply: 90  Refills: 2  Qty:180 EA
Prscbr: TROY TREANOR FIESINGER
TP: 28.9          SR: RX0090
AUTH: 1429B0205299196809    CAREMARK BIN 004336

TB testing*
Available every day.
Just walk in!
minuteclinic®
Find a clinic at minuteclinic.com
*Insurance is not accepted for TB testing services. Payment is due at time of visit. MinuteClinic® treats patients 18 months and older.
002476

A1c checks.*
Every day. Just walk in.
Results are immediate • Most insurance accepted
minuteclinic®
Find a clinic at minuteclinic.com
*Must be age 18 or older. Services may vary by state.
002474

PATIENT PRESCRIPTION INFORMATION

CVS/pharmacy
2102 ELDRIDGE RD.
SUGAR LAND, TX
77478

#7459    Ph: 281.242-2890
www.cvs.com

VASUDEVAN,ALAVOOR
3402 CASTLE POND CT
PEARLAND, TX 775840000
Ph: 832.244-1927

10/15/2014
Prscbr: TROY TREANOR FIESINGER
Refills: 2

IF YOU HAVE ANY QUESTIONS ABOUT YOUR MEDICATION, PLEASE CONTACT YOUR PHARMACIST:
Patty P Wu,RPh.

GLIMEPIRIDE 4 MG TABLET
TEVA USA
TAKE 1 TABLET BY MOUTH TWICE A DAY

This is a LIGHT BLUE, ROUND-shaped TABLET imprinted with 9 3 on the front and 72 56 on the back.
**GLIMEPIRIDE - ORAL - (glye-MEP-ir-ide)**
**COMMON BRAND NAME(S):**

Amaryl
**USES:**

Glimepiride is used with a proper diet and exercise program to control high blood sugar in people with type 2 diabetes. It may also be used with other diabetes medications. Controlling high blood sugar helps prevent kidney damage, blindness, nerve problems, loss of limbs, and sexual function problems. Proper control of diabetes may also lessen your risk of a heart attack or stroke. Glimepiride belongs to the class of drugs known as sulfonylureas. It lowers blood sugar by causing the release of your body's natural insulin.

**HOW TO USE:**

Read the Patient Information Leaflet if available from your pharmacist before you start taking glimepiride and each time you get a refill. If you have any questions, ask your doctor or pharmacist. Take this medication by mouth with breakfast or the first main meal of the day, as directed by your doctor, usually once daily. The dosage is based on your medical condition and response to treatment. Use this medication regularly to get the most benefit from it. To help you remember, take it at the same time each day. To reduce your risk of side effects, your doctor may direct you to start this medication at a low dose and gradually increase your dose. Follow your doctor's instructions carefully. If you are already taking another anti-diabetic drug (such as chlorpropamide), follow your doctor's directions carefully for stopping the old drug and starting glimepiride. Colesevelam can decrease the absorption of glimepiride. If you are taking colesevelam, take glimepiride at least 4 hours before taking colesevelam. Tell your doctor if your condition does not improve or if it worsens (your blood sugar levels are too high or too low).

**SIDE EFFECTS:**

Nausea and upset stomach may occur. If either of these effects persists or worsens, tell your doctor or pharmacist promptly. Remember that your doctor has prescribed this medication because he or she has judged that the benefit to you is greater than the risk of side effects. Many people using this medication do not have serious side effects. Tell your doctor right away if you have any serious side effects, including: yellowing eyes/skin, stomach/abdominal pain, dark urine, unusual tiredness/weakness, easy bleeding/bruising, signs of infection (such as fever, persistent sore throat), mental/mood changes, unusual/sudden weight gain, seizures. This medication can cause low blood sugar (hypoglycemia). This may occur if you do not consume enough calories from food or if you do unusually heavy exercise. Symptoms of low blood sugar include sudden sweating, shaking, fast heartbeat, hunger, blurred vision, dizziness, or tingling hands/feet. It is a good habit to carry glucose tablets or gel to treat low blood sugar. If you don't have these reliable forms of glucose, rapidly raise your blood sugar by eating a quick source of sugar such as table sugar, honey, or candy, or drink fruit juice or non-diet soda. Tell your doctor immediately about the reaction and the use of this product. To help prevent low blood sugar, eat meals on a regular schedule, and do not skip meals. Check with your doctor or pharmacist to find out what you should do if you miss a meal. Symptoms of high blood sugar (hyperglycemia) include thirst, increased urination, confusion, drowsiness, flushing, rapid breathing, and fruity breath odor. If these symptoms occur, tell your doctor immediately. Your medication dosage may need to be increased. A very serious allergic reaction to this drug is rare. However, get medical help right away if you notice any symptoms of a serious allergic reaction,

Continued on reverse side.

For faster refills, phone in 24 hours in advance

Keep Out of Reach of Children

CVS Item #
*15078

IMPORTANT DISCLAIMER: The side effects listed above are not all of the possible risks that could be caused by this [...] with your physician about the uses, precautions and risks of the

**PROMISED: 07:21p**
ReadyFill™ 11-17-2014
# Scripts: 01

CUSTOMER RECEIPT

**VA**
11/17/2014

**CVS/pharmacy** #7459 Ph: 281.242.2890
2102 ELDRIDGE RD.
SUGAR LAND, TX
77478

**COUNSEL**
New Drug

**VASUDEVAN,ALAVOOR**
3402 CASTLE POND CT, PEARLAND, TX 775840000
Ph: 832.244-1927 DOB: 07-62
LEVOTHYROXINE 25 MCG TABLET
MYLAN
TAKE 1 TABLET BY MOUTH EVERY DAY FOR THYROID

NDC:00378-1800-01 Days Supply: 30 Refills: 11 Qty:30 EA
Prscbr: TROY TREANOR FIESINGER
TP: 2619
AUTH#: 14321836075610B909 GR: RX6090 CAREMARK BIN 004336

Date: 11/17/2014 DAW: 0
Rx#: 0547965 00

27 0547965 000 000 00 0000411

PAY: $4.11 Caps: Y

---

**Your pharmacist would like to speak with you today...**

**The importance of your new medication**

There are several reasons why it is important for you to take this medication as prescribed.

- Taking the medication regularly helps you better manage your health, even if your condition has no symptoms

- Some medications take days or even weeks to achieve their intended effect

- It may take time for your body to adjust to a medication

- Stopping this medication without first consulting with your physician may negatively affect your health

As your Pharmacist, I am here to discuss any questions about your medication and provide direction on how to avoid potential side effects. Please call anytime if I can be of assistance.

**Message Center**

---

#7459    Ph: 281.242-2890
www.cvs.com

**VASUDEVAN,ALAVOOR**
3402 CASTLE POND CT
PEARLAND, TX 775840000
Ph: 832.244-1927

11/17/2014
Prscbr: TROY TREANOR FIESINGER
Refills: 11

**PATIENT PRESCRIPTION INFORMATION**
IF YOU HAVE ANY QUESTIONS ABOUT YOUR MEDICATION,
PLEASE CONTACT YOUR PHARMACIST:
**Melanie W Wilson,RPh.**

**LEVOTHYROXINE 25 MCG TABLET**
MYLAN
TAKE 1 TABLET BY MOUTH EVERY DAY FOR THYROID

This is an ORANGE, OBLONG-shaped TABLET imprinted with M on the front and L 4 on the back.
**LEVOTHYROXINE - ORAL - (lee-voe-thye-ROX-een)**
**COMMON BRAND NAME(S):**
Levothroid, Levoxyl, Synthroid, Unithroid
**WARNING:**
This medication should not be used for weight loss. Normal doses of this medication will not work for weight loss, and large doses of this medication may cause serious, possibly fatal side effects, especially when taken with diet pills.
**USES:**
Levothyroxine is used to treat an underactive thyroid (hypothyroidism). It replaces or provides more thyroid hormone, which is normally produced by the thyroid gland. Low thyroid hormone levels can occur naturally or when the thyroid gland is injured by radiation/medications or removed by surgery. Having enough thyroid hormone is important for maintaining normal mental and physical activity. In children, having enough thyroid hormone is important for normal mental and physical development. This medication is also used to treat other types of thyroid disorders (such as certain types of goiters, thyroid cancer). This medication should not be used to treat infertility unless it is caused by low thyroid hormone levels.
**HOW TO USE:**
Take this medication by mouth as directed by your doctor, usually once daily on an empty stomach, 30 minutes to 1 hour before breakfast. Take this medication with a full glass of water unless your doctor directs you otherwise. If you are taking the capsule form of this medication, swallow it whole. Do not split, crush, or chew. People who cannot swallow the capsule whole (such as infants or small children) should use the tablet form of the medication. For infants or children who cannot swallow whole tablets, crush the tablet and mix in 1 to 2 teaspoons (5 to 10 milliliters) of water, and give using a spoon or dropper immediately. Do not prepare a supply in advance or mix the tablet in soy infant formula. Consult your pharmacist for more information. Dosage is based on your age, weight, medical condition, laboratory test results, and response to treatment. Use this medication regularly in order to get the most benefit from it. To help you remember, take it at the same time each day. Do not stop taking this medication without first consulting with your doctor. Thyroid replacement treatment is usually taken for life. There are different brands of levothyroxine available. Do not change brands without first consulting your doctor or pharmacist. Certain medications (cholestyramine, colestipol, colesevelam, antacids, sucralfate, simethicone, iron, sodium polystyrene sulfonate, calcium supplements, orlistat) can decrease the amount of thyroid hormone that is absorbed by your body. If you are taking any of these drugs, separate them from this medication by at least 4 hours. Symptoms of low thyroid hormone levels include tiredness, muscle aches, constipation, dry skin, weight gain, slow heartbeat, or sensitivity to cold. Tell your doctor if your condition worsens or persists after several weeks of taking this medication.
**SIDE EFFECTS:**
Hair loss may occur during the first few months of treatment. This effect is usually temporary as your body adjusts to this medication. If this effect persists or worsens, tell your doctor or pharmacist promptly. Remember that your doctor has prescribed this medication because he or she has judged that the benefit to you is greater than the risk of side effects. Many people using this medication do not have serious side effects. Tell your doctor immediately if any of these unlikely but serious effects of high thyroid hormone levels occur: increased sweating, sensitivity to heat,

Continued on reverse side.

For faster refills, phone in 24 hours in advance

Keep Out of Reach of Children

CVS Item#
15078

IMPORTANT DISCLAIMER: The side effects listed above are not all of the possible risks that could be caused by this medication. Please consult your physician about the uses, precautions and risks of the



**PROMISED: 07:21p**
ReadyFill™ 11-17-2014
# Scripts: 01
CUSTOMER RECEIPT

**CVS/pharmacy** #7459  Ph: 281.242-2890
2102 ELDRIDGE RD.
SUGAR LAND, TX
77478

**VA** 11/17/2014

COUNSEL
New Drug

VASUDEVAN,ALAVOOR
3402 CASTLE POND CT, PEARLAND, TX 775840000
Ph: 832.244-1927    DOB:
LISINOPRIL 10 MG TABLET
ACCORD HEALTHCA
TAKE 1 TABLET BY MOUTH EVERY DAY FOR HIGH BLOOD
PRESSURE

NDC:16729-0196-17  Days Supply: 30  Refills: 11  Qty:30 EA
TP: 2619  Prscbr: TROY TREANOR FIESINGER
AUTH#: 14321636039443137399  GPI: RX6093  CAREMARK BIN 004336

Date: 11/17/2014    DAW: 0
Rx: 0547966  00

27 0547966 000 000 00 0000199

PAY:  $1.99    Caps:  Y

---

**Your pharmacist would like
to speak with you today...**

**The importance of your new medication**

There are several reasons why it is important for you to take
this medication as prescribed.

- Taking the medication regularly helps you better manage
  your health, even if your condition has no symptoms

- Some medications take days or even weeks to achieve their
  intended effect

- It may take time for your body to adjust to a medication

- Stopping this medication without first consulting with your
  physician may negatively affect your health

As your Pharmacist, I am here to discuss any questions
about your medication and provide direction on how to
avoid potential side effects. Please call anytime if I can be of
assistance.

**Message Center**

---

**PATIENT PRESCRIPTION INFORMATION**

IF YOU HAVE ANY QUESTIONS ABOUT YOUR MEDICATION,
PLEASE CONTACT YOUR PHARMACIST:

**Melanie W Wilson,RPh.**

**CVS/pharmacy**
2102 ELDRIDGE RD.
SUGAR LAND, TX
77478

#7459   Ph: 281.242-2890
www.cvs.com

VASUDEVAN,ALAVOOR
3402 CASTLE POND CT
PEARLAND, TX 775840000
Ph: 832.244-1927

11/17/2014
Prscbr: TROY TREANOR FIESINGER
Refills: 11

**LISINOPRIL 10 MG TABLET**
ACCORD HEALTHCA
**TAKE 1 TABLET BY MOUTH EVERY DAY FOR HIGH BLOOD PRESSURE**

This is a WHITE, ROUND-shaped TABLET imprinted with 10 on the front.
**LISINOPRIL - ORAL - (lyse-IN-oh-pril)**
**COMMON BRAND NAME(S):**
Prinivil, Zestril
**WARNING:**
This drug can cause serious (possibly fatal) harm to an unborn baby if used during pregnancy. Therefore, it is important to prevent pregnancy while taking this medication. Consult your doctor for more details and to discuss the use of reliable forms of birth control while taking this medication. If you are planning pregnancy, become pregnant, or think you may be pregnant, contact your doctor immediately.
**USES:**
Lisinopril is used to treat high blood pressure (hypertension). Lowering high blood pressure helps prevent strokes, heart attacks, and kidney problems. It is also used to treat heart failure and to improve survival after a heart attack. Lisinopril is an ACE inhibitor and works by relaxing blood vessels so that blood can flow more easily.
**HOW TO USE:**
Take this medication by mouth with or without food as directed by your doctor, usually once daily. If you are using the suspension form of this medication, shake the bottle well before each dose. Carefully measure the dose using a special measuring device/spoon. Do not use a household spoon because you may not get the correct dose. The dosage is based on your medical condition and response to treatment. For children, the dosage is also based on weight. Use this medication regularly in order to get the most benefit from it. To help you remember, take it at the same time each day. It is important to continue taking this medication even if you feel well. Most people with high blood pressure do not feel sick. For the treatment of high blood pressure, it may take 2 to 4 weeks before you get the full benefit of this medication. For the treatment of heart failure, it may take weeks to months before you get the full benefit of this medication. Tell your doctor if your condition does not improve or if it worsens (such as your blood pressure readings remain high or increase).
**SIDE EFFECTS:**
Dizziness, lightheadedness, tiredness, or headache may occur as your body adjusts to the medication. Dry cough may also occur. If any of these effects persist or worsen, tell your doctor or pharmacist promptly. Remember that your doctor has prescribed this medication because he or she has judged that the benefit to you is greater than the risk of side effects. Many people using this medication do not have serious side effects. Tell your doctor right away if any of these unlikely but serious side effects occur: fainting, symptoms of a high potassium blood level (such as muscle weakness, slow/irregular heartbeat), signs of infection (such as fever, chills, persistent sore throat), change in the amount of urine. This drug may rarely cause serious (possibly fatal) liver problems. Tell your doctor right away if you notice any of the following rare but serious side effects: yellowing eyes/skin, dark urine, severe stomach/abdominal pain, persistent nausea/vomiting. A very serious allergic reaction to this drug is rare. However, get medical help right away if you notice any symptoms of a serious allergic reaction, including: rash, itching/swelling (especially of the face/tongue/throat), severe dizziness, trouble breathing. This is not a complete list of possible side effects. If you notice other effects not listed above, contact your doctor or pharmacist. In the US - Call your doctor for medical advice about side effects. You may report side effects to FDA at

Continued on reverse side.

For faster refills, phone in 24 hours in advance

Keep Out of Reach of Children

IMPORTANT DISCLAIMER: The side effects listed above are not all of the possible risks that could be caused by this medication, please consult with your physician about the uses, precautions and risks of the

CVS Item# 15078

PROMISED: 07:28p
RefyFillElig 10/28/2014    # Scripts: 01
CUSTOMER RECEIPT

CVS/pharmacy/7459  Ps: 281.242-2890

COUNSEL
New Drug Dosage

Date: 10/28/2014   DAW: 0
Rx 0544791 00

PAY:   $17.38
Caps: Y

VASUDEVAN ALAVOOR
3402 CASTLE POND CT, PEARLAND, TX 775840000
Ph: 832.244-1927   DOB:   07/62
HI-TECH PHARMAC
OORZOLAMIOE-TIMOLOL EYE DROPS
INSTILL 1 DROP INTO BOTH EYES 2 TIMES A DAY

NDC:50383-0233.10  Days Supply  90 Refills:  4  Oty:20 ML
Prscbr: NICHOLAS P BELL
TP: 2619
AUTH#: 143016419842203098A  CAREMARK BIN 004336
GR: RX18100

VA
10/28/2014
2102 ELORIDGE RD.
SUGAR LAND, TX
77478

TB testing*
Available every day.
Just walk in!

minuteclinic®
Find a clinic at minuteclinic.com

*Insurance is not accepted for TB testing services. Payment is due at time of visit. MinuteClinic® treats patients 18 months and older.

002476

A1c checks.*
Every day. Just walk in.

Results are immediate • Most insurance accepted

minuteclinic®
Find a clinic
at minuteclinic.com

*Must be age 18 or older.
Services may vary by state.

002474

PATIENT PRESCRIPTION INFORMATION

IF YOU HAVE ANY QUESTIONS ABOUT YOUR MEDICATION, PLEASE CONTACT YOUR PHARMACIST.
Le-Minh Tran, RPh.

CVS/pharmacy
2102 ELORIDGE RD.
SUGAR LAND, TX
77478

#7459   Ph: 281.242-2890
www.cvs.com

VASUOEVAN, ALAVOOR          10/28/2014
3402 CASTLE POND CT         Prscbr: NICHOLAS P BELL
PEARLAND, TX 775840000      Refills: 4
Ph: 832.244-1927

OORZOLAMIOE-TIMOLOL EYE OROPS
HI-TECH PHARMAC

INSTILL 1 OROP INTO BOTH EYES 2 TIMES A DAY

This is a COLORLESS DROPS.
**TIMOLOL/OORZOLAMIOE DROPS · OPHTRALMIC · (TIE·moh·lohl/door·ZOHL·uh·mide)**
**COMMON BRANO NAME(S):**
Cosopt

## USES:
This product contains two drugs used to treat high pressure inside the eye due to glaucoma (open angle-type) or other eye diseases (e.g., ocular hypertension). Lowering high pressure inside the eye helps to prevent blindness. This medication works by decreasing the amount of fluid within the eye. Timolol belongs to a class of drugs known as beta-blockers, and dorzolamide belongs to a class of drugs known as carbonic anhydrase inhibitors.

## HOW TO USE:
Read the Patient Information Leaflet provided by your pharmacist before you start using timolol/dorzolamide and each time you get a refill. If you have any questions regarding the information, consult your doctor or pharmacist. This medication is for use in the eye(s), usually one drop in the affected eye(s) 2 times a day, or as directed by your doctor. To apply eye drops, wash your hands first. To avoid contamination, do not touch the dropper tip or let it touch your eye or any other surface. Some products contain a preservative that may be absorbed by contact lenses. If you are using a product with a preservative and you wear contact lenses, remove the lenses before using the eye drops. Wait at least 15 minutes before putting in your contact lenses. Tilt your head back, look upward and pull down the lower eyelid to make a pouch. Hold the dropper directly over your eye and place one drop in your eye. Look downward and gently close your eyes for 1 to 2 minutes. Place one finger at the corner of your eye (near the nose) and apply gentle pressure. Try not to blink and do not rub your eye. This will prevent the medication from draining out. Repeat these steps for your other eye if so directed. Do not rinse the dropper. Replace the dropper cap after each use. If you are using another kind of eye medication (e.g., drops or ointments), wait at least 10 minutes before applying other medications. Use eye drops before eye ointments to allow the eye drops to enter the eye. Use this medication regularly in order to get the most benefit from it. To help you remember, use it at the same times each day. It is important to continue using this medication even if you feel well. Most people with glaucoma or high pressure in the eyes do not feel sick.

## SIDE EFFECTS:
Temporary blurred vision, temporary burning/stinging/itching/redness of the eye, watery eyes, dry eyes, feeling as if something is in the eye, sensitivity of eyes to light, strange taste in the mouth, or headache may occur. If any of these effects persist or worsen, notify your doctor or pharmacist promptly. Remember that your doctor has prescribed this medication because he or she has judged that the benefit to you is greater than the risk of side effects. Many people using this medication do not have serious side effects. Tell your doctor immediately if any of these unlikely but serious side effects occur: dizziness, slow/irregular heartbeat, muscle weakness, mental/mood changes, coldness/numbness/pain in the hands or feet. Tell your doctor immediately if any of these rare but very serious side effects occur: vision changes, signs of a kidney stone (e.g., pain in the back/side/abdomen, nausea/vomiting, blood in the urine), yellowing eyes or skin, dark urine, unusual tiredness/weakness, easy bruising/bleeding, signs of infection (e.g., fever, chills, persistent sore throat). Seek immediate medical attention if any of these rare but very

IMPORTANT DISCLAIMER: The side effects listed above are not all of the possible risks that could be caused by this medication. For further information, please consult with your physician about the uses, precautions, and risks of the medication. The information is obtained from First DataBank for use as an educational aid.

Continued on reverse side.

RPh 10/2 12:00 p.m.

PROMISED: 05:17p
ReadyFill™ 05-22-2014
# Scripts: 01
CUSTOMER RECEIPT

27 0518008 000 002062

Rx: 0518008 00
Date: 05/22/2014  DAW: 0

PAY: $20.62
Caps: Y

VA
05/22/2014
**CVS/pharmacy** #7459  Ph: 281.242-2890
2102 ELDRIDGE RD.
SUGAR LAND, TX
77478

COUNSEL
New Drug

VASUDEVAN,ALAVOOR
3402 CASTLE POND CT, PEARLAND, TX 775840000
Ph: 832.244-1927   DOB:   07-62
METFORMIN HCL 500 MG TABLET
TEVA USA
TAKE 2 TABLET BY MOUTH EVERY MORNING AND TAKE 2 TABLETS
BY MOUTH EVERY EVENING FOR DIABETES

NDC:00093- 1048-01  Days Supply: 90  Qty:360 EA
Prscbr: TROY TREANOR FIESINGER
TP: 2619   Refills: 3
AUTH: 14142586717162989   CAREMARK BIN 004336
GR: RX0690

TB testing*
Available every day.
Just walk in!
minuteclinic®
Find a clinic at minuteclinic.com

*Insurance is not accepted for TB testing services. Payment is due at time of visit. MinuteClinic® treats patients 18 months and older.

062478

Fill 10 Prescriptions,
Earn $5 ExtraBucks®
Rewards!*
If you haven't already joined, sign up at the pharmacy or visit CVS.com/rxrewards to start earning today.

*Visit CVS.com/rxrewards for details and limitations.

002469

## PATIENT PRESCRIPTION INFORMATION

**CVS/pharmacy**®
2102 ELDRIDGE RD.
SUGAR LAND, TX
77478

#7459  Ph: **281.242-2890**
www.cvs.com

VASUDEVAN,ALAVOOR
3402 CASTLE POND CT
PEARLAND, TX 775840000
Ph: 832.244-1927

05/22/2014
Prscbr: TROY TREANOR FIESINGER
Refills: 3

IF YOU HAVE ANY QUESTIONS ABOUT YOUR MEDICATION, PLEASE CONTACT YOUR PHARMACIST:
**Le-Minh Tran,RPh.**

**METFORMIN HCL 500 MG TABLET**
TEVA USA
TAKE 2 TABLET BY MOUTH EVERY MORNING AND TAKE 2 TABLETS BY MOUTH
EVERY EVENING FOR DIABETES

This is a WHITE, OVAL-shaped TABLET imprinted with 93 on the front and 48 on the back.
METFORMIN - ORAL - (met-FOR-min)
COMMON BRAND NAME(S):

Glucophage
**WARNING:**
Metformin can rarely cause a serious (sometimes fatal) condition called lactic acidosis. Stop taking metformin and get medical help right away if you develop any of the following symptoms of lactic acidosis: unusual tiredness, dizziness, severe drowsiness, chills, blue/cold skin, muscle pain, fast/difficult breathing, slow/irregular heartbeat, stomach pain with nausea, vomiting, or diarrhea. Lactic acidosis is more likely to occur in patients who have certain medical conditions, including kidney or liver disease, recent surgery, a serious infection, conditions that may cause a low level of oxygen in the blood or poor circulation (such as congestive heart failure, recent heart attack, recent stroke), heavy alcohol use, a severe loss of body fluids (dehydration), or X-ray or scanning procedures that require an injectable iodinated contrast drug. Tell your doctor immediately if any of these conditions occur or if you notice a big change in your overall health. You may need to stop taking this medication temporarily. The elderly are also at higher risk, especially those older than 80 years who have not had kidney tests. (See also Side Effects and Precautions sections.)
**USES:**
Metformin is used with a proper diet and exercise program and possibly with other medications to control high blood sugar. It is used in patients with type 2 diabetes. Controlling high blood sugar helps prevent kidney damage, blindness, nerve problems, loss of limbs, and sexual function problems. Proper control of diabetes may also lessen your risk of a heart attack or stroke. Metformin works by helping to restore your body's proper response to the insulin you naturally produce. It also decreases the amount of sugar that your liver makes and that your stomach/intestines absorb.
**HOW TO USE:**
Read the Patient Information Leaflet if available from your pharmacist before you start taking metformin and each time you get a refill. If you have any questions, consult your doctor or pharmacist. Take this medication by mouth as directed by your doctor, usually 1-3 times a day with meals. Drink plenty of fluids while taking this medication unless otherwise directed by your doctor. The dosage is based on your medical condition, kidney function, and response to treatment. Your doctor may direct you to take a low dose of this medication at first, gradually increasing your dose to lower the chance of side effects such as upset stomach. Your doctor will adjust your dose based on your blood sugar levels to find the best dose for you. Follow your doctor's directions carefully. Take this medication regularly in order to get the most benefit from it. Remember to use it at the same times each day. If you are already taking another anti-diabetic drug (such as chlorpropamide), follow your doctor's directions carefully for stopping/continuing the old drug and starting metformin. Check your blood sugar regularly as directed by your doctor. Keep track of the results, and share them with your doctor. Tell your doctor if your blood sugar measurements are too high or too low. Your dosage/treatment may need to be changed.
**SIDE EFFECTS:**
Nausea, vomiting, stomach upset, diarrhea, weakness, or a metallic taste in the mouth may occur. If any of these effects persist or worsen, tell

Continued on reverse side.

For faster refills, phone in 24 hours in advance

Keep Out of Reach of Children

IMPORTANT DISCLAIMER: The side effects listed above are not all of the possible risks that could be caused by this drug. Always consult with your physician about the uses, precautions, and risks of the

VS Item#
15028

Wife's inventory filed is Fourth Amended Inventory (Exhibit 5) which had wrong figures and incorrect amounts (RR2 page 5 line 20). Husband raised objections to wife's inventory (RR2 pg41 line20, RR2 pg43 line10, pg44 line1, pg44 line14). The trial court's judge had never said "Five is admitted", see between "Four is admitted" (RR2 pg43 line1) and "Six is admitted" (RR2 pg49 line19). There was never a words saying "exhibit five is admitted". Hence, this proves that wife's inventory is rejected by the trial court and judge. But in spite of this how the trial court made error by putting this Exhibit 5 as admitted? No one knows!

Appellant raised objections to inventory filed by wife (RR3 at 8 line 25; RR2 at 41 line 20, RR2 at 42 line 16, RR2 at 43 line 10, RR2 at 44 line 1; IDX 307, IDX 339, IDX 342, IDX 364, RR4 pg 3 line 4,7,9,11,13; RR4 pg 4).

See also: RR3 pg 9 line 18, RR2 pg 76 line 7, RR2 pg 77 line 7, RR4 page 3 line 13;  page 4 line 4, Appendix N exhibit 13, BA pg 203



**CITIBANK NRI BUSINESS**
WEALTH MANAGEMENT FOR THE GLOBAL INDIAN

ACCOUNT STATEMENT OF DEEPA S VASUDEVAN

## Statement of Account

### A. CITIBANK NRI ACCOUNT SUMMARY FOR ACCOUNT NO : XXXXXX (as on April 2, 2013 (Contd.)

Policy Owners' Protection Schemes Act 2011 of Singapore and is not eligible for deposit insurance coverage under the Deposit Insurance Scheme.

Except as otherwise indicated in the offering materials for a particular investment, investments are not deposits or other obligations of, or guaranteed or insured by Citibank N.A., Citigroup or any of their affiliates, or by any local government, insurance agency, and are subject to investment risks, including possible loss of the principal amount invested.

Your account with Citibank Singapore Ltd, Reg No.      Your account with Citibank N.A. Singapore
Your account with Citibank International plc, London, Reg No        UAE - Your account with Citibank N.A.
Your account with Citibank N.A, UAE branch                          IND - Your account with Citibank N.A, India branch

## FOLIO ALLOCATION



1. DEPOSITS          100.00%

## CURRENCY SUMMARY

1. INR      83.50%
2. AUD      16.50%

### B. CURRENCY POSITION SUMMARY AS OF April 2, 2013

| CURRENCY | AMOUNT IN DEPOSITS/SAVINGS ACCOUNTS PREMIUM & MARKET LINKED ACCOUNTS | AMOUNT IN MUTUAL FUNDS/FIS/Notes INSURANCE | TOTAL HOLDINGS | TOTAL HOLDINGS ( IN USD ) |
|---|---|---|---|---|
| IND | 19,212.75 | 0.00 | 19,212.75 | 20,013.62 |
| AUD | 5,422,908.00 | 0.00 | 5,422,908.00 | 101,111.14 |

The Currency Position Summary takes into account maturity amount of deposits/current value of investments, as well as any

INVESTMENT PRODUCTS :   •   NO BANK GUARANTEE   •   NOT FDIC INSURED   •   MAY LOSE VALUE

Please see Reverse
Please do not accept any hand written statements



B A N K  N R I  B U S I N E S S
MANAGEMENT FOR THE GLOBAL INDIAN
ACCOUNT STATEMENT OF DEEPA S VASUDEVAN

A. CITIBANK NRI ACCOUNT SUMMARY FOR ACCOUNT NO : ~~[redacted]~~ as on April 2, 2013

### DEPOSITS

| ACCT | CURRENCY | AT | NO. OF DEPOSITS | PRINCIPAL AMT | CURRENT MAT. AMT. | USD EQUI. OF PRIN. AMT |
|------|----------|-----|-----------------|---------------|-------------------|------------------------|
|      | IND | AUD | 02 | 17,588.00 | 19,212.75 | 18,738.10 |
|      | IND | INR | 03 | 5,119,855.00 | 5,481,908.00 | 94,620.11 |
| Subtotal : | | | | | | 113,358.21 |

| Grand Total (Assets) : | | | | | | 113,358.21 |

| ALL ASSETS : | | | | | | 113,358.21 |
| ALL LIABILITIES : | | | | | | 0.00 |
| ASSETS : | | | | | | 113,358.21 |

a Deposit Summary does not take into account any Retail Forward transactions done against your deposits.
e last column shows approximate equivalent USD figures and is indicative.
e purchase price does not reflect accrued interest paid by you. The current investment value does not reflect accrued
terest due to you. The current value of your FIS/Notes investment is based on the indicative bid rate as obtained
om our pricing sources, and may not correspond to the amount realisable on sale, which would be a function of
rket factors.  The purchase price of your FIS/Notes investments reflects the face value for investments made
ior to June 1, 2001, and the purchase price for subsequent investments.
rrency XAU (GOLD) is measured in terms of Ounces.
s means Fixed Income Securities.
bit to deposits for the purpose of transactions is rounded off to the next dollar (or other currency, as
plicable to the transaction).
rrent value in the Insurance section mentioned above, does not necessarily represent the up-to-date value and/or the
rrender value of the insurance policies and/or the underlying funds of the insurance Policies as of the day of this
atement. For further details please refer to insurance Account details that are shown below in this statement.
l investment decisions relating to your account are solely to be undertaken by you.When taking any investment decision
hether at Citi or elsewhere) you should always bear in mind that concentration is an important element to consider.
ncentrated positions may entail greater risks than a diversified approach to securities and issuers.
r Deposits covered under the Deposit Insurance Scheme
Deposits covered under the provisions of the Deposit Insurance and Policy Owners' Protection Schemes Act 2011, of Singapore,
rsuant and subject to the provisions of the Deposit Insurance and Policy Owners' Protection Schemes Act 2011, of Singapore,
o Singapore Dollar Globe Deposits for non-bank depositors are insured by the Singapore Deposit Insurance Corporation ("SDIC")
r up to S$50,000 in aggregate for each insured depositor. For more information, please refer to SDIC's website at
w.sdic.org.sg
r Deposits NOT covered under the Deposit Insurance Scheme
e Globe Deposit (non Singapore Dollar Currency) is not an insured product under the provisions of the Deposit Insurance and

INVESTMENT PRODUCTS : • NO BANK GUARANTEE • NOT FDIC INSURED • MAY LOSE VALUE

Please see reverse
Please do not accept any handwritten statements



1. Gold Bars 14     purchased

2. Gold Coins 30     purchased

3. Gold Bangles 100     purchased/gifts to Al & Deepa
   60/40

4. Gold Chain 36     purchased/gifts to Al & Deepa
   70/30

5. Diamond Necklaces 6     ~~purchased~~/gifts to Al & Deepa
   *all given in weddings*

6. Diamond Ring 1     Gift to Al Dev (wedding)

7. Diamond Ring 1     Gift to Deepa (wedding)

8. Waist Band Gold *for marriage - given in wedding* Gift to Al / Deepa

9. Arm Band (hand) 6     Gift to Al / Deepa

10. Head Decoration (Gold) 4     Gift to M / Deepa

11. Rings Gold (Daily use) 12     purchased / gift to M - Deepa
    50/50

12. Bracelets 6     purchased

13. Diamond Ear Rings 50/50 4 Sets     purchased / gift to Al + Deepa

14. Ear Rings Gold 50/50 20 sets     purchased / gift to Al + Deepa

Inventory of Gold / Jewels prepared by ALAVUDOR VASUDEVAN as requested by attorney Shannon Tigner during the mediation at phillip office. 12 Dec 2013

**Cause No. 63935**

| | | |
|---|---|---|
| **DEEPA VASUDEVAN** | § | **IN THE DISTRICT COURT** |
| **AND** | § | **300TH JUDICIAL DISTRICT** |
| **ALAVOOR VASUDEVAN** | § | **BRAZORIA COUNTY, TEXAS** |

This "Exhibit" says in last paragraph Item (6) as handwritten by wife (Deepa): *"14 Gold Bars"* (marked by red arrow). This is for inventory number 3 which includes 14 Gold Bars and 30 Gold Coins.





**Cause No. <u>63935</u>**

| | | |
|---|---|---|
| **DEEPA VASUDEVAN** | § | **IN THE DISTRICT COURT** |
| **AND** | § | **300TH JUDICIAL DISTRICT** |
| **ALAVOOR VASUDEVAN** | § | **BRAZORIA COUNTY, TEXAS** |

**Cause No. <u>63935:</u>** In the Matter of the Marriage of A1avoor Vasudevan and Deepa Vasudevan and in the Interest of  Pallavi Dev, A Child; In the 300th Judicial District Court of Brazoria County, Texas

<u>**Wedding Photos showing Gold, Diamonds, Jewelry**</u>

**photo 1: Diamond finger rings and gold bangles**



**photo 2: Diamond finger rings and gold bangles**

**photo 3: Diamond finger rings**



**photo 4: Diamond finger rings husband**

**Cause No. 63935**

| | | |
|---|---|---|
| DEEPA VASUDEVAN | § | IN THE DISTRICT COURT |
| AND | § | 300TH JUDICIAL DISTRICT |
| ALAVOOR VASUDEVAN | § | BRAZORIA COUNTY, TEXAS |

This "Exhibit 13" has handwritings of Wife's Diary and proves that handwriting of word "ONLY" in "Deposition Exhibit 4" is written by wife Deepa.
See also inventory number 3 **$900,000.00**
In "Deposition Exhibit 4" and there the last paragraph in "Exhibit 4" says this:

*"Several sets of jewellery and everything is given to be my mother except a ring and a chain with my mangalyam which al had given and he can get that; the rest goes to pallavi. There are* **14 gold bars** *all* **bought by me** *and some given to me by amma and pati from what they had collected in the past. 400 dollar us savings bonds and that is for pallavi".*

**And in first paragraph is handwriting of Deepa which says "only". The handwriting of "only" is a proof that this document exhibit 4 was indeed prepared by Wife (Deepa).**
See also page 9 of the deposition of Deepa Vasudevan taken on 24 April 2014.

PHONE CALLS
EXPENSE & REIMBURSEMENT RECO

tomorrow is a premire release
has a preview off
I know I can depend only
on you for support for
today my whole



DIARY AND WORK RECORD
8th Week
58th Day
**SATURDAY**
FEBRUARY, 1999
**27**

NAME OR PROJECT
DETAILS OF MEETINGS • AGREEMENTS • DECISIONS
TIME HRS. 1/10

myself to smile happier. But I
am only human, it hurts.
I have made my weakness as



...my aspirations, bared my feelings, smiled for the world, only to keep people happy. I have never wanted to hurt

EXHIBIT 14 (Bank letters)    pg 1 of 7

**Bank of America**
BANK OF AMERICA, N.A.
P O BOX 15285

Wilmington, DE   19850

SAFE DEPOSIT BOX
PAYMENT NOTICE

BANK:  0099   CENTER:  0400
BOX NUMBER: 0090775-7
SIZE:  5X10

0099040000080800007070... ...0000058001

NOTICE  DATE: 05/28/13

RENTAL PERIOD
07/01/13 TO 06/30/14

DEEPA VASUDEVAN
3402 CASTLE POND CT
PEARLAND          TX   77584-7030

CHARGE TO ACCOUNT XXXXXXXXXXX8479
$98.00

FOR SAFE DEPOSIT BOX ANNUAL RENTAL

---

## SAFE DEPOSIT BOX
## PAYMENT NOTICE

BANK OF AMERICA, N.A.
SILVERLAKE
2880 FM 518
PEARLAND TX   77584

DEEPA VASUDEVAN
3402 CASTLE POND CT
PEARLAND          TX   77584-7030

BANK:  0099   CENTER:  0400
BOX NUMBER: 0090775-7
SIZE:  5X10

RENTAL RATE:      $145.00
DISCOUNT:
PLAT PRIV AUTO    $47.00-
---------
CHARGE TO ACCT:    $98.00

WE WILL DEBIT    $98.00 FROM YOUR
ACCOUNT #XXXXXXXXXXX8479  ON 07/01/13.
PLEASE DEDUCT THE CHARGE AMOUNT FROM YOUR
BANK OF AMERICA ACCOUNT.
THANK YOU FOR YOUR BUSINESS.

## Note : Payment will be made by automatic debit.
## Please do not remit a payment.

EXHIBIT 14 (Bank Locker) page 297

**Bank of America**

BANK OF AMERICA, N.A.
P O BOX 2518

HOUSTON TX   77252-2518

SAFE DEPOSIT BOX
PAYMENT NOTICE

BANK:  0099   CENTER: 0400
BOX NUMBER: 00~~007~~7
SIZE:  5X10

0099 0400 ~~0000743~~ ~~06704~~ 0000007000 0

NOTICE  DATE: 05/27/08

RENTAL PERIOD
07/01/08 TO 06/30/09

CHARGE TO ACCOUNT ~~005743780000~~
$70.00

DEEPA VASUDEVAN
3402 CASTLE POND CT
PEARLAND        TX   77584-7030

FOR SAFE DEPOSIT BOX ANNUAL RENTAL

---

SAFE DEPOSIT BOX
PAYMENT NOTICE

BANK OF AMERICA, N.A.
SILVERLAKE
2880 FM 518
PEARLAND TX   77584

DEEPA VASUDEVAN
3402 CASTLE POND CT
PEARLAND        TX   77584-7030

BANK:  0099   CENTER: 0400
BOX NUMBER: ~~0000~~7
SIZE:  5X10

RENTAL RATE:    $100.00
DISCOUNT:
ADVANTAGE        $30.00-
                -------
CHARGE TO ACCT:  $70.00

WE WILL DEBIT    $70.00 FROM YOUR
ACCOUNT #~~005743780000~~     ON 07/01/08.
PLEASE DEDUCT THE CHARGE AMOUNT FROM YOUR
BANK OF AMERICA ACCOUNT.
THANK YOU FOR YOUR BUSINESS.

## Note : Payment will be made by automatic debit.
## Please do not remit a payment.

EXHIBIT 14 (Bank Lotken) page 347 Page 1 of 13

H



**Bank of America**

August 2001

Brokerage account number:
Checking account number:

DEEPA VASUDEVAN
ALAVOOR VASUDEVAN
VAIDEHI HR
3402 CASTLE POND CT
PEARLAND TX 77584

Banc of America
Investment Services, Inc.™

*Safe Deposit Box fee: 30 Aug 2001.*

Dear Valued Customer,

The Economic Growth and Tax Relief Reconciliation Act of 2001 provides several opportunities to increase your investment return potential as well as more opportunities for tax-advantaged investing. Contact your investment representative to help you understand how the changes may affect you, your current investment strategy and your long-term financial goals.

Neither Bank of America nor Banc of America Investment Services, Inc. is a tax adviser. We suggest you consult your personal tax adviser before making any tax-related investment decisions.

For questions call:
24 hour Customer Service                800 893 3138
Bank of America and Banc of America Investment Services, Inc
For trading call:
Discount Brokerage                       800 926 1111

Or write:
101 South Tryon Street
NC1-002-14-20
Charlotte, NC 28255

For general questions or comments, go to:
www.bankofamerica.com/moneymanager/contact
Please note that email should be used for general questions or comments.
Please call customer service for specific questions about your account. For general information, visit us at www.bankofamerica.com

**Total asset value:**                   **$16,897.93**

Investment products provided by Banc of America Investment Services, Inc.:

Are Not FDIC Insured    May Lose Value
Are Not Bank Guaranteed

Banc of America Investment Services, Inc.
is a nonbank subsidiary of Bank of America and
registered broker-dealer and member NASD, SIPC.

Brokerage account carried with National Financial Services LLC (NFS) member NYSE and SIPC

Checking account carried with Bank of America, N.A.

Recycled Paper

EXHIBIT 14 (Bank Locker) page 4 of 7

Page 7 of 13

000222901 H



**August 2001**

Customer name: **VASUDEVAN**
Brokerage account number: ~~~~
Checking account number: ~~~~

Safe Deposit Box : 30 Aug 2001   $20.00

## Daily account summary, cont.

| Date | Type | Transaction/ Quantity | Description | Transaction amount ($) - | + |
|---|---|---|---|---|---|
| 08-28-01 | Cash | Withdrawal | NML INSURANCE ;DES=ISA PAYMNT;ID=8527086 ISAPYMTEFF DATE: 010828;INDN:ALAVOOR VASUDEVAN | 571.91- | |
| 08-28-01 | Cash | Withdrawal | NML INSURANCE ;DES=ISA PAYMNT;ID=8527125 ISAPYMTEFF DATE: 010828;INDN:ALAVOOR VASUDEVAN | 19.63- | |
| 08-29-01 | Cash | Deposit | MBNA AMERICA ;DES=DIRECT DEP;ID=490990445131624EFF DATE: 010829;INDN:DEEPA VASUDEVAN | | 7,500.00 |
| 08-29-01 | Cash | Deposit | BKOFAMERICA ATM 08/29 #000000736 DEPOSIT HERMANN'S HOSPIT HOUSTON TX | | 651.31 |
| 08-29-01 | Cash | Withdrawal | DISCOVER ;DES=SMART CHK ;ID=601100878024109EFF DATE: 010829;INDN:VASUDEVAN,DEEPA A | 2,118.63- | |
| 08-29-01 | Cash | Withdrawal | BKOFAMERICA ATM 08/29 #000000789 WITHDRWL HERMANN'S HOSPIT HOUSTON TX | 200.00- | |
| 08-29-01 | Cash | Withdrawal | CITY OF PEARLAND;DES=UT BILL ;ID=000332010024660EFF DATE: 010829;INDN:VASUDEVAN ALAVOOR | 116.45- | |
| 08-30-01 | Cash | Withdrawal | Safebox Fee | 20.00- | |
| 08-31-01 | Cash | Deposit | EL PASO GLOBAL ;DES=PAYROLL ;ID=HWT000000000391EFF DATE: 010831;INDN:VASUDEVAN,A | | 2,240.68 |
| 08-31-01 | Cash | Deposit | Interest Earned | | 63.89 |

Transactions reflect checking activity from Aug. 01, 2001 through Aug. 31, 2001 and brokerage activity from Aug. 01, 2001 through Aug. 31, 2001.

## Activity by type

### Bank activity:

Bank transactions occur through Bank of America, N.A.

 Recycled Pap

EXHIBIT 14 (Bank Locker) page 547

Page 1 of 14

July 2002





Brokerage account number: T~~~~~~~
Checking account number: ~~~~~~~~

DEEPA VASUDEVAN
ALAVOOR VASUDEVAN
3402 CASTLE POND CT
PEARLAND TX 77584

Banc of America
Investment Services, Inc.℠

*Safe deposit Box fee: 3 July 2002*

Dear Valued Customer,

Online Banking with Bill Pay lets you check account balances, view specific bank transactions, transfer funds, as well as receive and pay bills -- anywhere you have Internet access. Enroll now for free Online Banking, and receive Bill Pay service at no charge. Just log on to www.bankofamerica.com.

**For questions call:**
24 hour Customer Service     800.896.3138
Bank of America and Banc of America Investment Services, Inc.
**For trading call:**
Discount Brokerage     800.926.1111
**Or write:**
900 West Trade Street
NC1-026-05-01
Charlotte, NC 28255
**For general questions or comments, go to:**
www.bankofamerica.com/moneymanager/contact
Please note that email should be used for general questions or comments.
Please call customer service for specific questions about your account. For general information, visit us at: www.bankofamerica.com

*Total asset value:*     **$18,853.17**

Investment products provided by Banc of America Investment Services, Inc.

Are Not FDIC Insured    May Lose Value
Are Not Bank Guaranteed

Banc of America Investment Services, Inc.
is a nonbank subsidiary of Bank of America and
registered broker-dealer and member NASD, SIPC.

EXHIBIT 14 (Bank broken) page 6 q 7

Page 4 of 13
000265335

July 2002

Customer name: **VASUDEVAN**
Brokerage account number: ~~7771678509~~
Checking account number: ~~90224767674~~

## Income summary

| | This period | Year-to-date | | This period | Year-to-date |
|---|---|---|---|---|---|
| ▶ **Taxable income** | | | ▶ **Taxes and withholdings** | | |
| FDIC insured sweep interest | $31.07 | $228.70 | *Total taxes and withholdings* | $.00 | *$.00* |
| Total taxable income | 31.07 | 228.70 | | | |

7-day average net yield as of July 31, 2002

| | |
|---|---|
| ▶ **Non-taxable income** | Nations Cash Reserves .................................................... 1.17% |
| | Nations Government Reserves ........................................ 1.06% |
| *Total non-taxable income* .00 .00 | Nations Treasury Reserves ............................................. 1.07% |
| | Nations Municipal Reserves ........................................... 0.79% |
| ▶ **Total income** $31.07 $228.70 | Nations California Tax-Exempt Reserves ........................ 0.62% |

FDIC insured sweep interest

FDIC insured annual percentage yield earned this statement period ........... 1.05%
July 01 to July 31, 2002

## Daily account summary

| Date | Type | Transaction/ Quantity | Description | Transaction amount ($) | |
|---|---|---|---|---|---|
| | | | | **-** | **+** |
| 07-01-02 | Cash | Deposit | UT HEALTH SCIENC;DES=DIR DEP ;ID=107518 EFF DATE: 020701;INDN:VASUDEVAN,DEEPA A. | | 3,608.67 |
| 07-01-02 | Cash | Withdrawal | CHECK 0000000770 REFERENCE # 813105930327594 | 200.00- | |
| 07-01-02 | Cash | Withdrawal | PAYMENT TO SAFE BOX DEEPA VASUDEVAN | 25.00- | |
| 07-02-02 | Cash | Deposit | BKOFAMERICA ATM 07/02 #000007106 DEPOSIT TANGLEWOOD- MB 1 HOUSTON TX | | 638.00 |
| 07-02-02 | Cash | Withdrawal | UNICARE ;DES=UNICARE ;ID=10101K640689874EFF DATE: 020702;INDN:DEEPA VASUDEVAN | 144.00- | |
| 07-02-02 | Cash | Withdrawal | BKOFAMERICA ATM 07/02 #000007107 WITHDRWL TANGLEWOOD- MB 1 HOUSTON TX | 20.00- | |
| 07-03-02 | Cash | Withdrawal | CHECK 0000000793 REFERENCE # 813004020065727 | 1,867.00- | |
| 07-03-02 | Cash | Withdrawal | Safebox Fee | 40.00- | |
| 07-03-02 | Cash | Withdrawal | CHECK 0000000769 REFERENCE # 813105930779720 | 15.00- | |

EXHIBIT 14 ( Bank Locker)    Page 7 of 7

INDIA

→ Bank Accounts

NABARD - 34 Ⓛ
Other svgs - 10 Ⓛ        — 46 Ⓛ
- Coversion

CO's

Hyd.                                      Lockers Indian
Citibank          [ Deepa sole            Dena Bank
Dena Bank         [ Deepa & HK Narayanan
Syndicate Bank
Andhra Bank
Bangalore
NABARD.
Vijaya Bank
Corporation Bank.

**EXHIBIT 15**  Handwriting 14 Gold Bars                                    pg 1 of 1
**Cause No. 63935**

| | | |
|---|---|---|
| **DEEPA VASUDEVAN** | § | **IN THE DISTRICT COURT** |
| **AND** | § | **300TH JUDICIAL DISTRICT** |
| **ALAVOOR VASUDEVAN** | § | **BRAZORIA COUNTY, TEXAS** |

"Exhibit 15" says this in last paragraph Item (6) as handwritten by wife (Deepa): *"14 Gold Bars"*.
See also inventory number 3  **$900,000.00**

USA. — Money Saves.

① I have a BOA. Checking account — NO.
— B

② Wells Fargo acc for minor —Pallavi → $25. —Exp date
          1 CD's — 30,000,     Act.No. 20-100045-4
③ MBNA. — 2 CDs   ②CD's — 15,000   Act No  Exp date
        — ✓ on. who the nominee is.
④ I have , 10,000 dollar invested in BOA investment
                       acct.  Act No.
    —nominee is Pallavi Deo. — ✓ on same.

⑤ I have 3 accts ̅c made.
   — one Joint ̅c me & AL — acct No . & Balance.
   — one Pallavi's UGMA Acct — ̅c Guardian AL.
    —one 529 — ̅c AL as Guardian
     — one 529 - ̅c me as Guardian
      one UGMA - ̅c me as Guardian.
     — one solely owned by me  Act No.
                      — $13,000 dollars.
  ⑤ Charles Schwab Acct #    — $13,000 dollars.
      Balance
⑥ Locker → I have some US —Savings Bonds- $400.
   → 14 Gold Bars.

Debts —⌐ mortgage →
                            $2000 dollars - 0% interest
       └→ Circuit city card                for 24 mo.
         └→MBNA card - $10,000 - 0% interest till
                                   May 2005
                     I am paying off slowly every month

*Appendix O  Index from District Clerk Office*

The index from district clerk which was sent to Appeals Court by the District Clerk Office will be referred as "IDX" followed by page number (Appendix O)

111 E. Locust, Suite. 500
Angleton, TX 77515

www.brazoria-county.com



979-864-1316
979-388-1316
281-756-1316

# RHONDA BARCHAK
## DISTRICT CLERK
### BRAZORIA COUNTY

December 29, 2014

Alavoor Vasudevan
PO Box 710163
Houston, TX 77271

RE: Cause no. **63935**
    Style: **DEEPA VASUDEVAN VS. ALAVOOR VASUDEVAN**

Dear Sir/Madam:

Enclosed you will find a copy of the Index concerning the appeal assigned to the Fourteenth Court of Appeals for the above mentioned cause:

Thank you,
**RHONDA BARCHAK, District Clerk**

By _____
Nicole Jones, Deputy

Enclosure

CAUSE NO. 63935
300th District Court

DEEPA VASUDEVAN VS ALAVOOR VASUDEVAN


INDEX

COVER............................................................................................ 1

CAPTION........................................................................................ 2

INDEX............................................................................................ 3

APPLICATION FOR PROTECTIVE ORDER 6-28-11............................... 8

TEMPORARY EX PARTE PROTECTIVE ORDER AND ORDER SETTING

HEARING 6-28-11............................................................................ 17

RESPONDENT'S ANSWER TO APPLICATION FOR PROTECTIVE ORDER

7-8-11............................................................................................ 24

WAIVER OF SERVICE 7-12-11........................................................... 27

SCHEDULING ORDER 7-22-11.......................................................... 29

TEMPORARY ORDERS 7-22-11.......................................................... 30

MOTION TO CONSOLIDATE 2-7-12.................................................... 46

MOTION FOR SUBSTITUTION OF COUNSEL 2-21-12............................. 48

ORDER ON MOTION FOR SUBSTITUTION OF COUNSEL 2-21-12.............. 51

ENTRY OF APPEARANCE 2-21-12....................................................... 55

ORDER ON MOTION TO CONSOLIDATE 3-29-12................................... 56

MOTION TO MODIFY TEMPORARY ORDERS 7-13-12............................. 59

RULE 11 AGREEMENT 8-21-12.......................................................... 61

ADDITIONAL TEMPORARY ORDER FOR CHILD SUPPORT 9-11-12............ 63

MOTION FOR SUBSTITUTION OF COUNSEL 12-18-12............................ 66

INVENTORY AND APPRAISEMENT OF DEEPA VASUDEVAN 12-27-12....... 68

ATTORNEY'S MOTION TO WITHDRAW AS ATTORNEY IN CHARGE

1-23-13.......................................................................................... 77

ALAVOOR VASUDEVAN'S MOTION TO SUBSTITUTION OF COUNSEL          80
1-28-13.........................................................................

ORDER ON ALAVOOR VASUDEVAN'S MOTION TO SUBSTITUTION OF
COUNSEL 1-29-13.......................................................          83

ALAVOOR VASUDEVAN'S MOTION TO COMPEL 2-14-13.......................          84

BAILIFF'S RESPONSE 3-11-13................................................          86

ORDER DENYING MOTION TO COMPEL 3-15-13...............................          87

ALAVOOR VASUDEVAN'S REQUEST FOR COURT ORDER 3-19-13............          88

CERTIFICATE OF NONAPPEARANCE 7-12-13...................................          130

FIRST AMENDED ORIGINAL COUNTERPETITION FOR DIVORCE 7-16-13...          132

DESIGNATION OF ATTORNEY IN CHARGE 8-7-13..............................          138

RULE 11 AGREEMENT 8-27-13................................................          140

ORDER DISCHARGING AMICUS ATTORNEY 9-6-13............................          145

FIRST AMENDED INVENTORY AND APPRAISEMENT OF DEEPA
VASUDEVAN 9-17-13.........................................................          146

SCHEDULING ORDER AND NOTICE OF INTENT TO DISMISS 9-23-13.........          155

MEDIATED SETTLEMENT AGREEMENT AS TO PALLAVI DEV 10-21-13.....          156

FIRST AMENDED INVENTORY AND APPRAISEMENT OF ALAVOOR
VASUDEN 10-29-13..........................................................          159

SCHEDULING ORDER AND NOTICE OF INTENT TO DISMISS 10-30-13.......          166

CERTIFICATE OF COMPLETION 10-30-13.....................................          167

SECOND AMENDED INVENTORY AND APPRAISEMENT OF DEEPA
VASUDEVAN 10-30-13.......................................................          168

FIRST SUPPLEMENT TO FIRST AMENDED ORIGINAL COUNTERPETITION
FOR DIVORCE 11-22-13......................................................          174

MEDIATED SETTLEMENT AGREEMENT EXCEPT AS TO CUSTODY,
POSSESSION AND CHILD SUPPORT ISSUES 12-13-13..........................          176

SECOND SUPPLEMENT TO ORIGINAL COUNTERPETITION FOR DIVORCE
12-16-13.....................................................................          180

SCHEDULING ORDER AND NOTICE OF INTENT TO DISMISS 12-19-13.......          181

SCHEDULING ORDER AND NOTICE OF INTENT TO DISMISS 1-9-14..........          182

SCHEDULING ORDER AND NOTICE OF INTENT TO DISMISS 2-27-14.......... 183

MOTION FOR WITHDRAWAL OF COUNSEL 3-17-14.............................. 184

ORDER ON MOTION FOR WITHDRAWAL OF COUNSEL 3-26-14................. 190

THIRD AMENDED INVENTORY AND APPRAISEMENT OF DEEPA
VASUDEVAN 5-5-14.......................................................... 192

AFFIDAVIT OF BUSINESS RECORDS 5-7-14.................................... 198

NOTICE OF FILING OF BUSINESS RECORDS AFFIDAVIT 5-9-14............... 289

FOURTH AMENDED INVENTORY AND APPRAISEMENT OF DEEPA
VASUDEVAN 5-27-14.......................................................... 291

EXHIBIT-COURT'S DIVISION OF PROPERTY 5-27-14.......................... 297

EXHIBIT LIST 5-27-14......................................................... 303

CORRESPONDENCE-UPDATE OF INVENTORY FIGURES 5-30-14.............. 304

EXHIBIT LIST 6-9-14.......................................................... 305

EXHIBIT LIST-MERITS HEARING 6-9-14...................................... 306

UPDATE OF INVENTORY FIGURES 6-12-14.................................... 307

REPORTER'S CERTIFICATION DEPOSITION OF ALAVOOR VASUDEVAN
6-16-14....................................................................... 309

PRAYER-CORRECTIONS TO WORDINGS IN JUDGMENT 6-17-14.............. 312

REPORTER'S CERTIFICATION DEPOSITION BY WRITTEN QUESTIONS OF
DEEPA VASUDEVAN 6-24-14.................................................. 321

PRAYER-CORRECTIONS TO DIVORCE DECREE IN THE FINAL
JUDGMENT 6-24-14........................................................... 325

REQUEST FOR INTERIM DIVORCE ORDER 7-7-14.............................. 334

REQUEST FOR INTERIM DIVORCE ORDER-DENIED KRH 7-8-14.............. 336

PLEADINGS-REQUEST CORRECTIONS TO INVENTORY ITEM #2 7-17-14... 339

PLEADINGS-REQUEST CORRECTIONS TO INVENTORY ITEM #2
RECIEVED FROM COURT 7-17-14.............................................. 342

MOTION TO SIGN DECREE OF DIVORCE AND QUALIFIED DOMESTIC
RELATIONS ORDER 6-7-14..................................................... 344

MOTION HEARING OF 15 AUG 2014 8-12-14.................................. 346

FINAL DECREE OF DIVORCE 8-15-14.......................................... 348

QUALIFIED DOMESTIC RELATIONS ORDER 8-15-14........................... 360

RECONSIDERATION OF TRIAL AND NOTICE OF APPEAL 9-12-14............. 364

ORDER DENYING MOTIONS 10-8-14.................................... 372

REQUEST FOR COURT RECORDS FOR 14TH COURT OF APPEALS

12-17-14................................................................ 373

BILL OF COSTS 12-24-14.............................................. 377

DOCKET SHEET...................................................... 378

CASE SUMMARY ...................................................... 383

CLERK'S CERTIFICATE................................................ 393

*Appendix O  Index from District Clerk Office*

The index from district clerk which was sent to Appeals Court by the District Clerk Office will be referred as "IDX" followed by page number (Appendix O)

111 E. Locust, Suite. 500
Angleton, TX 77515

www.brazoria-county.com

979-864-1316
979-388-1316
281-756-1316



# RHONDA BARCHAK
## DISTRICT CLERK
### BRAZORIA COUNTY

December 29, 2014

Alavoor Vasudevan
PO Box 710163
Houston, TX 77271

RE: Cause no. **63935**
    Style: **DEEPA VASUDEVAN VS. ALAVOOR VASUDEVAN**

Dear Sir/Madam:

Enclosed you will find a copy of the Index concerning the appeal assigned to the Fourteenth Court of Appeals for the above mentioned cause:

Thank you,
**RHONDA BARCHAK, District Clerk**

By _____
   Nicole Jones, Deputy

Enclosure

CAUSE NO. 63935
300th District Court

DEEPA VASUDEVAN VS ALAVOOR VASUDEVAN

INDEX

COVER............................................................................................ 1

CAPTION......................................................................................... 2

INDEX.............................................................................................. 3

APPLICATION FOR PROTECTIVE ORDER 6-28-11................................. 8

TEMPORARY EX PARTE PROTECTIVE ORDER AND ORDER SETTING

HEARING 6-28-11............................................................................. 17

RESPONDENT'S ANSWER TO APPLICATION FOR PROTECTIVE ORDER

7-8-11............................................................................................. 24

WAIVER OF SERVICE 7-12-11............................................................ 27

SCHEDULING ORDER 7-22-11............................................................ 29

TEMPORARY ORDERS 7-22-11.......................................................... 30

MOTION TO CONSOLIDATE 2-7-12..................................................... 46

MOTION FOR SUBSTITUTION OF COUNSEL 2-21-12............................. 48

ORDER ON MOTION FOR SUBSTITUTION OF COUNSEL 2-21-12............. 51

ENTRY OF APPEARANCE 2-21-12....................................................... 55

ORDER ON MOTION TO CONSOLIDATE 3-29-12.................................... 56

MOTION TO MODIFY TEMPORARY ORDERS 7-13-12............................. 59

RULE 11 AGREEMENT 8-21-12........................................................... 61

ADDITIONAL TEMPORARY ORDER FOR CHILD SUPPORT 9-11-12........... 63

MOTION FOR SUBSTITUTION OF COUNSEL 12-18-12............................ 66

INVENTORY AND APPRAISEMENT OF DEEPA VASUDEVAN 12-27-12....... 68

ATTORNEY'S MOTION TO WITHDRAW AS ATTORNEY IN CHARGE

1-23-13........................................................................................... 77

ALAVOOR VASUDEVAN'S MOTION TO SUBSTITUTION OF COUNSEL          80

1-28-13..................................................................................

ORDER ON ALAVOOR VASUDEVAN'S MOTION TO SUBSTITUTION OF

COUNSEL 1-29-13................................................................          83

ALAVOOR VASUDEVAN'S MOTION TO COMPEL 2-14-13........................          84

BAILIFF'S RESPONSE 3-11-13.....................................................          86

ORDER DENYING MOTION TO COMPEL 3-15-13.................................          87

ALAVOOR VASUDEVAN'S REQUEST FOR COURT ORDER 3-19-13............          88

CERTIFICATE OF NONAPPEARANCE 7-12-13.....................................          130

FIRST AMENDED ORIGINAL COUNTERPETITION FOR DIVORCE 7-16-13...          132

DESIGNATION OF ATTORNEY IN CHARGE 8-7-13...............................          138

RULE 11 AGREEMENT 8-27-13......................................................          140

ORDER DISCHARGING AMICUS ATTORNEY 9-6-13.............................          145

FIRST AMENDED INVENTORY AND APPRAISEMENT OF DEEPA

VASUDEVAN 9-17-13.................................................................          146

SCHEDULING ORDER AND NOTICE OF INTENT TO DISMISS 9-23-13.........          155

MEDIATED SETTLEMENT AGREEMENT AS TO PALLAVI DEV 10-21-13.....          156

FIRST AMENDED INVENTORY AND APPRAISEMENT OF ALAVOOR

VASUDEN 10-29-13...................................................................          159

SCHEDULING ORDER AND NOTICE OF INTENT TO DISMISS 10-30-13.......          166

CERTIFICATE OF COMPLETION 10-30-13.........................................          167

SECOND AMENDED INVENTORY AND APPRAISEMENT OF DEEPA

VASUDEVAN 10-30-13...............................................................          168

FIRST SUPPLEMENT TO FIRST AMENDED ORIGINAL COUNTERPETITION

FOR DIVORCE 11-22-13..............................................................          174

MEDIATED SETTLEMENT AGREEMENT EXCEPT AS TO CUSTODY,

POSSESSION AND CHILD SUPPORT ISSUES 12-13-13............................          176

SECOND SUPPLEMENT TO ORIGINAL COUNTERPETITION FOR DIVORCE

12-16-13................................................................................          180

SCHEDULING ORDER AND NOTICE OF INTENT TO DISMISS 12-19-13.......          181

SCHEDULING ORDER AND NOTICE OF INTENT TO DISMISS 1-9-14..........          182

SCHEDULING ORDER AND NOTICE OF INTENT TO DISMISS 2-27-14............ 183

MOTION FOR WITHDRAWAL OF COUNSEL 3-17-14................................ 184

ORDER ON MOTION FOR WITHDRAWAL OF COUNSEL 3-26-14................. 190

THIRD AMENDED INVENTORY AND APPRAISEMENT OF DEEPA
VASUDEVAN 5-5-14........................................................................... 192

AFFIDAVIT OF BUSINESS RECORDS 5-7-14......................................... 198

NOTICE OF FILING OF BUSINESS RECORDS AFFIDAVIT 5-9-14............... 289

FOURTH AMENDED INVENTORY AND APPRAISEMENT OF DEEPA
VASUDEVAN 5-27-14......................................................................... 291

EXHIBIT-COURT'S DIVISION OF PROPERTY 5-27-14............................ 297

EXHIBIT LIST 5-27-14........................................................................ 303

CORRESPONDENCE-UPDATE OF INVENTORY FIGURES 5-30-14.............. 304

EXHIBIT LIST 6-9-14......................................................................... 305

EXHIBIT LIST-MERITS HEARING 6-9-14............................................. 306

UPDATE OF INVENTORY FIGURES 6-12-14.......................................... 307

REPORTER'S CERTIFICATION DEPOSITION OF ALAVOOR VASUDEVAN
6-16-14............................................................................................. 309

PRAYER-CORRECTIONS TO WORDINGS IN JUDGMENT 6-17-14............... 312

REPORTER'S CERTIFICATION DEPOSITION BY WRITTEN QUESTIONS OF
DEEPA VASUDEVAN 6-24-14.............................................................. 321

PRAYER-CORRECTIONS TO DIVORCE DECREE IN THE FINAL
JUDGMENT 6-24-14.......................................................................... 325

REQUEST FOR INTERIM DIVORCE ORDER 7-7-14................................ 334

REQUEST FOR INTERIM DIVORCE ORDER-DENIED KRH 7-8-14.............. 336

PLEADINGS-REQUEST CORRECTIONS TO INVENTORY ITEM #2 7-17-14... 339

PLEADINGS-REQUEST CORRECTIONS TO INVENTORY ITEM #2
RECIEVED FROM COURT 7-17-14....................................................... 342

MOTION TO SIGN DECREE OF DIVORCE AND QUALIFIED DOMESTIC
RELATIONS ORDER 6-7-14................................................................. 344

MOTION HEARING OF 15 AUG 2014 8-12-14........................................ 346

FINAL DECREE OF DIVORCE 8-15-14.................................................. 348

QUALIFIED DOMESTIC RELATIONS ORDER 8-15-14............................. 360

RECONSIDERATION OF TRIAL AND NOTICE OF APPEAL 9-12-14............. 364

ORDER DENYING MOTIONS 10-8-14................................................ 372

REQUEST FOR COURT RECORDS FOR 14TH COURT OF APPEALS

12-17-14.......................................................................... 373

BILL OF COSTS 12-24-14........................................................ 377

DOCKET SHEET.................................................................... 378

CASE SUMMARY .................................................................. 383

CLERK'S CERTIFICATE............................................................ 393

*Appendix P  Notice of Appeal Sent through District Clerk Office*

Appellee says *"no notice of appeal is included in the clerk's record, the appeal should be denied..."* (BR at 8). This appendix is a proof of District clerk office sending the notice to 14th Appeals court.  See also: RR3 page 4 line 13, IDX 373.

Justices

WILLIAM J. BOYCE
TRACY CHRISTOPHER
MARTHA HILL JAMISON
SHARON McCALLY
J. BRETT BUSBY
JOHN DONOVAN
MARC W. BROWN
KEN WISE



## Fourteenth Court of Appeals

301 Fannin, Suite 245
Houston, Texas 77002

Tuesday, September 23, 2014

Renee E. Rape
Court Reporter, 300th District Court
111 E. Locust
Room 402
Angleton, TX 77515
* DELIVERED VIA E-MAIL *

RE: Court of Appeals Number: 14-14-00765-CV
   Trial Court Case Number: 63935

Style: Alavoor Vasudevan
   v.
   Deepa Vasudevan

*(Notice was not by email clerk)*

The district clerk has advised this court that a notice of appeal was filed in this case on September 12, 2014.

A post-judgment motion was filed. Accordingly if the record has been requested and payment arrangements have been made, the reporter's record is due to be filed in this Court within 120 days after the judgment was signed, or by **Monday, December 15, 2014**; Tex. R. App. P. 35.3(b)(3).

All court reporters are required to complete and e-file with the Court an information sheet which is located at http://www.14thcoa.courts.state.tx.us/forms/COURT-REPORTER-INFO-SHEET.pdf. If no request or payment arrangements have been made, you were not the court reporter in this case, additional court reporters took testimony, or you require an extension of time to file your record, please indicate this information on the form. This information sheet **must** be submitted to the Court within seven days of the date of this notice.

Pursuant to the Tex. R. App. P., Appendix C, Rule 2, all reporter's records must be filed via the court's electronic filing portal.

       CHRISTOPHER A. PRINE, CLERK

       Deputy Clerk

cc: Alavoor Vasudevan
  Rhonda Barchak (DELIVERED VIA E-MAIL)
  Ronald Allen Brownstein (DELIVERED VIA E-MAIL)

| DEEPA VASUDEVAN | § | IN THE DISTRICT COURT |
|---|---|---|
| AND | § | 300TH JUDICIAL DISTRICT |
| ALAVOOR VASUDEVAN | § | BRAZORIA COUNTY, TEXAS |

Cause No. <u>63935:</u> In the matter of the Marriage of Alavoor Vasudevan and Deepa Vasudevan and in the interest of Pallavi Dev, a Child; in the 300th Judicial District Court of Brazoria County, Texas

To: Hon. Judge KR Hufstetler, 300th District Court, Brazoria county, 111 E. Locust, Room 401, Angleton, Texas 77515
Copy Filed to: Brazoria County District Clerk, 111 E. Locust St, Ste. 500, Angleton, TX 77515
Copy to: Opposing Counsel, Atty. Ron Brownstein, 5208 West Broadway, Suite 200, Pearland, TX 77581

**07 Sep 2014**

## RECONSIDERATION OF TRIAL & NOTICE OF APPEAL

My Lord (Hon Judge):

Please refer to entries in court records for the Cause 63935 which says as follows:

*08/15/2014:* **Motion Heari**       *0 AM)* *(Judicial Officers Hufstetler, K. Randall)*

*08/26/2014:* **Notice** *Of Final ᴜ     ·s entered, mailed to:*

*09/02/2014:* **Merits** *(9:00 AM)* *(Judicial Officers Hufstetler, K. Randall)*

*10/08/2014:* **Merits** *(9:00 AM)* *(Judicial Officers Hufstetler, K. Randall)*

I had requested the court to reset the hearing of 08/15/2014 to 09/02/2014 as I was traveling and was out of town. But my request was ignored and the Final orders were entered on 08/26/2014. Also I raised objections to wordings in the final orders which I sent to the opposing counsel via registered email dated 15 Jul 2014. I raised objections to 60% division to wife and to certain items as separate property.

I am requesting the court to do justice to innocent husband and I had scheduled hearing on 10/08/2014 (since hearing on 09/02/2014 did not occur as honorable judge was on vacation and hence date was reset to 08 Oct 2014).

Also please refer to following entries in court records:

*07/17/2014:* **Request** *Corrections to Inventory Item #2*
Here letter dated 7 Jul 2014, I raised objections to inventory item 1 (CitiNRI) and item 2 (DLR interest) and provided proof that they are community estate. Wife did not file any proof to prove that they are separate estates. And also for item 3 (Gold) wife was hiding 14 gold bars and other jewels and husband had filed the proof that wife is hiding gold with court. And wife need to update the inventory figures which were 2 years old.

*06/24/2014:* **Correspondence** *Regarding the Judges' copy of the Prayer Corrections to Divorce Decree in the Final Judgment to:*
Here letter dated 21 Jun 2014, husband stated wife failed to submit any proof about sexual abuse, rape, physical abuse, murder, financial abuse and affidavit of protective order. Wife failed to submit medical reports, police reports, videos, recordings, witnesses to prove cruelty of husband. The protective orders are abused. Husband provided proof that inventory item 1 is community estate and proof that inventory item 3 wife had hidden 14 gold bars.

*06/17/2014:* **Objection** *Prayer-Corrections to wording in Judgment by:*

Here letter dated 12 Jun 2014, husband stated there was no abuse and cruelty and husband provided proof of his severe health conditions – blindness, diabetes, kidney problems, liver diseases, high blood pressure, high cholestrol, alzheimer, Husband submitted medical and health reports. And husband should get more than 60% in division because of bad health, older age and disparity of income.

*06/12/2014:* **Inventory & Appraisment** *Update of Inventory Figures:*

Here letter dated 09 Jun 2014, husband requested wife to update inventory figures as they were all old and inventory figures need to be updated as of 27 May 2014. And asked wife to add missing inventory items Gold Bars (14) and gold coins (30).

The court had NOT verified that crime and cruelty was actually committed by husband. Just the wordings in protective order and verbal utterances of wife were taken without any verification. Wife was asked to submit proof but till date no proof was submitted by wife to court. The court cannot accept mere words but needs proof, witness, medical reports and police reports. The page of wife "Affidavit" was actually written by a lawyer and simply framed false charges to get the protective order.

To seek justice and to protect the innocent, in near future I will Appeal to "Fourteenth Court of Appeals", Houston, TX 77002, if justice is not done in Brazoria court. Hence, I request the honorable judge to make entries of my objections to Final Decree so that I can appeal in "Appeals court".

Suppression of truth by opposing attorney – the opposing attorney raised objections without any basis and suppressed the documents which would reveal the truth about the community estates of CITInri, DLR lands and gold bars. This will be referenced to the "Appeals Court" in the future.

I pray the court to reverse the judgment and do justice to husband and to protect the innocent. The trial date is set on 08 Oct 2014 in 300th District Court, Brazoria county. I hope justice will be done on 08 Oct 2014.

Thanking you,

Sincerely,

ALAVOOR VASUDEVAN

Alavoor Vasudevan
P.O. BOX 710163
Houston, TX 77271
Ph: (832) 244-1927

Attachment: Third Amended Inventory of Husband (notarized)

*Cause #63935, Sep 07, 2014*

Appendix P attachment: The attachment mentioned in previous page (2 of 2): Third amended Inventory of Husband (Notarized) is same as what is given in **Appendix D** (page 27 of this document) and hence is not included here in this Appendix P.

Please refer to Appendix D (page 27).

Appeals Court filed order on 19 Feb 2015: "Order appellant's brief filed January 27, 2015, stricken. Appellant is ordered to file a brief that complies with the Texas Rules of Appellate Procedure within ten (10) days of the date of this order. *See* Tex. R. App. P. 38.1."

**Order filed February 19, 2015**



In The

# Fourteenth Court of Appeals

————————

NO. 14-14-00765-CV

————————

**ALAVOOR VASUDEVAN, Appellant**

**V.**

**DEEPA VASUDEVAN, Appellee**

**On Appeal from the 300th District Court
Brazoria County, Texas
Trial Court Cause No. 63935**

## ORDER

On January 27, 2015, appellant filed a brief that is not in compliance with the Texas Rules of Appellate Procedure. In particular, appellant has failed to provide adequate citations to the record and to authority. Tex. R. App. P. 38.1(f), (h).

Accordingly, we order appellant's brief filed January 27, 2015, stricken. Appellant is ordered to file a brief that complies with the Texas Rules of Appellate Procedure within ten (10) days of the date of this order. *See* Tex. R. App. P. 38.1.

If appellant files another brief that does not comply with Rule 38, the Court may strike the brief, prohibit appellant from filing another, and proceed as if appellant had failed to file a brief. See Tex. R. App. P. 38.9(a). Pursuant to Texas Rule of Appellate Procedure 38.8(a), where an appellant has failed to file a brief, we may dismiss the appeal for want of prosecution. If appellant fails to timely file a brief in accordance with Rule 38, the appeal will be dismissed for want of prosecution. See Tex. R. App. P. 38.8(a)(1).

PER CURIAM

Panel consists of Justices Jamison, Busby and Brown.